# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| Headwater Research LLC, | CASE NO. 2:23-CV-00352-JRG-RSP |
| *Plaintiff*, | |
| vs. | **JURY DEMANDED** |
| Cellco Partnership, d/b/a Verizon Wireless, Verizon Corporate Services Group Inc., | |
| *Defendants*. | |

**PLAINTIFF HEADWATER RESEARCH LLC'S OBJECTIONS AND RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES (NO. 2-18)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Headwater Research LLC ("Headwater") responds to Defendants Cellco Partnership, d/b/a Verizon Wireless, Verizon Corporate Services Group, Inc.'s (collectively, "Defendants" or "Verizon") Second Set of Requests for Interrogatories (the "Requests") as follows:

Headwater's search for information is ongoing. Headwater reserves the right to rely on facts, documents, or other evidence that may develop or come to Headwater's attention at a later time. Headwater's responses are based on information presently known to Headwater and are set forth without prejudice to Headwater's right to assert additional objections and/or supplementary responses should Headwater discover additional documents, information or grounds for objections. Headwater reserves the right to supplement or amend its responses to the Requests at any time prior to the trial in this action.

Specific objections to each Request are made on an individual basis in Headwater's responses below. In addition to the specific objections, Headwater makes certain general

objections (the "General Objections") to the Requests. These General Objections are hereby incorporated by reference into the specific response made to each separate Request. For particular emphasis, Headwater has, from time to time, expressly included one or more of the General Objections as specific objections in the responses below. Headwater's response to each individual Request is submitted without prejudice to, and without in any respect waiving, any General Objections not expressly set forth in that response. Accordingly, the inclusion in any response below of any specific objection to a specific Request is neither intended as, nor shall in any way be deemed, waiver of any General Objection or of any other specific objection made.

## PRELIMINARY STATEMENT

The following responses, while based on diligent investigation by Headwater, are necessarily supported only by those facts and writings presently and specifically known and readily available. Headwater has not completed their investigation of all facts related to the subject matter of this action or discovery. Headwater expressly reserves their right (a) to object on any ground to the Requests; (b) to revise, correct, supplement or clarify any responses and answers at any later date; or (c) to produce at any stage of the proceedings, including at the hearing, evidence of facts or information that Headwater may later recall or discover; and nothing herein should be construed as a waiver thereof. By providing responsive information, Headwater does not concede that any such information is admissible. Further, Headwater does not waive any objection, whether or not asserted here, to the use or admissibility of such information and documents during these proceedings, including objections as to competence, authenticity, relevance, materiality, and admissibility.

Moreover, no incidental or implied admissions are intended by the answers below. The fact that Headwater has answered or objected to all or part of a Request should not be construed

as an admission that Headwater accepts or admits the existence of any purported facts set forth or assumed by such Request or that Headwater has waived any part of any objection to the Request.

**<u>GENERAL OBJECTIONS</u>**

The following objections apply to and are incorporated into each and every one of the following answers and objections, and failure to repeat an objection in an answer to a specific Request shall not be deemed a waiver of these general objections:

1.      Headwater objects to these Requests to the extent that they Request the disclosure of information protected by the attorney-client privilege, work-product doctrine, common interest privilege, joint defense privilege, mediation privilege, or any other privilege or immunity. Headwater hereby asserts all such applicable privileges and protections, and will not produce privileged and protected information in response to these Requests. Unless explicitly stated, any production of privileged or protected information is inadvertent and should not be construed as a waiver of the attorney-client privilege, work-product doctrine, or any other applicable privilege, protection or doctrine.

2.      Headwater objects to the Requests, including Verizon's Definitions and Instructions, to the extent they attempt to impose any obligations on Headwater beyond and/or inconsistent with those set forth in the District's local rules, the Court's rules and orders, and the schedule issued in this case.

3.      Headwater objects to the Requests to the extent that they seek information that is not within the present possession, custody or control of Headwater. Headwater will use reasonable diligence to locate information that are within its possession, custody and control.

4.      Headwater objects to these Requests to the extent that they seek information or documents already in the possession of or more readily available to Verizon, in the public

domain, or equally available to Verizon as they are to Headwater.

5.      Headwater objects to the Requests to the extent that they call for the premature disclosure of expert discovery, such as undisclosed expert opinions or work product.

6.      Headwater objects to these Requests to the extent that they assume facts not in evidence.

7.      Headwater objects to the Definitions and Instructions as unduly burdensome. Headwater will comply with its obligations pursuant to the Federal Rules of Civil Procedure and applicable local rules, if any.

