# Exhibit R



# Transcript of David Wise

**Date:** January 31, 2025
**Case:** Headwater Research LLC -v- AT&T Services, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767 | **Email:** transcripts@planetdepos.com
www.planetdepos.com
Michigan #8598 | Nevada #089F | New Mexico #566

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

## Page 1

```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF TEXAS
                   MARSHALL DIVISION

HEADWATER RESEARCH LLC,  )
                         )
     Plaintiff,          )
                         )  CASE NO.:
VS.                      )  2:23-cv-00397-JRG-RSP
                         )
AT&T SERVICES, INC.,     )  Lead Case
AT&T MOBILITY, LLC, AND  )
AT&T CORP.,              )
                         )
     Defendants.         )

HEADWATER RESEARCH LLC,  )
                         )
     Plaintiff,          )
                         )  CASE NO.:
VS.                      )  2:23-cv-00398-JRG-RSP
                         )
AT&T SERVICES, INC.,     )
AT&T MOBILITY, LLC, AND  )
AT&T CORP.,              )
                         )
     Defendants.         )

----------------------------------

     ORAL, REALTIMED, VIDEOTAPED DEPOSITION OF

                    DAVID WISE

                 JANUARY 31, 2025

----------------------------------

JOB NO.: 570073

         PAGES: 1 - 77

         REPORTED BY: ANNETTE PELTIER
```

## Page 2

    ORAL, REALTIMED, VIDEOTAPED DEPOSITION OF
DAVID WISE, produced as a witness at the instance
of the Defendants, and duly sworn, was taken in
the above-styled and numbered cause on
January 31, 2025, from 12:03 p.m. to 1:54 p.m.,
before Annette Peltier, CSR, Texas Certified
Realtime Reporter, in and for the State of Texas,
reported by machine shorthand pursuant to the
Federal Rules of Civil Procedure and the
provisions stated on the record or attached
hereto.

## Page 3

```
                A P P E A R A N C E S
       (ALL APPEARING VIA ZOOM VIDEOCONFERENCE)

ON BEHALF OF THE PLAINTIFFS:

       KRIS DAVIS, ESQUIRE
       Russ, August & Kabat, LLP
       8080 N. Central Expressway
       Dallas, Texas 75206
       310.826.7474

ON BEHALF OF THE DEFENDANTS:

       SCOTT HEJNY, ESQUIRE
       McKool Smith
       303 Colorado Street
       Suite 2100
       Austin, Texas 78701
       512.692.8700

ON BEHALF OF THE WITNESS:

       DAVID KAYS, ESQUIRE
       Morgan, Franich, Fredkin Siamas &
       Kays LLP
       333 W. San Carlos Street
       Suite 1050
       San Jose, CA 95110
       408.288.8288

ALSO PRESENT:

       Lawrence Wallace, Videographer
       Charlie McGrath, Video Tech
```

## Page 4

```
                        Index
                                              Page
Appearances..............................    3
Examination by Mr. Hejny.................    8
Examination by Mr. Davis.................   71
Adjournment..............................   73
Signature Page...........................   74
Court Reporter's Certificate.............   75

                       Exhibits
Number       Description                     Page
Exhibit 1    Deposition Notice............   11
Exhibit 2    David Wise LinkedIn..........   13
Exhibit 3    Raleigh Invention Disclosure,
             Confidentiality & Proprietary
             Rights Agreement
             (HW397-00094026-31)..........   20
Exhibit 4    January 2009 Raleigh and Paul
             Jacobs E-Mails
             (HW397-00102740-41)..........   24
Exhibit 5    2009.01.22 QC-HW Partners NDA
             (HW397-00102740-41)..........   29
Exhibit 6    3.4.2009 E-Mail
             (HW397-00051416).............   34
Exhibit 7    2.25.2009 ItsOn PowerPoint
             To QC on Best Buy E2E
             (HW397-00018717-31)..........   40
Exhibit 8    2009.04.21 re: ItsOn
             (HW397-00051418-20)..........   44
Exhibit 9    2009.05.06 Patent Application
             (HW397-00051421).............   53
Exhibit 10   2009.05.07 Moving Forward
             (HW397-00051422).............   56
```

Page 5

```
1   Exhibit 11  2009.05.19 Release
                (HW397-00051424-27).........  60
2
    Exhibit 12  June 24, 2009 Qualcomm E-Mail
3               On Release Redlines
                (HW397-00102742)............  66
4
    Exhibit 13  2009.09.03 Qualcomm's
5               Proposal
                (HW397-00051423)............  68
6

7                    * * * * *
```

