**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff*, | |
| v. | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS and VERIZON CORPORATE SERVICES GROUP, INC., | Case No. 2:23-CV-00352-JRG-RSP |
| *Defendants.* | |

**DEFENDANTS' MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37(e)(1)**

## TABLE OF CONTENTS

I.    Introduction .................................................................................................................1

II.   Factual Background ......................................................................................................2

III.  Legal Standard .............................................................................................................3

IV.   Argument .....................................................................................................................4

      A.    All Four Predicate Elements For Sanctions Under Rule 37(e) Are Satisfied.
            .....................................................................................................................4

            1.    Headwater Was Obligated To Preserve The ItsOn ESI. .............................4

            2.    Headwater Did Not Preserve The ItsOn ESI. ..............................................7

            3.    Headwater Failed To Take Reasonable Steps To Preserve The ItsOn
                  ESI.................................................................................................................8

            4.    The ItsOn ESI Cannot Be Restored Or Replaced. .......................................9

      B.    Verizon Is Severely Prejudiced By Headwater's Failure To Preserve. .................10

      C.    The Court Should Grant Relief To Address The Prejudice To Verizon.................14

V.    Conclusion .................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Edwards v. Junior State of Am. Found.,*
2021 WL 1600282 (E.D. Tex. Apr. 23, 2021) .......................................................3, 4, 14, 15

*Balancecxi, Inc. v. Int'l Consulting & Rsch. Grp.,*
2020 WL 6886258 (W.D. Tex. Nov. 24, 2020) ...........................................................3, 4

*Jim S. Adler, P.C. v. McNeil Consultants, LLC,*
2023 WL 2699511 (N.D. Tex. Feb. 15, 2023)..........................................................4, 10, 15

*EBIN N.Y., Inc. v. SIC Enterprise, Inc.,*
2022 WL 4451001 (E.D.N.Y. Sept. 23, 2022) ...........................................................5

*Moore v. Gilead Sciences, Inc.,*
2012 WL 669531 (N.D. Cal. Feb. 29, 2012) ...........................................................5

*Williams v. Basf Catalysts LLC,*
2016 WL 1367375 (D.N.J. Apr. 5, 2016) ...........................................................5

*Headwater Research LLC v. Samsung Elecs. Co,*
2024 WL 1808601 (E.D. Tex. Apr. 25, 2024)...........................................................5

*Wallace v. Tesoro Corp.,*
2016 WL 7971286 (W.D. Tex. Sept. 26, 2016)..........................................................6

*U.S. ex rel. Harman v. Trinity Indus., Inc.,*
2014 WL 12603247 (E.D. Tex. July 11, 2014) .......................................................6, 14, 15

*GenOn Mid-Atl., LLC v. Stone & Webster, Inc.,*
282 F.R.D. 346 (S.D.N.Y. 2012) ...........................................................6

*In re NTL, Inc. Sec. Litig.,*
244 F.R.D. 179 (S.D.N.Y. 2007) .......................................................6, 7, 8, 9, 12

*Moody v. CSX Transp., Inc.,*
271 F. Supp. 3d 410 (W.D.N.Y. 2017)..........................................................8, 9, 15

*United Healthcare Servs., Inc. v. Rossel,*
2024 WL 1252365 (N.D. Tex. Mar. 21, 2024) ...........................................................9

*Headwater Research LLC v. Samsung Elecs. Co., Ltd.,*
2024 WL 3647624 (E.D. Tex. Aug. 2, 2024) .......................................................7, 9, 12

*Amazon.com, Inc. v. Barnesandnoble, Inc.,*
239 F.3d 1343 (Fed. Cir. 2001)...........................................................12

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.,*
2019 WL 2330855 (E.D.N.Y. 2019)...........................................................13

*Arthrex, Inc. v. Smith & Nephew, Inc.,*
   2016 WL 11750180 (E.D. Tex. Nov. 30, 2016) ......................................................................13