8.      Headwater objects to the Requests to the extent that they call for a legal conclusion.

9.      Headwater objects to the Requests to the extent that they are not limited in temporal scope.

10.     Headwater objects to these Requests to the extent that they are speculative, lack foundation, or improperly assume the existence of hypothetical facts that are incorrect or unknown to Headwater.

11.     To the extent these Requests seek discovery of information within the scope of Fed. R. Civ. P. 26(b)(4), Headwater objects to these Requests as premature and improper discovery of expert opinion.

12.     Pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), Headwater states that it will not search sources of electronically stored information that are not reasonably accessible regardless of whether those sources may contain electronically stored information responsive to these Requests. However, Headwater reserves the right to supplement its responses as additional information about other potentially responsive information from other sources that

are not reasonably accessible becomes known.

13.     Headwater objects to the Requests to the extent they seek "all" information in relation to a topic; such Requests are overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence.

14.     Headwater further objects to the Requests to the extent they are compound and contain multiple subparts.

15.     By responding to Verizon's Requests, Headwater does not waive any objection that may be applicable to: (a) the use, for any purpose, by Verizon of any information provided; (b) the admissibility, relevance, or materiality of any such information to any issue in this case; or (c) the competency or authenticity of any such information.

16.     Headwater objects to the definitions of "you," "Headwater," and "your" as vague, ambiguous, overbroad, unduly burdensome, and/or seeking documents that are not proportional to the needs of the case because of its inclusion of... In responding to these Requests, Headwater understands these terms refer to the plaintiff in this action, Headwater Research LLC.

17.     Headwater objects to the definition of the term "Prior Art" as overbroad and unduly burdensome. Headwater will interpret the term using its legal, common and ordinary meaning.

18.     Headwater objects to Verizon's Instructions as overbroad, unduly burdensome and calling for a legal conclusion. Headwater will provide responses and produce documents, subject to its objections consistent with applicable statues, the Federal Rules of Civil Procedure, the rules of this District and any court orders.

## **OBJECTION AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 2:**

Separately for each Asserted Claim, identify and describe all facts related to when the claimed invention, in whole or in part, was publicly disclosed, demonstrated, used, sold, given away, or offered for sale (and if offered for sale, under what terms).

**RESPONSE TO INTERROGATORY NO. 2**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome. Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows:

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 3:**

Separately for each Asserted Claim, identify the earliest priority date to which You contend that Asserted Claim is entitled, including a description of the circumstances of any conception and reduction to practice of that Asserted Claim, an identification of the date(s) of conception and any alleged reduction to practice (either actual or constructive), a description of any and all diligence from conception to any alleged reduction to practice, an identification of each Person involved, each Person's role, the subject matter to which each Person contributed, and the data and places of such contributions, and describe in detail any evidence that corroborates any such conception and alleged reduction to practice.

**RESPONSE TO INTERROGATORY NO. 3**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome. Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter. Headwater further objects to this Interrogatory as compound and containing multiple subparts.

Subject to and without waiving the foregoing objections, Headwater responds as follows:

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce, including the provisional applications to which the Asserted Patents claim priority. Each of the asserted claims of the Asserted Patents are supported by adequate written description in those applications. Further, Verizon has not identified to Headwater any basis to contend that any of the Asserted Patents are not entitled to any particular priority date. To the extent Verizon articulates any such contention, Headwater reserves its right to supplement this response as permitted by the Court's rules, procedures, and the schedule in this case.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 4:**

Identify all documents, things, and events known to You that may constitute Prior Art or that were identified to You as Prior Art to any claim of the Asserted Patent or any Counterpart and, for each such item of Prior Art, the date You first became aware of that Prior Art, the circumstances under which You acquired this knowledge, and the identity of all Persons known to You to have knowledge of that Prior Art. For purposes of this Interrogatory, the relevant Prior Art date for the Asserted Patents is April 13, 2015.

**RESPONSE TO INTERROGATORY NO. 4**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome. Headwater further objects to this Interrogatory as vague and ambiguous, and as

seeking irrelevant information, with respect to its identification of "the relevant Prior Art date for the Asserted Patents is April 13, 2015." Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows:

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce, including references cited in the Asserted Patents and their file histories, references discussed in IPR2023-1157, IPR2023-1226, IPR2023-1250, IPR2023-1253, IPR2023-1336, IPR2023-1337, IPR2023-1360, IPR2023-1361, IPR2023-1362, IPR2023-1462, IPR2024-0003, IPR2024-0010, and references identified in Defendant's invalidity contentions.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 5:**

Separately for each Asserted Claim, identify and describe all facts that support or contradict any secondary considerations of non-obviousness (also referred to as "objective indicia of non-

obviousness"), including without limitation any alleged long felt but unfulfilled need, failure of others, commercial success, commercial acquiescence, licensing, professional approval, lack of contemporaneous invention, copying, and laudatory statements by others, and nexus between the merits of the claimed invention and the evidence of secondary indicia, including without limitation an identification of any supporting documents.