Page 6

1  EXHIBIT TECH: Thank you to
2  everyone for attending this proceeding remotely,
3  which we anticipate will run smoothly.
4         Please remember to speak slowly
5  and do your best not to talk over one another.
6         Please be aware that we are
7  recording this proceeding for backup purposes.
8         Any off-the-record discussions
9  should be had away from the computer.
10        Please remember to mute your mic
11 for those conversations.
12        Please have your video enabled to
13 help the reporter identify who is speaking. If
14 you are unable to connect with video and are
15 connecting via phone, please identify yourself
16 each time before speaking.
17        I apologize in advance for any
18 technical-related interruptions.
19        Thank you.
20        THE VIDEOGRAPHER: All right.
21 Everyone please stand by to be read onto the
22 video record.
23        Here begins media number one in
24 the videotaped deposition of David Wise in the
25 matter of Headwater Research, LLC, versus AT&T

Page 7

1  Services, Inc., et al, in the United States
2  District Court for the Eastern District of Texas,
3  Marshall Division, Case Number
4  2:23-cv-397-JRG-RSP.
5         Today's date is January 31st,
6  2025. The time on the video monitor is
7  2:04 [sic] p.m. Central time.
8         The remote videographer today is
9  Lawrence Wallace, representing Planet Depos.
10        All parties of this video
11 deposition are attending remotely.
12        Would counsel please
13 voice-identify themselves and state whom they
14 represent.
15        MR. HEJNY: Scott Hejny from
16 McKool Smith on behalf of AT&T.
17        MR. DAVIS: Kris Davis from Russ,
18 August & Kabat on behalf of Headwater Research,
19 LLC.
20        MR. KAYS: David Kays on behalf of
21 the witness, David Wise.
22        THE VIDEOGRAPHER: All right. The
23 court reporter today is Annette Peltier,
24 representing Planet Depos.
25        The witness will now be sworn.

Page 8

1         DAVID WISE,
2  Having been first duly sworn, testified upon his
3  oath as follows:
4            EXAMINATION
5  BY MR. HEJNY:
6   Q. Good morning, Mr. Wise.
7   **A. Good morning.**
8   Q. So you -- you mentioned before we started
9  that you'd been deposed before, correct?
10  **A. Yes.**
11  Q. Okay. So I'll walk through some
12 guidelines here in a minute, but obviously this
13 is your first remote depo.
14        Are you alone in the room where you're
15 being deposed now?
16  **A. Yes.**
17  Q. Do you have any documents in front of you
18 or pulled up on your computer screen?
19  **A. No.**
20  Q. Great.
21        How many times have you been deposed
22 before?
23  **A. Three.**
24  Q. When was the last time you were deposed --
25 I guess the most recent deposition?

33

years ago, so I don't, sorry.
Q. Understood.
   Do you recall any conversations with -- with Dr. Raleigh or Headwater following the entry of this nondisclosure agreement regarding the potential partnership between Headwater and Qualcomm?
A. No.
Q. Do you recall any meetings with Headwater or Dr. Raleigh?
A. I don't recall any, no.
Q. Do you recall any discussions as to whether Dr. Raleigh had filed or intended to file a patent application in January 2009 that would impact the relationship between Headwater and Qualcomm?
   MR. KAYS: And just point of clarification, Counsel, your -- discussions with Mr. Raleigh? Is that -- is that the intent of the question?
   MR. HEJNY: Yes. Do you recall any --
   MR. KAYS: Okay.
   MR. HEJNY: I'll restate the question.

34

   MR. KAYS: Thank you.
Q. (BY MR. HEJNY) Do you recall any conversations with Headwater or Dr. Raleigh regarding the filing of a patent application in January of 2009 that may have had some bearing on the relationship between Headwater, Dr. Raleigh, and Qualcomm?
A. I don't recall.
Q. Do you recall a potential intellectual property ownership dispute between Dr. Raleigh and Qualcomm?
A. No.
Q. Do you know anything at all about patent applications that were filed by Dr. Raleigh?
A. No.
Q. Okay. Let's move on to Exhibit 6, please.
   (Whereupon Exhibit Number 6 was marked for identification.)
Q. (BY MR. HEJNY) Okay. Exhibit 6 is a March 4, 2009, e-mail from Gina Lombardi to Greg Raleigh and Jim Straight and you are copied in that e-mail.
   Do you see that, Mr. Wise?
A. Yes.
   MR. HEJNY: And for the record,