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| Headwater or Plaintiff | Plaintiff Headwater Research LLC |
| Verizon | Defendants Cellco Partnership d/b/a Verizon Wireless and Verizon Corporate Services Group, Inc. |
| Asserted Patents | U.S. Patent Nos. 8,589,541, 9,198,042, and 9,215,613 |
| ItsOn | ItsOn, Inc. |
| Sherwood | Sherwood Partners, Inc. |
| ItsOn ABC | ItsOn Assignment for the Benefit of Creditors, LLC |
| ABC | Assignment for the Benefit of Creditors |
| ItsOn ESI | Relevant ItsOn materials including source code, software, technical documentation, and emails |
| API | Application programming interface |
| IPR | Inter partes review |
| '613 Patent | U.S. Patent No. 9,215,613 |
| '541 Patent | U.S. Patent No. 8,589,541 |

**TABLE OF EXHIBITS**

| Ex. | Description |
|---|---|
| 1 | Nov. 25, 2013, Letter from Headwater to Jones Day, Jacobsen Dep. Ex. 7 |
| 2 | Jan. 15, 2025, Headwater's Second Privilege Log |
| 3 | Apr. 22, 2024 Sealed Version of Headwater's Opposition to Samsung's Motion for Sanctions, HW352-00113038 |
| 4 | Jan. 17, 2025 Deposition Transcript of James Straight |
| 5 | Mar. 14, 2024 Declaration of Greg Raleigh, HW352-00124334 |
| 6 | Jan. 31, 2025 Deposition Transcript of Greg Raleigh |
| 7 | Aug. 8, 2024 Letter from J. Wietholter |
| 8 | Oct. 4, 2024 Email from J. Wietholter |
| 9 | Jan. 31, 2025 Deposition Transcript of Jennifer Smith |
| 10 | Jan. 14, 2025 Headwater's Responses to Verizon's Interrogatory Numbers 30-38 |
| 11 | Jan. 13, 2025 Declaration of Bernie Murphy, Sherwood Partners |
| 12 | Jan. 16, 2025 Deposition Transcript of James Lavine |
| 13 | Jan. 23, 2025 Deposition Transcript of David Johnson |
| 14 | Sept. 9, 2024 Deposition Transcript of Greg Raleigh, in Case No. 2:23-cv-00103, HW352-00256222 |
| 15 | Jan. 30, 2025 Deposition Transcript of Greg Raleigh |
| 16 | Dec. 23, 2024 Email from J. Wietholter |
| 17 | U.S. Patent No. 8,589,541 |
| 18 | Nov. 20, 2024 Headwater's Third Supplemental Objections and Responses to Verizon's Interrogatory Numbers 2-18 |
| 19 | Feb. 2016 ItsOn Marking Page, Wayback Machine |
| 20 | Nov. 2016 ItsOn Marking Page, Wayback Machine |

| 21 | June 7, 2017 ItsOn Marking Page, HW352-0007916 |
|----|------------------------------------------------|
| 22 | Dec. 26, 2017 ItsOn Marking Page, HW352-00097634 |
| 23 | Feb. 14, 2025 Deposition Transcript of Alireza Raissinia |
| 24 | ItsOn Inc. Series D Preferred Stock Purchase Agreement (June 2, 2015), HW352-00095605 |
| 25 | February 6, 2018 Email, HW352-00312213 |

## I.    INTRODUCTION

Headwater has spoliated highly relevant information—including business records, critical source code, and related documents—causing severe prejudice to Verizon.  Despite admittedly anticipating litigation for years, Headwater allowed the widespread destruction of key information underlying Headwater's allegations and did nothing to ensure that these critical materials would be preserved.  The materials—files of Headwater's closely-related sister company, ItsOn, who Headwater says commercialized the asserted patents—have been lost forever.  Then, after allowing ItsOn's files to be destroyed (despite its duty to preserve), Headwater proceeded to sue Verizon on allegations directly relating to ItsOn's activities and the records that were destroyed.  This is the quintessential case of spoliation, necessitating sanctions sufficient to cure the prejudice to Verizon.

The loss of these materials (the "ItsOn ESI") severely prejudices Verizon regarding numerous issues in this case.  Headwater has linked nearly every allegation to ItsOn's business activities and products; indeed, Headwater mentions ItsOn *51 times* in its complaint.  But the actual evidence Verizon would need to disprove those allegations does not exist because Headwater let it be destroyed.  For example, Headwater's arguments for willfulness and copying rely entirely on allegations about Verizon's work with ItsOn, but the ItsOn materials that would disprove Headwater's claims have been destroyed.  Headwater alleges that ItsOn practiced the Asserted Patents and that its products were marked, but here too, the source code that could disprove that is gone.  Headwater's assertions about ItsOn and Verizon's alleged access to ItsOn's technology lay at the very heart of Headwater's contentions regarding infringement, validity, and damages, but Verizon has been deprived of the information with which to refute Headwater's claims.