## RESPONSE TO INTERROGATORY NO. 5

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome. Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter. Headwater also objects to this interrogatory as premature, particularly to the extent it seeks information that is more properly the subject of expert discovery, which has not yet commenced. Indeed, "this Court has consistently recognized that answers to contention interrogatories change over time as theories of liability and non-infringement crystallize" and "[t]hus, answers to such interrogatories are often best left until the close of discovery." *Kaist*

*IP US LLC v. Samsung Elecs. Co*., 2017 WL 9937763 at *1 (E.D. Tex. Dec. 15, 2017); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1365 (Fed. Cir. 2006).

Subject to and without waiving the foregoing objections, Headwater responds as follows:

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from the following Headwater has or will produce, including HW352-00000001-HW352-00006975. Responsive information may also be ascertained from documents and information in Verizon's possession, custody, or control.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 6:**

Identify and describe in detail each instance in which You (or any other Person such as a broker) offered to license, sell, assign, or otherwise convey any permissions under or rights to the Asserted Patents or any Counterpart, or in which a third party requested to license, purchase, or otherwise obtain rights to the Asserted Patents or any Counterpart, describe any discussions or negotiations thereto, and identify for each such instance the Persons involved. To the extent any such instances culminated in the execution of any such agreement ("Agreement or License"1) relating to the Asserted Patent or any Counterpart, describe the parties to such Agreement or License, the terms of such Agreement or License (including technological and economic terms), and the details of any licensing rates or payments discussed, calculated, and/or paid. To the extent that such instances did not culminate in the execution of an Agreement or License relating to the Asserted Patents or any Counterpart, describe the parties, the terms of such offered or demanded (including technological and economic terms), and the details of any licensing rates or payments discussed, calculated, and/or contemplated.

**RESPONSE TO INTERROGATORY NO. 6**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome. Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as compound and containing multiple subparts. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows:

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce, including: HW352-00000001-HW352-00006975; HW352-00007375-HW352-00007395; HW352-00007728-HW352-00007743. Responsive information may also be ascertained from documents and information in Verizon's possession, custody, or control. Headwater incorporates its infringement contentions and its response to Interrogatory No. 14.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

## INTERROGATORY NO. 7:

For each Asserted Patent, describe in detail Headwater's method of calculating damages, whether as lost profits, a reasonably royalty, or otherwise, including but not limited to the identification of any applicable hypothetical negotiation dates; the smallest saleable patent-practicing unit for each Asserted Claim; whether or not Headwater contends the entire market value rule is applicable and, if so, the justification for applying it; any applicable royalty rate and royalty base; the availability or non-availability of non-infringing alternatives; any licenses on which Headwater may rely; all facts on which Headwater will rely to apportion the value of the patented features of the Accused Products from any unpatented features; all facts on which Headwater will rely to determine any incremental value that Headwater contends the subject matter claimed in each of the Asserted Patents add to the Accused Products; and all other facts on which Headwater will rely as relevant to calculating damages for the alleged use of the Asserted Claims, and identify all documents or things that refer or relate to the subject matter of this Interrogatory.

## RESPONSE TO INTERROGATORY NO. 7

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as

13

requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter. Headwater also objects to this interrogatory as premature, particularly to the extent it seeks information that is more properly the subject of expert discovery, which has not yet commenced. Indeed, "this Court has consistently recognized that answers to contention interrogatories change over time as theories of liability and non-infringement crystallize" and "[t]hus, answers to such interrogatories are often best left until the close of discovery." *Kaist IP US LLC v. Samsung Elecs. Co*., 2017 WL 9937763 at *1 (E.D. Tex. Dec. 15, 2017); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1365 (Fed. Cir. 2006).

Subject to and without waiving the foregoing objections, Headwater responds as follows:

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce, including: HW352-00000001-HW352-00006975; HW352-00007375-HW352-00007395; HW352-00007728-HW352-00007743. Responsive information may also be ascertained from documents and information in Verizon's possession, custody, or control.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 8:**

Identify all Identify all Persons or entities who hold a direct or indirect financial interest relating to, in whole or in part, either Asserted Patent and/or this litigation, including a description of the nature of the financial interest, an identification of all agreements and draft agreements with said Person or entity relating to the Asserted Patents, patent applications, licenses, assignments, or

this lawsuit, and the relationship of said Person or entity with Headwater (or any of its predecessors). Your answer should include (but not necessarily be limited to) a description of any funding, financial contribution, or payments made to You for purposes of this litigation or any other litigation involving the Asserted Patents, and how any money collected from this litigation or any other litigation involving the Asserted Patents has been or will be distributed, and a description of the rights and obligations of such Person or entity related to the Asserted Patents.