35

the Bates number on this document is HW397-0051416.
Q. (BY MR. HEJNY) And just for your edification, mimoguy@mac.com, that e-mail address is the e-mail address for Greg Raleigh. Okay?
A. Okay.
Q. Who was Gina Lombardi?
A. She was a senior executive at the company, at Qualcomm, at the time.
Q. And what was her role at the company?
A. I honestly don't recall.
Q. Do you recall why you and Ms. Lombardi were teamed to work on this discussion with Dr. Raleigh and Jim Straight?
A. Yeah. Let me just read this real quick.
Q. Yeah, please. Any -- and just for the record, Mr. Wise, any time I put a document in front of you, you know, take your time and read through it; and I should have instructed you on that earlier. So please take a look, read through the e-mail, and then we can ask questions.
A. Okay. I'm sorry, can you repeat the question?
Q. Sure. Let me step back and ask you a

36

different question.
   The subject says, "ItsOn Next Steps."
   Are you familiar with an entity or a company called "ItsOn"?
A. I recall the name, yes.
Q. Were you aware that Dr. Raleigh formed ItsOn before he left Qualcomm in September of 2008?
A. No.
Q. Are you -- were you aware that ItsOn was a company that was owned by Dr. Raleigh?
A. Yes.
Q. And my first question was, do you recall why you and Ms. Lombardi were teamed together to work on this discussion with Dr. Raleigh and Mr. Straight?
A. Only that I assume it's -- based on this e-mail, it's a follow-up to the -- you know, evaluating whether there was anything to be -- (garbled audio).
   THE COURT REPORTER: I'm sorry, sir. Anything to be what?
   THE WITNESS: Anything to be done evaluating a partnership with the company, with ItsOn.

45

1  last page. There.
2     Okay. So this is an April 21st, 2009,
3  e-mail from Gina Lombardi to Jim Straight and
4  Greg Raleigh, and you see that you're -- you are
5  copied on this e-mail, as well, correct?
6  **A. Yes. Let me -- let me just read it.**
7  Q. Yeah, sure.
8  **A. Okay.**
9  Q. Okay. Can you see that the -- the e-mail,
10 which is -- has the subject of "ItsOn," in the
11 body of the e-mail, there's something called a
12 "Seed Investment."
13    Do you see that?
14 **A. Yes.**
15 Q. And was this an offer by Qualcomm to
16 invest in ItsOn?
17 **A. Looks to be, yes.**
18 Q. Do you recall this e-mail or this
19 potential investment by Qualcomm in ItsOn?
20 **A. Beyond the e-mail, no.**
21 Q. But in the e-mail, it looks like Qualcomm
22 was willing to invest $2 million plus a license
23 to the relevant Qualcomm IP for a 20 percent
24 stake.
25    Do you see that?

46

1  **A. Yes.**
2  Q. And presumably that's a 20 percent stake
3  in ItsOn, correct?
4  **A. I believe so.**
5  Q. And what is a "1X liquidation preference"?
6  **A. It's a -- a term associated with an**
7  **investment in a private company.**
8  Q. And can you explain it to me, how it would
9  relate to this potential agreement with ItsOn?
10 **A. It would be some sort of protection over**
11 **the two-million-dollar investment in a**
12 **liquidation.**
13 Q. And what is a "full ratchet
14 anti-dilution"?
15 **A. Another term in venture investments,**
16 **private companies, around protecting the value of**
17 **our investment going forward as new money comes**
18 **in.**
19 Q. So it would protect Qualcomm's 20 percent
20 stake?
21 **A. Right.**
22 Q. And prevent it from being diluted?
23 **A. Yes.**
24 Q. And it looks like in this seed investment,
25 Qualcomm would be committing to support

47

1  commercialization of ItsOn software on Qualcomm
2  chips?
3  **A. Yes.**
4  Q. And the last item in that list is
5  "resolution of IP ownership issue."
6     Do you see that?
7  **A. Yes.**
8  Q. And I asked you before if you recalled a
9  dispute between Dr. Raleigh and Qualcomm
10 regarding an IP ownership issue.
11    Does this refresh your recollection?
12 **A. No.**
13 Q. So as you sit here today, you have no
14 recollection whatsoever of the ownership interest
15 dispute between Dr. Raleigh and Qualcomm?
16 **A. Honestly, I don't.**
17    MR. HEJNY: Let's move up to the
18 next e-mail in the chain, please.
19 Q. (BY MR. HEJNY) And this e-mail begins at
20 the bottom of Bates 418.
21    And so this is an e-mail from Jim
22 Straight, who is at Headwater, to Gina Lombardi
23 and Greg Raleigh and you are copied.
24    Do you see that?
25 **A. Yes.**