Because the predicate elements required for sanctions under these circumstances are undeniably satisfied and Verizon will be irreparably prejudiced without relief from the Court, Verizon requests the Court grant relief for Headwater's failure to preserve the ItsOn ESI by

precluding Headwater from (1) introducing any evidence or argument about ItsOn or its business activities, other than what is necessary to rebut any argument Verizon may make about it, (2) asserting willful infringement or copying; and (3) seeking pre-suit damages.

## II.    FACTUAL BACKGROUND

*Headwater and ItsOn.*  Headwater and its sister company, ItsOn, were founded conjointly in 2008.  Ex. 5 ¶¶ 4-5.  The plan was that

*Id.* ¶ 5.  Accordingly,

*Id.* ¶¶ 6, 11.

ItsOn's business did not succeed, and in late 2017,

Ex. 13 at 30:1-8.  Sherwood creates new entities to hold the assets of defunct companies for the benefit of creditors—a process known as "assignment for the benefit of creditors."  Ex. 11 ¶ 1.  Sherwood created "ItsOn ABC" to hold ItsOn's assets.  *Id.*

*Id.* ¶ 2.

*Id.* ¶ 9.

*Headwater's Anticipation of Litigation.*  Headwater has anticipated litigation since at least

Ex. 2 at 226 (No. 591840).  Shortly thereafter,

.  Ex. 1.  Headwater told

*Id.*

Headwater continued to anticipate litigation from that point on,

.  *E.g.*, Ex. 2 at 124 (No. 648000), 216 (No. 743331), 120 (No. 645929).



***Headwater's Failure To Preserve The ItsOn ESI.***

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 37(e)(1), sanctions may be warranted when material that should have been preserved in anticipation of litigation "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."  In that case, "upon finding prejudice to another party from loss of the information," the Court "may order measures no greater than necessary to cure the prejudice."  *Id.*  Rule 37(e) thus sets forth "four predicate elements" that must be established: "namely, that a party was (i) obligated to preserve ESI (ii) but did not do so (iii) because it failed to take reasonable steps to preserve it, and (iv) the ESI cannot be restored or replaced."  *Edwards v. Junior State of Am. Found.*, 2021 WL 1600282, at *7 (E.D. Tex. Apr. 23, 2021) (citing *Balancecxi, Inc. v. Int'l Consulting & Rsch. Grp.*, 2020 WL 6886258, at *12 (W.D. Tex. Nov. 24, 2020)).

████████████████████

Once these four elements are established, the Court should then consider what sanctions are warranted to cure the resulting prejudice. *Id.* at *9. "Rule 37(e)(1) does not contain an 'intent' requirement," thus, the Court need not find intent or bad faith to impose sanctions. *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, 2023 WL 2699511, at *9 (N.D. Tex. Feb. 15, 2023). Curative steps that may be imposed without regard to intent include, for example, "forbidding the party that failed to preserve information from putting on certain evidence." Rule 37(e)(1), 2015 committee note; *Edwards*, 2021 WL 1600282, at *10 (prohibiting plaintiff from offering evidence of an alleged exchange, where the original messages were not preserved and only screenshots remained).

## IV. ARGUMENT

### A. All Four Predicate Elements For Sanctions Under Rule 37(e) Are Satisfied.

#### 1. Headwater Was Obligated To Preserve The ItsOn ESI.

Headwater was obligated to preserve ItsOn's prototypes, source code, and related ESI by at least ████████████████████████████████████████

█████████████████████.[1] Headwater told ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████  Ex. 1. "Certainly if [Headwater] thought [██████] needed to preserve electronic evidence, then the same duty applied to [Headwater] as well." *Balancecxi*, 2020 WL 6886258, at

---

[1] ██████████████████████████████████████████████
████████████████████████████████████████████████
Ex. 1.
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████" Ex. 24 § 3.11.

█████████████████████

\*12.  Thus, on that basis alone, Headwater undeniably was obligated to preserve the ItsOn ESI.