**RESPONSE TO INTERROGATORY NO. 8**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome. Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as compound and containing multiple subparts. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows:

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce. Responsive

information may also be ascertained from documents and information in Verizon's possession, custody, or control.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 9:**

For each product You allege infringes, describe the circumstances under which Headwater first became aware of the product's alleged infringement, including, but not limited to, the date(s) upon which Headwater first became aware of the product; the date upon which Headwater first became aware that the product allegedly infringed any claim of the Asserted Patents; any investigations, reverse engineering, analyses, tests, or studies done on the product by or on behalf of Headwater with respect to possible infringement of any claim of the Asserted Patents, including without limitation to the date, procedures, and results of such analyses, tests, or studies; and an identification of all persons involved in any such analyses, tests, or studies and any documents or things that refer or relate to the subject matter of this interrogatory.

**RESPONSE TO INTERROGATORY NO. 9**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for

improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as compound and containing multiple subparts. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows:

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

## INTERROGATORY NO. 10:

Identify and describe in detail all factual bases for Your contention that Defendants induce other Persons to infringe any Asserted Claim, including, but not limited to: the date on which You contend Defendants first learned of the Asserted Patents; the identity of the other Persons that were allegedly induced by Defendants to infringe each such claim; each act of Defendants that allegedly encouraged infringement of each such claim by such Persons; all facts supporting Your contention that Defendants knew that such acts constituted patent infringement; all facts supporting Your contention that such acts actually resulted in direct patent infringement; and all facts in support of Your contention that Defendants possessed specific intent to encourage the alleged infringement.

## RESPONSE TO INTERROGATORY NO. 10

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly

burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows: Defendants have knowingly and intentionally induced and contributed to infringement of the '541 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge of or were willfully blind to the '541 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed the '541 patent and patents in the same family as the '541 patent. Similarly, Defendants have had knowledge of or were willfully blind to the '541 patent and the infringing nature of the Accused Instrumentalities at least because of communications by and among ItsOn, Headwater, and Verizon discussing ItsOn's and Headwater's intellectual property, including pending patent applications (such as the application which led to the issuance of the '541 patent) and issued patents (including the '541 patent), during the product development, technological, and marketing team meetings in 2009-2013. *See, e.g.*, Headwater's Response to Interrogatory No. 14. Additionally, Verizon has cited this specification in at least one other Verizon patent, which issued after the '541 patent.

Despite this knowledge of the '541 patent, Defendants have continued to actively encourage and instruct its customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '541 patent. These acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education, and instructions to its customers; and providing the Accused Instrumentalities to customers. Defendants have done so knowing and intending that their customers would commit these infringing acts. Defendants have also continued to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '541 patent, thereby specifically intending for and inducing their customers to infringe the '541 patent through the customers' normal and customary use of the Accused Instrumentalities.

Defendants have also knowingly and intentionally induced and contributed to infringement of the '543 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge of or were willfully blind to the '543 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed the '543 patent and patents in the same family as the '543 patent. Similarly, Defendants have had knowledge of or were willfully blind to the '543 patent and the infringing nature of the Accused Instrumentalities at least because of communications by and among ItsOn, Headwater, and Verizon discussing ItsOn's and Headwater's intellectual property, including pending patent applications (such as the application which led to the issuance of the '543 patent) during the product development, technological, and marketing team meetings in 2009-2013. *See, e.g.*, Headwater's Response to Interrogatory No. 14. Additionally, on information and belief, Verizon has cited this specification in at least one other Verizon patent, which issued after the '543 patent. And Verizon's U.S. Patent No. 9,167,374, which issued in

2015, cites U.S. Patent Application Publication No. 2012/0089727 to Gregory G. Raleigh et al. which had previously issued as the asserted '543 patent.

Despite this knowledge of the '543 patent, Defendants have continued to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '543 patent. These acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education, and instructions to its customers; and providing the Accused Instrumentalities to customers. Defendants have done so knowing and intending that their customers will commit these infringing acts. Defendants have also continued to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '543 patent, thereby specifically intending for and inducing their customers to infringe the '543 patent through the customers' normal and customary use of the Accused Instrumentalities.