48

1  Q. And it looks like in this portion of -- of
2  the process, there is a due diligence going on.
3     Do you see that?
4  **A. Can I just read the e-mail?**
5  Q. Yeah, please. Please take your time and
6  read the e-mail.
7     THE WITNESS: And can you just
8  scroll up a little bit on it, so we can... yeah,
9  that's good. Thanks.
10    Okay. Can you scroll back up a
11 little bit now? Okay.
12 Q. (BY MR. HEJNY) So in this e-mail,
13 Mr. Straight from Headwater identifies
14 diligence -- a diligence items action list.
15    Do you see that?
16 **A. Yes.**
17 Q. And do you recall any meetings with
18 Headwater or Dr. Raleigh in which the seed
19 investment from the first e-mail was discussed in
20 detail?
21 **A. I don't.**
22 Q. And item (1) on the diligence items action
23 list states that, "This week Qualcomm will
24 transmit to ItsOn/HPI the potential prior art
25 search results that Qualcomm believes to be

---

49

1 relevant."
2  You see that?
3  A. Yes.
4  Q. Do you know what "prior art" is, Mr. Wise?
5  A. Not [sic] familiar with the term.
6  Q. So you don't understand the term "prior art" from a -- from a patent or an IP standpoint?
7
8  A. No. I said I'm familiar with the term.
9  Q. Oh, I'm sorry. I misunderstood you.
10  Do you know whether Qualcomm ever sent ItsOn or Headwaters the results of any prior art search that was conducted as part of this process?
11
12
13
14  A. Not beyond what we -- what's said here in the e-mail.
15
16  MR. HEJNY: And let's scroll down to item (4). Maybe scroll up to item four, sorry. It's on the next page.
17
18
19  Q. (BY MR. HEJNY) Item (4) says, the "Next week, Qualcomm and ItsOn/HPI will have a face-to-face meeting same day or next morning immediately after meetings listed in diligence items (2) and (3) for Qualcomm to disclose to ItsOn/HPI the facts, documents, and any other information that Qualcomm possesses that Qualcomm
20
21
22
23
24
25

---

50

1 believes support the Qualcomm claim that it may own some" or -- "some portion of ItsOn's IP."
2
3  Do you see that?
4  A. Yes.
5  Q. Do you recall discussions with Dr. Raleigh or Ms. Lombardi regarding this ownership issue, Mr. Wise?
6
7
8  A. I don't.
9  Q. Do you recall the facts, documents, and any other information that Qualcomm possessed suggesting that it may own some portion of ItsOn's IP?
10
11
12
13  A. I don't recall, beyond this e-mail.
14  Q. Do you know if this meeting ever took place, this face-to-face meeting?
15
16  A. I don't know. No reason to assume it didn't, but I don't know.
17
18  Q. Do you recall, regardless of whether this meeting took place, any -- any other evidence or information that Qualcomm had that led it to believe that it owned some portion of ItsOn's IP?
19
20
21
22  MR. KAYS: Again, I'll advise the witness that to the extent such evidence or knowledge was communicated to Headwater, that's fair game, but as -- as framed, it -- the
23
24
25

---

51

1 question potentially invades the attorney/client privilege, so...
2
3  A. I don't recall anything.
4  Q. (BY MR. HEJNY) Do you recall when Qualcomm first informed Dr. Raleigh that it believed it owned some portion of ItsOn's IP?
5
6
7  A. No.
8  Q. Do you understand that Qualcomm consistently maintained that it had an ownership interest in ItsOn's IP?
9
10
11  MR. DAVIS: Objection, form.
12  A. I don't recall beyond what we're seeing in some of these e-mails.
13
14  Q. (BY MR. HEJNY) Do you recall any discussions internally at Qualcomm as to when Dr. Raleigh first invented the IP in question?
15
16
17  A. No.
18  Q. And going to the very first e-mail on the first page --
19
20  A. Can you hang on one second?
21  Q. Yes, please. Take your time.
22  A. I'm sorry, can you repeat the question?
23  MR. HEJNY: Can you read back the question, please?
24
25  (Discussion with the court

---

52

1 reporter, clarifying read-back.)
2  MR. KAYS: I don't think you'd asked a question.
3
4  THE COURT REPORTER: Right.
5  MR. HEJNY: Let's just go back --
6 I just want to make sure.
7  THE WITNESS: Okay.
8  MR. HEJNY: Let's go back to --
9  THE WITNESS: I'm sorry about that.
10
11  MR. HEJNY: I just want to make sure that I didn't leave something hanging.
12
13  (Whereupon the requested testimony
14   was read back as follows:
15   "Do you recall any discussions
16   internally at Qualcomm as to when
17   Dr. Raleigh first invented the IP
18   in question?
19   A. No.")
20  Q. (BY MR. HEJNY) And going to the very first e-mail on the first page of this string...
21
22  MR. HEJNY: Can you scroll up just a little bit? There we go.
23
24  Q. (BY MR. HEJNY) And so this is the first e-mail in the string, April 24th, 2009, from Gina
25