In addition, a duty to preserve documents attaches at least from the time a party contacts outside counsel for purposes of litigation.  *See EBIN N.Y., Inc. v. SIC Enterprise, Inc.*, 2022 WL 4451001, at \*8 (E.D.N.Y. Sept. 23, 2022); *Moore v. Gilead Sciences, Inc.*, 2012 WL 669531, at \*3 (N.D. Cal. Feb. 29, 2012).  Here, Headwater began speaking with outside attorneys at patent litigation firms no later than ██████████████████████████████████████████

████████████  *E.g.*, Ex. 2 at 116, 124, 242 (nos. 642867, 648000, 788900).  Indeed, between

████████████████████████████████████████████

████████████████████████████  Moreover, Headwater need not have anticipated litigation against Verizon specifically, and it has already admitted that ████████

██████████████████████████████████████████.  Ex. 3 at 6; *Williams v. Basf Catalysts LLC*, 2016 WL 1367375, at \*7 (D.N.J. Apr. 5, 2016).  Thus, there is no question Headwater was under an obligation to preserve the ItsOn ESI before the wind-down.

Headwater's argument in the *Samsung I* litigation that it had no obligation to preserve the ItsOn ESI because "██████████████████████████████████████████

████████████████████████  is meritless.  Ex. 3 at 11.  As an initial matter, the premise is absurd in light of Headwater's own assertions about the close relationship between the two companies and this Court's finding that "Headwater and ItsOn are not arms-length entities." *Headwater Research LLC v. Samsung Elecs. Co*, No. 2:22-CV-00422-JRG-RSP, 2024 WL 1808601, at \*2 (E.D. Tex. Apr. 25, 2024).  Headwater's co-founder and former board member, James Straight, ██████████████████████████████████████████

██████████████████████████████  Ex. 4 at 65:14-66:4.

In any event, Headwater's obligation to preserve documents "includes documents within

the possession or custody of a non-party." *Wallace v. Tesoro Corp.*, 2016 WL 7971286, at *8 (W.D. Tex. Sept. 26, 2016); *U.S. ex rel. Harman v. Trinity Indus., Inc.*, 2014 WL 12603247, at *1 (E.D. Tex. July 11, 2014). There is no requirement that Headwater owned ItsOn, that ItsOn was "subordinate" to Headwater, or even that Headwater had the "legal right" or "authority" to obtain documents, as Headwater has wrongly suggested. Ex. 3 at 12. Instead, the requisite control exists where, as here, Headwater had the "practical ability" to preserve the documents. *Wallace*, 2016 WL 7971286, at *8. Even where a party has no "legal control," courts have found the requisite "practical ability" where "common sense" leaves "little doubt that [the non-party] would have complied with a timely request by [the party] to preserve its information." *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 355 (S.D.N.Y. 2012). That is undoubtedly the case here.

Indeed, Headwater's own representations to this Court show it had the practical ability to ensure the ItsOn ESI was preserved. Headwater's founder and CEO, Greg Raleigh, described ItsOn as ███████████████████████████████ Ex. 5 ¶ 6. ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ *Id.* ¶¶ 6, 11. Dr. Raleigh described how ██████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* ¶ 8.

Given this close relationship, and the fact that ItsOn's source code, software, and related technical documentation allegedly embodied ***Headwater's IP***, Headwater cannot claim it did not have the practical ability to preserve the ItsOn ESI. Indeed, there no question ItsOn "would have complied with a timely request by [Headwater] to preserve its information." *GenOn*, 282 F.R.D.

at 355; *see also In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 196 (S.D.N.Y. 2007) (it would be "patently unfair" to hold the party did not have control, where "the assignee party had demonstrated an ability to retrieve critical documents from the assignor when needed").

### 2. Headwater Did Not Preserve The ItsOn ESI.

Headwater concedes it ***did not*** preserve the ItsOn ESI.   As Headwater's corporate



representative, Dr. Raleigh, testified, █████████████████████████████████████

████████████████████████████████████████ Ex. 6 at 494:23-495:2.