Defendants have also knowingly and intentionally induced and contributed to infringement of the '042 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '042 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed patents in the same family as the '042 patent. Similarly, Defendants have had knowledge or were willfully blind of the '042 patent and the infringing nature of the Accused Instrumentalities at least because of communications by and among ItsOn, Headwater, and Verizon discussing ItsOn's and Headwater's intellectual property, including pending patent applications (such as the application which led to the issuance of the '042 patent) during the product development, technological, and marketing team meetings in 2009-2013. *See, e.g.*, Headwater's Response to Interrogatory No. 14. Additionally, on information and belief, Verizon

has cited this specification in at least one other Verizon patent, which issued after the '042 patent was issued.

Despite this knowledge of the '042 patent, Defendants have continued to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '042 patent. These acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education, and instructions to its customers; and providing the Accused Instrumentalities to customers. Defendants have done so knowing and intending that their customers will commit these infringing acts. Defendants have also continued to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '042 patent, thereby specifically intending for and inducing their customers to infringe the '042 patent through the customers' normal and customary use of the Accused Instrumentalities.

Defendants have also knowingly and intentionally induced and contributed to infringement of the '613 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge of or were willfully blind to the '613 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed patents in the same family as the '613 patent. Similarly, Defendants have had knowledge of or were willfully blind to the '613 patent and the infringing nature of the Accused Instrumentalities at least because of communications by and among ItsOn, Headwater, and Verizon discussing ItsOn's and Headwater's intellectual property, including pending patent applications (such as the application which led to the issuance of the '613 patent) during the product development, technological, and marketing team meetings in 2009-2013. *See, e.g.*, Headwater's Response to Interrogatory No. 14. Additionally, on information and belief, Verizon

has cited this specification in at least one other Verizon patent, which issued after the
'613 patent.

106.    Despite this knowledge of the '613 patent, Defendants have continued to actively
encourage and instruct its customers to use and integrate the Accused Instrumentalities in ways
that directly infringe the '613 patent. These acts include providing information and instructions
on the use of the Accused Instrumentalities; providing information, education, and instructions to
its customers; and providing the Accused Instrumentalities to customers. Defendants have done
so knowing and intending that their customers would commit these infringing acts. Defendants
have also continued to make, use, offer for sale, sell, and/or import the Accused
Instrumentalities, despite their knowledge of the '613 patent, thereby specifically intending for
and inducing their customers to infringe the '613 patent through the customers' normal and
customary use of the Accused Instrumentalities.

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this
interrogatory may be ascertained from documents Headwater has or will produce. Responsive
information may also be ascertained from documents and information in Verizon's possession,
custody, or control. Headwater incorporates its infringement contentions and its response to
Interrogatory No. 14.

Discovery in this case is ongoing, and Headwater reserves the right to amend or
supplement this response as discovery in this case proceeds.

**<u>INTERROGATORY NO. 11:</u>**

Describe in detail any analysis, determination, or calculation of the value of the Asserted
Patents or any Counterpart (whether on the basis of an individual patent or as part of a group of
patents that may or may not include patents other than the Asserted Patents or any Counterpart,

including but not limited to Headwater's entire patent portfolio) or attempt thereof by You or on Your behalf (for example, brokers), including but not limited to identifying the facts analyzed or considered, the person(s) involved in the analysis, determination, or calculation, any results of the analysis, determination, or calculation, and any communication of such results to others.

## RESPONSE TO INTERROGATORY NO. 11

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows: Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce, including HW352-00000001-HW352-00006975; HW352-00007375-HW352-00007395; HW352-00007728-HW352-00007743.

Discovery in this case is ongoing, and Headwater reserves the right to amend or

supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 12:**

Describe in detail Headwater's (including any predecessor company's) management, organizational, and corporate structure and history, including but not limited to the date of formation, scope of business operations, identity of officers, employees, and any of its management or leadership teams at any time since the entity's formation and each position held by each such Person and the roles and responsibilities in each such position, the range of time when each such position was held, and the financial interests held by any such Person in the entity at any point until the present.

**RESPONSE TO INTERROGATORY NO. 12**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as compound and containing multiple subparts. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows: Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 13:**

Describe all facts and circumstances relating to your compliance (or lack thereof) with 35 U.S.C. § 287 with respect to the Asserted Patents, including stating whether You, any prior owners of the Asserted Patents, and/or any licensees of the Asserted Patents have complied with 35 U.S.C. § 287, identifying all products made or sold by You or a licensee that practice any claim of an Asserted Patent, identifying all products made or sold by You or a licensee that have been marked with an Asserted Patent, identifying the dates over which the products have been marked, identifying all documents showing any such markings, identifying all efforts or steps taken by You to ensure that any licensees of the Asserted Patents have complied with 35 U.S.C. § 287, and identifying people knowledgeable of any such compliance or non-compliance.