Headwater says ██████████████████████████████████ Ex. 7; Ex. 8;

Ex. 9 at 107:7-9.  Headwater represented the materials are with Sherwood and/or ItsOn ABC, *e.g.*,

Ex. 10, but that representation was wrong, as Verizon learned after it subpoenaed them.[2]

Incredibly, ████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████. Ex. 11 ¶ 11.  Moreover, ItsOn ABC ██████████████████

█████████████████████████████████████████████████████

████████████████████████████ *Id.* ¶¶ 8-10. █████████████

█████████████████████████████████████████████████████

█████████ *Id.* ¶ 9.  "███████████████████████████████████." *Id.*

As for other technical documents, ItsOn █████████████████████

██████████████████████████████████ *See* Ex. 12 at 238:17-239:8, 242:3-

243:10; Ex. 13 at 38:20-39:23; *see also* Ex. 11 ¶ 12.  And ItsOn ABC █████████████

---

[2] Notably, as in *Samsung I*, here Headwater initially failed even to "disclose the locations and existence of the ItsOn source code" and custodians.  2024 WL 3647624, at *2-3.  After Samsung's motion—and a year after suing Verizon—Headwater amended its disclosures with the purported location and custodians of the ItsOn ESI, but those disclosures were illusory.  Ex. 11 ¶¶ 8-10.

███████████████████

.” Ex. 11 ¶ 7.  Accordingly, ███████████████████

███████████████████

### 3. Headwater Failed To Take Reasonable Steps To Preserve The ItsOn ESI.

To satisfy its preservation obligations, Headwater needed to take "'affirmative steps' to 'ensure that all potentially relevant [ItsOn] evidence [was] retained.'" *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 428 (W.D.N.Y. 2017).  But Headwater concededly took ***no steps*** to do so. Notably, ███████████████████

███████████████████ *In re NTL*, 244 F.R.D. at 197 (party obligated to issue litigation hold); Ex. 14 at 100:9-101:18 (███████████████████

████); Ex. 3 at 1 (same); Ex. 13 at 34:24-35:23 (███████████████████).

Headwater's failure is particularly egregious in light of the fact that ███████████████

███████████████████

███████████████████

███████████████████

███████████████████ Ex. 2 at 216 (no. 743331).  At the same time, ███████████████████

███████████████████

███████████████████ *Id*. at 204 (no. 726721); Ex. 12 at 235:1-17.

███████████████████

███████████████████

████ Ex. 2 at 120, 158, 160, 178 (nos. 645929, 672998, 674590, 695603).

Yet despite simultaneously working on the wind-down and Headwater's anticipated litigation, ***no one*** told Sherwood there might be litigation implicating ItsOn or that ItsOn ABC should preserve documents accordingly. ███████████████████

8



█████████████████████. Ex. 12 at 250:4-9. ████████████████████

████████████████████████████████████████████. Ex. 6 at 617:24-

619:17.  And ████████████████████████████████████████████████

██████████████████████████████████████  Ex. 13 at 31:19-33:4.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████  *Id*. at 34:24-35:23, 37:20-24.

Even as to the limited materials ██████████████████████████████

██████████████████████████  *Id*. at 42:9-15, 42:25-43:20, 39:20-23.  ████

███████████████████████████████████████████████████████████

██████████████████████████████████  Ex. 12 at 246:24-247:25, 265:11-

266:7.  That, in itself, breached Headwater's duty to preserve. *See Moody*, 271 F. Supp. 3d at 428–

29 (defendants "took no steps to confirm that" the ESI "had been appropriately preserved"); *In re*

*NTL*, 244 F.R.D. at 197 (where a party turned relevant ESI over to another entity without ensuring

the entity would preserve it for litigation, "it failed in its obligation to preserve relevant material");

*United Healthcare Servs., Inc. v. Rossel,* 2024 WL 1252365, at *10 (N.D. Tex. Mar. 21, 2024) (no

reasonable steps to preserve ESI where party failed to retain copies prior to transferring ESI).

### 4.  The ItsOn ESI Cannot Be Restored Or Replaced.

The ItsOn ESI at issue is gone forever and cannot be restored or replaced.  ████████████

████████████████████████████  Ex. 11 ¶¶ 8-10.[3]  █████████████████████

---

[3] Headwater's argument that some ItsOn source code can be restored because certain compiled object code (an ItsOn "APK") "can be decompiled into human readable source code" is wrong and has already been rejected by this Court. Ex. 3 at 15; *Samsung*, 2024 WL 3647624, at *2 (rejecting Headwater's argument that the ItsOn APK was a sufficient replacement for the ItsOn source code).