**RESPONSE TO INTERROGATORY NO. 13**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession,

25

custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows: Headwater is not aware of any unmarked products that practice the patents-in-suit sold in the United States. Headwater has engaged in reasonable efforts to mark articles which may practice its issued patents, including, for example, requiring its licensee, ItsOn, to mark ItsOn articles with the patent numbers of Headwater's issued patents practiced by said articles. For example, the ItsOn application included a link to http://www.itsoninc.com/patent-notices, which provided notice of Headwater's patents. Consistent with these efforts, Section 3.7 of the Amended and Restated License Agreement between Headwater and ItsOn, effective July 31, 2017, provided that: "Licensee shall mark each Licensed Product it licenses or distributes pursuant to this Agreement in accordance with Section 287 of Title 35 of the United States Code, and/or any other applicable patent statutes or regulations in the country or countries of manufacture, sale, distribution, or license thereof, indicating the issued HWR Patents that would, in the absence of the license, be infringed by such Licensed Product or the making, using, selling or importing thereof." Further, numerous devices designed and manufactured by Samsung for sale within the United States (e.g., through Sprint) were specifically marked with Headwater patent numbers through Samsung's inclusion of the ItsOn application in those devices.

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce. Responsive

information may also be ascertained from documents and information in Verizon's possession, custody, or control.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 14:**

Identify and describe in detail all factual bases for Your contention that Defendants' infringement has been willful.

**RESPONSE TO INTERROGATORY NO. 14**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows: The patented technologies which are the subject of this lawsuit are well known to Defendants. On or about June 30, 2009, Headwater entered into an NDA with Verizon. On or about July 1,

2009, Headwater provided detailed presentations under the NDA to Verizon personnel including Kyle Malady, Verizon's then VP of Technology Product Development, divulging how Headwater's and ItsOn's technological solutions could solve Verizon's data demand problems while simultaneously opening up new revenue channels for Verizon. These presentations included comprehensive feature roadmaps, prototype timelines, and financial projections discussing how ItsOn's software and Headwater's unique portfolio of intellectual property would benefit Verizon and its customers.

In August 2009, Mr. Malady asked Headwater to present to Verizon executives a trial plan for Headwater/ItsOn to demonstrate its technology to Verizon. On or around August 31, 2009, Headwater gave a presentation describing the ItsOn platform as well as a trial plan to Verizon executives. The functionality and solutions presented to Verizon led the parties to consider consummating an exclusive deal between Headwater/ItsOn and Verizon, under which Headwater/ItsOn would scale and implement its technological solutions to assist Verizon with data demand and increase Verizon's revenue streams.

In October 2009, Headwater presented Verizon with a Detailed Patent Brief, providing detailed descriptions of Headwater's patent filings relating to the technological solutions Headwater and ItsOn had been discussing with Verizon, including disclosures related to the Asserted Patents. Verizon and Headwater continued to discuss how Headwater's and ItsOn's capabilities and offerings could benefit Verizon and its customers.

In October 2009, Thomas Russell—Verizon's then Director of Marketing—prepared and presented a Pilot Objectives presentation for a Verizon/ItsOn pilot project. This presentation detailed product demonstrations and technical testing milestones for implementing the Headwater and ItsOn intellectual property and software.

In October 2009, Verizon personnel prepared and presented an Opportunity for Partnership Between ItsOn and Verizon Wireless. Verizon's presentation identified its need for the Headwater/ItsOn solutions, how those solutions could be implemented, and what benefits those solutions would bring to Verizon and its customers. After these presentations and other significant and detailed technical meetings between ItsOn and Verizon, Verizon indicated that it would be integrating the ItsOn solutions to help manage devices and data usage on Verizon's network.

In 2010, Verizon and ItsOn entered into a Software License, Evaluation Trial, and Application Programming Interfaces Development Agreement. Under the agreement, Verizon paid ItsOn over $4 million for a license to evaluate ItsOn data usage management software and APIs. Verizon also invested millions into the equity of Headwater and ItsOn. As a result, Headwater and ItsOn shared additional detailed technical information covered by Headwater's pending patents with Verizon's product, IT, technology, and marketing teams.

By May 2011, Headwater and ItsOn had developed a Verizon-specific prototype platform and held field trials for Verizon to evaluate the platform and validate its capabilities, including functionality covered by the Asserted Patents. The platform software included a splash page with a notice stating that the platform technologies were covered by several Headwater patents and a link to ItsOn's virtual marking webpage. Each of the asserted '541, '543, and '042 patents was added to that webpage after issuance.