██████████████

███████████████████████████████████████████████████

█████████████████████ . *Id*. ¶ 7; Ex. 9 at 107:7-9; Ex. 13 at 37:1-12. ███████████████

████████████████████████████████████████████████████████ Ex.

11 ¶¶ 4-6.  Thus, there is no option to restore the missing information.

### B.     Verizon Is Severely Prejudiced By Headwater's Failure To Preserve.

Courts "find prejudice where a party's ability to present its case or to defend is compromised."  *Adler*, 2023 WL 2699511, at *9 (citations and quotations omitted).  Here, Headwater's failure to preserve the ItsOn ESI has seriously compromised Verizon's ability to counter Headwater's self-serving reliance on ItsOn, which permeates every issue in the case.

***Headwater's reliance on ItsOn's business.***  Verizon is broadly prejudiced by the loss of the ItsOn ESI because Headwater's narrative across multiple issues centers on tales of ItsOn's technology and business.  ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ Ex. 18 at 7,

14-17.  Yet Headwater let ████████████████████████████████

██████████████ .  There is no telling how those emails—the unvarnished communications of a company that, in the end, was *not* commercially successful—would rebut Headwater's claims.

Moreover, Headwater's reliance on ItsOn would have no legal relevance if ItsOn did not practice the narrow claims asserted here—but that is impossible to know, because all ItsOn's source code was destroyed.  The asserted '541 claims present a prime example.  ████████████

████████████████████████████████████████ Ex. 6 at 675:4-14.  But Headwater disclaimed claim 1 of the '541 patent in response to Verizon's IPR and asserts only two dependent claims with extremely narrow limitations requiring "intercepting" an API-level or "application

messaging layer request." Ex. 16 (electing claims 79, 83); Ex. 17 at 117:169-19, 32-35. The only possible way to know whether ItsOn used this very specific programming approach would be to examine the source code. But that is impossible, and therefore Verizon is deprived of the ability to rebut Headwater's claims about ItsOn effectively.

**Willfulness, indirect infringement, and copying.** Much of Headwater's complaint is devoted to spinning a tale that Verizon supposedly willfully infringes Headwater's patents (and induces or contributes to infringement) because it allegedly learned of the patented technology from an ItsOn software prototype. Headwater's willfulness and indirect infringement contentions rest on two central assertions relating to the ItsOn prototype: (1) that the alleged prototype had a "a splash page with a notice stating that the platform technologies were covered by several Headwater patents," and (2) that Verizon allegedly "reverse-engineered" or copied what ItsOn shared. Dkt. No. 1 ¶¶ 28, 32; *see also id.* ¶¶ 63, 91, 105 (alleging knowledge and/or willful blindness based on ItsOn software). ██████████████████████████████████████████ ████████████████ Ex. 18 at 17. But Headwater destroyed the evidence that would allow Verizon to disprove these false accusations: the ItsOn prototype and source code.

As to the assertion Verizon had notice of the patents from a "splash page" in the prototype, there is no evidence of that—but without the prototype, it is impossible for Verizon to disprove. ████████████████████████████████████████████████████████████████████ ██████████████████████████. But it is impossible to verify if the test application had any "splash page" or referenced any patents, because the software and source code no longer exists.

As to Headwater's allegations that Verizon "reverse-engineered" and copied from ItsOn, they are impossible for Verizon to effectively rebut because Verizon does not have the thing that was allegedly copied. Indeed, it is not even clear what that "thing" is—██████████████████

11

███████████████████████

████████████, ███████████████████████████████████████████████████

██████████████████████████████. 15 at 314:4-315:22.[4]

If Verizon knew what was allegedly "reverse-engineered" or copied and had the source code for it, Verizon could rebut Headwater's claims in two ways: Verizon could show the prototype is fundamentally different from Verizon's products, and/or it could show the prototype did not practice the asserted claims. Either one would dismantle Headwater's willfulness and copying allegations, but neither option is available now.