In June 2011, Headwater provided an Updated Detailed Patent Brief to Verizon personnel, including Edward Diaz, Executive Director of Product Development & Integration, and Louis Chan, Director of Core Network Services. It provided additional detailed descriptions of Headwater's patent filings relating to the technological solutions Headwater and ItsOn had

been disclosing to Verizon, including disclosures related to the Asserted Patents. For example, the presentation notified Verizon that Headwater was obtaining patent protection on: "Application/Content Aware Service Access Control" where "server controls service plan network access policies that are securely enforced on a networked device" and "service plan policies can be modified based on: amount of service used [and/or] one or more applications"; "Device Assisted QoS" where "device assists in providing QoS differentiated services via secure policy enforcement on device capable of classifying device access network activity by application, OS function, website, content type and applying appropriate QoS policy"; mechanisms for applying "a differential background service policy that prevents background services not being interacted with by the user" based on "the state of user action with a given application"; and "access control" that is "varied according to user interaction state" and "is applied to one or more specific applications."

Despite acknowledging that Headwater's and ItsOn's technological solutions would benefit Verizon and its customers—including by helping to reduce data usage and network congestion, extend battery life by decreasing power consumption, and provide additional revenue channels—Verizon ultimately decided to walk away from the opportunity.

It was not until 2013 that Headwater and ItsOn began to better understand why. In October 2013, Thomas Russell filed a whistleblower complaint against Verizon. The complaint alleged that Verizon retaliated against Mr. Russell for reporting "illegal and unethical business practices" by Verizon, including "unethical behavior in dealing with [ItsOn]" and "misappropriation of intellectual property (shared by ItsOn under an NDA) in violation of New Jersey and federal law." *See* Complaint, Ex. 1, Thomas Russell vs. Cellco Partnership d/b/a Verizon Wireless, Dkt. No. L-1331-13 in the Superior Court of New Jersey, Somerset County

Division, September 30, 2013) (the "Whistleblower Complaint").

As a result of the filing of the Whistleblower Complaint, Headwater and ItsOn learned about alleged unethical business practices and illegal activities by Verizon related to Headwater's and ItsOn's confidential and proprietary intellectual property. *Id*. at 3. For example, Headwater and ItsOn learned that Verizon's Product and IT teams allegedly "reverse-engineered the functionality shown by ItsOn." *Id*.

Headwater and ItsOn also learned that Verizon allegedly claimed ownership of the technical solutions and offerings that Headwater and ItsOn had shared with Verizon's product, technical, IT, and marketing teams, and had inserted those concepts into Verizon's own internal presentations and talking points under the guise of Verizon's "Advanced Data Services Platform." *Id*. at 3-4. Headwater and ItsOn also learned that these concerns (and others) were shared with Verizon's General Counsel and other Verizon senior leadership and that "several senior leaders" within Verizon allegedly recommended that Verizon "should continue the evaluation and trial work with ItsOn." *Id*. at 4. Verizon nevertheless chose to discontinue its work with Headwater and ItsOn.

In January 2016, Verizon subsidiary Verizon Patent and Licensing Inc. filed U.S. Patent Application No. 14/996,543. It included claims directed to selectively blocking or permitting application traffic based on whether it is foreground or background traffic, e.g.:

> 1.  A device, comprising:
>
>    one or more processors to:
>
>    receive a request for a transmission of traffic from an application,
>
>        the application being associated with an application identifier;
>
>    determine an application category of the application using the application
>
>    identifier associated with the application;
>
>    identify a set of rules associated with the application category,
>
>        where the set of rules includes at least one of:
>
>            one or more rules associated with foreground traffic, or
>
>            one or more rules associated with background traffic; and
>
>    selectively block or permit the transmission of traffic, from the application, based
>
>    on the set of rules.

In February 2017, a Notice of References Cited was issued to the Verizon subsidiary regarding its patent application. The notice identified U.S. Patent Application Publication No. 2011/0314145 to Gregory G. Raleigh et al. which had issued as the asserted '541 patent on November 19, 2013.

Over the next several years, Verizon sold devices and provided services which included features and functionalities that were the subject of the Verizon, Headwater, and ItsOn relationship, with technology Verizon learned from ItsOn, and which infringe Headwater's Asserted Patents.

Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce. Responsive information may also be ascertained from documents and information in Verizon's possession, custody, or control.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 15:**

Identify and describe in detail all communications with any Third Parties relating to any of Your lawsuits relating to patent infringement, and/or relating to the patents or their family members.