Because Verizon cannot show what features the prototype had or how it was programmed, Verizon cannot show that the prototype software bears no resemblance to Verizon's products, which would rebut the false accusation that Verizon "reverse-engineered" or copied the accused technologies from ItsOn. As this Court already concluded, "a fundamental difference between how" Verizon's products "and ItsOn's source code are designed would tend to disprove copying just as similarities would tend to prove it." *Headwater Research LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-00422-JRG-RSP, 2024 WL 3647624, at *2 (E.D. Tex. Aug. 2, 2024). Yet Verizon cannot show that difference, ██████████████████████████. Ex. 15 at 75:20-76:12. By failing to preserve the software and source code, Headwater thus robbed Verizon of the opportunity to show that Headwater's copying allegations are categorically false.

Verizon is also prejudiced because evidence of "reverse engineering" or copying would be "legally irrelevant" if the copied product did not practice the patents—but Verizon cannot show that without the source code. *Amazon.com, Inc. v. Barnesandnoble, Inc.*, 239 F.3d 1343, 1366

---

[4] Headwater's interrogatory responses assert ████████████████████████████ Ex. 18 at 17. At Headwater's 30(b)(6) deposition, ████████████████████████████████████████. 15 at 299:13-309:13, 310:23-312:22; Ex. 6 at 540:17-541:20, 544:2-545:16.

███████████████████████

(Fed. Cir. 2001); *see also Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, at *10 (E.D.N.Y. 2019).  Here, ████████████████████████████████████ ████████████████████████████████████████████████████████████.

Moreover, the asserted claims are narrow and require software limitations—such as intercepting an API-level request—for which the only way to know if they are met is to examine the source code.  Knowing the answer to this question is crucially important, because evidence of copying a non-patented product is improper: it creates "the danger that the jury will unfairly view [the defendant] as a wholesale copyist." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 2016 WL 11750180, at *4 (E.D. Tex. Nov. 30, 2016).  Yet Verizon cannot prove the prototype did not practice the narrow claims Headwater asserts here, because to do so requires the source code.

   ***Marking and pre-suit damages.***  Verizon is also severely prejudiced on the issue of pre-suit damages.  Headwater contends the 2011 prototype was █████████████████████████ ████████████████████████████  Ex. 18 at 44.  The source code could (1) confirm the prototype practiced the Asserted Patents and (2) show it never had the link Headwater claims.  Establishing this unmarked product practiced the Asserted Patents would deprive Headwater of the right to pre-suit damages.  In addition, it is undisputed that ████████████████████ ████████████████████████████████████████████████████████████.  *See* Ex. 19; Ex. 20; Ex. 21; Ex. 22.  ███████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████.  Without the source code, however, Verizon cannot prove that the unmarked products practiced the claims.

   Headwater's flip-flopping regarding whether ItsOn's commercial software practiced the '613 patent demonstrates how acutely the loss of the source code prejudices Verizon.  Headwater's



current position—conveniently—█████████████████████. But that wasn't always the case. ████████████████████████████████████████

████████████████████████████████████████████████████.

████. Ex. 18 at 63.  Headwater amended its response two months later, however, to ████████

████████████████████████████████████. *Id.* at 64.

The testimony of Headwater's inventors is similarly inconsistent.  Although Dr. Raleigh

████████████████████████████████████████████████████

████████████████████████████████████████████████████, Ex.

15 at 276:4-277:7, that testimony was directly contradicted by his co-inventor, Mr. Raissinia, who

██████████████████████████████████████ Ex. 23 at 115:21-25.

Only the source code which has been lost forever can show who is right.

Given Headwater's original interrogatory response and Mr. Raissinia's testimony, there is

a strong chance the source code would allow Verizon to prove that ████████████████████

██████████████ and that Headwater is therefore not entitled to pre-suit damages for that

patent.  Headwater's failure to preserve the ItsOn ESI, however, deprives Verizon of that ability.

### C.    The Court Should Grant Relief To Address The Prejudice To Verizon.

Rule 37(e)(1) allows the court to craft sanctions to cure prejudice to the innocent party and

to deter "those who might be tempted to engage in this type of conduct."  *Harman*, 2014 WL

12603247, at *2.  Here, the appropriate "measures no greater than necessary to cure the prejudice"

to Verizon are for the Court to preclude Headwater from introducing any evidence or argument

about ItsOn or its activities, other than what is necessary to rebut any argument Verizon may make

about it.  *Edwards*, 2021 WL 1600282, at *10.  Moreover, Headwater should be specifically

precluded from asserting willful infringement or copying, and from seeking pre-suit damages.  The

Court should also award Verizon its attorney's fees and expenses "to cover the time and effort

███████████████████

necessary to bring the issue of spoliation before the court." *Adler*, 2023 WL 2699511, at *10.