**RESPONSE TO INTERROGATORY NO. 15**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows: Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce. Responsive information may also be ascertained from documents and information in Verizon's possession, custody, or control. Headwater incorporates by reference its response to Interrogatory No. 14.

Discovery in this case is ongoing, and Headwater reserves the right to amend or

33

supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 16:**

Describe in detail the complete history of ItsOn's efforts to develop its technology and/or work with Verizon or any Third Parties to commercialize it.

**RESPONSE TO INTERROGATORY NO. 16**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows: Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce. Responsive information may also be ascertained from documents and information in Verizon's possession, custody, or control. Headwater incorporates by reference its response to Interrogatory No. 14.

Discovery in this case is ongoing, and Headwater reserves the right to amend or

supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 17:**

Identify and describe in detail all ItsOn products that embody or practice the Asserted Claims, including each Asserted Claim the product embodies or practices.

**RESPONSE TO INTERROGATORY NO. 17**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows: Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce. Responsive information may also be ascertained from documents and information in Verizon's possession, custody, or control. Headwater incorporates by reference its response to Interrogatory No. 14.

Discovery in this case is ongoing, and Headwater reserves the right to amend or

supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 18:**

Identify and describe in detail the content and timing of every contribution by each Named Inventor or other individual who contributed to any claim of any Asserted Patent.

**RESPONSE TO INTERROGATORY NO. 18**

Headwater objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection. Headwater further objects that this Interrogatory is overbroad and unduly burdensome.  Headwater further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Headwater further objects to this Interrogatory to the extent that it seeks information that is outside of Headwater's possession, custody, and control. Headwater further objects to this Interrogatory as premature and calling for improper discovery of expert opinion. Headwater further objects to this Interrogatory as requiring the determination of predicate legal conclusions. Headwater further objects to this Interrogatory as premature to the extent that it seeks to require Headwater to marshal any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter.

Subject to and without waiving the foregoing objections, Headwater responds as follows: In the Fall of 2008, Greg Raleigh founded Headwater Partners I LLC and assumed the role of its Managing Director. In around the middle of 2008, Dr. Raleigh and Headwater began meeting with various handset manufacturers, wireless carriers, and electronics retailers to discuss possible business opportunities. Some of these discussions involved providing wireless capabilities for mobile devices. For example, Dr. Raleigh held a number of discussions with Best Buy about

these wireless services, including a meeting with Best Buy executives in late September 2008. Best Buy informed Dr. Raleigh that it was interested in obtaining Dr. Raleigh's services to, among other things, help Best Buy create a branded MVNO service strategy for mobile devices.

As a part of Headwater's negotiations with Best Buy in the Fall of 2008 for Dr. Raleigh's services in developing a branded MVNO, Dr. Raleigh concluded that a conventional, centralized equipment MVNO approach would not work well for the things that carriers, OEMs, and distributors wanted to do to compete in the marketplace. Named inventors Dr. Raleigh, James Lavine, and Alireza Raissinia conceived of the inventions of the '541, '543, and '613 Patents as a solution to improving the conventional, centralized MVNO approach used by MVNO operators, which included the use of non-centralized device-assisted services, bandwidth usage notifications, bandwidth shaping and management techniques, and ambient services for mobile devices. Various features of the claimed inventions of the '541, '543, and '613 Patents were conceived of and reduced to practice by the named inventors between Fall 2008 and the filing of U.S. Patent Provisional Application 61/206,354 ("'354 Application") to which these patents claim priority. Pursuant to Rule 33(d), information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce, including technical and other documentation reflecting Headwater's designs and inventions during this time period relating to the '541, '543, and '613 Patents.

Between Fall 2008 and the filing of the '354 Application, as part of the work discussed above, Dr. Raleigh also conceived of the inventions of the '042 Patent, including mechanisms for determining that a particular service policy setting of a mobile device needs to be modified, protecting that policy setting, and sending to the mobile device configuration information that assists in modifying or allowing modifications to that policy setting. Pursuant to Rule 33(d),

information responsive to the non-objectionable aspects of this interrogatory may be ascertained from documents Headwater has or will produce, including technical and other documentation reflecting Headwater's designs and inventions during this time period relating to the '042 Patent.

Discovery in this case is ongoing, and Headwater reserves the right to amend or supplement this response as discovery in this case proceeds.

Dated:   January 8, 2024

Respectfully submitted,

/s/ Marc Fenster
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Ben Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Paul Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
Email: pwang@raklaw.com
Amy Hayden
CA State Bar No. 287026
Email: ahayden@raklaw.com
James Milkey
CA State Bar No. 281283
Email: jmilkey@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on  January 8, 2024 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail.

*/s/ Marc Fenster*
Marc Fenster