These sanctions will help to alleviate the prejudice Headwater has inflicted by failing to preserve the ItsOn ESI. Here, because Headwater has some documents showing ItsOn's business activities and certain technology trials between ItsOn and Verizon—██████████████████████████ ████████████████████████████████████████████████ ██████████████████████—Verizon is prejudiced by "the unfair imbalance between [Headwater's] and [Verizon's] ability to procure, examine, and present evidence." *Edwards*, 2021 WL 1600282, at *10 ("While Plaintiffs can offer evidence of the alleged Messages ... [Defendant] is deprived of the opportunity to authenticate and potentially rebut this evidence.").

Headwater cannot, in fairness, be allowed to craft a trial narrative based on ItsOn's business and technology, for which the key evidence has been lost. Headwater cannot be permitted to tell the jury that Verizon "reverse-engineered" or copied the ItsOn solution, when Verizon cannot effectively rebut those allegations because the code for that solution no longer exists. And Headwater cannot, in fairness, claim pre-suit damages, when Headwater's failure to preserve the source code destroys Verizon's ability to show that the unmarked products practiced the patent.

Headwater's failure to preserve the ItsOn ESI "is especially remarkable in view of the important and irreplaceable nature of the data at issue." *Moody*, 271 F. Supp. 3d at 428-29. Without it, "[i]t is impossible, in hindsight, to determine the extent to which" the lost ESI would have impacted this case—although it is evident Verizon's defenses have been seriously damaged. *Harman*, 2014 WL 12603247, at *2. Sanctions under Rule 37(e)(1) are therefore warranted in light of Headwater's "failure to preserve evidence that [Headwater] manifestly knew or should have known was critical to this case." *Edwards*, 2021 WL 1600282, at *10.

## V.    CONCLUSION

For these reasons, the Court should sanction Headwater pursuant to Rule 37(e)(1).

Dated:  March 19, 2025

By:  _/s/ Josh A. Krevitt_
Josh A. Krevitt
jkrevitt@gibsondunn.com
Katherine Q. Dominguez
kdominguez@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Robert Vincent
rvincent@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  214.698.3112
Facsimile:  214.571.2910

Andrew W. Robb (CA Bar No. 291438)
arobb@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
310 University Avenue
Palo Alto, CA 94301
Telephone:  650.849.5334
Facsimile:  650.849.5034

Michelle Zhu
mzhu@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036
Telephone:  202.777.9413
Fax:  202.831.6063

Celine Crowson (D.C. Bar No. 0436549A)
**Hogan Lovells**
555 13th St NW,
Washington, D.C. 20004
Telephone:  202-637-5600
celine.crowson@hoganlovells.com

Tej Singh (California Bar No. 286547)
Yi Zhang (California Bar No. 342823)

16

Kyle Xu (California Bar No. 344100)
**Hogan Lovells**
4 Embarcadero Center Suite 3500
San Francisco, CA 94111
Telephone:  415-374-2300
tej.singh@hoganlovells.com
yi.zhang@hoganlovells.com
kyle.xu@hoganlovells.com

Deron R. Dacus (TX Bar No. 00790553)
**THE DACUS FIRM, P.C**.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: (903) 705-1117
Email: ddacus@dacusfirm.com

*Attorneys for Defendants*

17

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on March 19, 2025.

/s/ *Josh A. Krevitt*
Josh A. Krevitt

**CERTIFICATE OF AUTHORIZATION TO SEAL**

I hereby certify that pursuant to the protective order of the above-captioned case, this motion and exhibits hereto contain confidential information. Accordingly, this document is to be filed under seal.

/s/ *Josh A. Krevitt*
Josh A. Krevitt

**CERTIFICATE OF CONFERENCE**

I hereby certify that pursuant to Local Rules CV-7(h) and (i), counsel for Defendants conferred with counsel for Plaintiff regarding this Motion. Counsel for Plaintiff indicated that they oppose the relief sought herein.

/s/ *Josh A. Krevitt*
Josh A. Krevitt