IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS and VERIZON CORPORATE SERVICES GROUP, INC.,<br><br>*Defendants*. | § § § § § § § § § § § § § § § CIVIL ACTION NO. 2:23-CV-00352-JRG-RSP |

**REPORT & RECOMMENDATION**

Before the Court is Defendants' Motion Regarding Plaintiff Headwater Research LLC's Standing to bring this suit. **Dkt. No. 189**. For the reasons discussed below, the Court finds that Headwater has standing to bring this action and that, therefore, Defendants' Motion should be **DENIED**.

**I.     BACKGROUND**

Plaintiff asserts a series of patents all identifying the same three inventors: Gregory Raleigh, James Lavine, and Alireza Raissinia. Drs. Raleigh and Raissinia were previously employed by Qualcomm and in the course of that employment signed an assignment agreement. The Assignment Agreement provides that all Inventions are assigned to Qualcomm and defines "Inventions" as:

> All inventions, discoveries, developments, formulae, processes, improvements, ideas and innovations, whether patentable or not … made, conceived, reduced to practice, authored, or fixed in a tangible medium of expression by me, … whether or not made, conceived, reduced to practice, authored, or fixed in a tangible medium of expression during working hours, which results from my work or association with the Company, or which results from or is aided by the use of the Company's

> equipment, supplies, facilities or trade secret information, or which is related to or coming within the scope of the Company's business, or related to the Company's products or any research, design, experimental or production work carried on by the Company.

Dkt. No. 189-5 at ¶ 1.1. The Assignment Agreement additionally provides a presumption:

> I agree that an Invention disclosed by me to a third person or described in a patent application filed by me or in my behalf within one year following termination of my employment with the Company shall be presumed to be an Invention subject to the terms of this Agreement unless proved by me to have been conceived and first reduced to practice by me following the termination of my employment with the Company.

*Id.* at ¶ 1.4. Dr. Raleigh left Qualcomm on September 19, 2008.

Defendants contend that the asserted patents were conceived while Dr. Raleigh was still employed by Qualcomm and that, therefore, in line with the above contract language, Qualcomm is a co-owner of the asserted patents and that Plaintiff's failure to join it means that Plaintiff lacks standing. Dkt. No. 189 at 1.

In two previous Headwater litigations, this Court resolved similar disputes and found that Dr. Raleigh's testimony that he conceived the inventions at issue after he had left Qualcomm was credible, and that Headwater had standing. *Headwater Rsch. LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00422-JRG-RSP (hereinafter "*HW I*"), 2024 WL 4332693 (E.D. Tex. Aug. 2, 2024), *report and recommendation adopted,* No. 2:22-CV-00422-JRG-RSP, 2024 WL 4953798 (E.D. Tex. Dec. 3, 2024) (hereinafter *"R&R I"*); *Headwater Rsch. LLC v. Samsung Elecs. America, Inc.*, No. 2:23-CV-00103-JRG-RSP (hereinafter "*HW II*"), Dkt. No. 364 (E.D. Tex. Mar. 31, 2025), *report and recommendation adopted,* Dkt. No. 410 (E.D. Tex. Apr. 20, 2025) (hereinafter *"R&R II"*). Defendants, however, argue that Dr. Raleigh's testimony is not credible because of the following difference: there is now newly obtained testimony from Mr. Lavine, in which he supposedly admits

2

that Dr. Raleigh wrote the provisional applications for the asserted patents before he starting ItsOn, which is a company he formed *before* leaving Qualcomm. Dkt. No. 189 at 1.

## II.     APPLICABLE LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"Where one co-owner possesses an undivided part of the entire patent, that joint owner must join all the other co-owners to establish standing. . . . Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack standing." *Israel Bio-Engineering Project v. Amgen Inc.*, 475 F.3d 1256, 1264 (Fed. Cir. 2005). A plaintiff's failure to join a co-owner forestalls the plaintiff's "ability to satisfy the statutory prerequisites for bringing an infringement suit." *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1378–79 (Fed. Cir. 2020). Further, "a non-consenting co-owner or coinventor can never be involuntarily joined in an infringement action . . . . because 'the right of a patent co-owner to impede an infringement suit brought by another co-

owner is a substantive right.'" *Id.* at 1378 (citing *STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014)). "The party bringing the action has the burden of establishing that it has standing to sue for infringement." *MHL TEK, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1274 (Fed. Cir. 2011). The issue of standing is one for the Court, not the jury. *See DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1291 (Fed. Cir. 2008).

### III. ANALYSIS

The Court focuses its analysis on the unique disputed facts of this case and does not retread ground it covered in *R&R I* or *R&R II*. Accordingly, the only question the Court must resolve is whether Dr. Raleigh's testimony remains credible in view of the new evidence that Defendants point to.

Defendants point to the deposition testimony of Mr. Lavine in which he ostensibly admits that Dr. Raleigh wrote the provisional applications for the asserted patents before starting ItsOn:

> A. (by Mr. Lavine) My understanding -- my recollection is that Greg had written all the -- he had written the provisional applications and had them filed before we before they started the company. That was his idea.
> Q. (by Defendants' attorney) So it was your understanding that Dr. Raleigh wrote the patent applications before starting the company; is that right?
> A. My understanding is that he filed the provisionals before founding the company and -- and started to build because --
> Q. Is it your understanding that he wrote the provisionals before starting the company?
> A. That is -- that's my understanding.
> Q. Okay. But will you agree that those initial product concepts are in some way related to the patents that we've looked at, Exhibit 6, 7, and 8?
> A. Yes.

(Dkt. No. 189-4 at 198:25 – 199:18)

> Q. (by Defendants' attorney) You mentioned earlier that you were under the impression that Dr. Raleigh had written his patent

4

>applications before he started ItsOn. Is that right?
>A. (by Mr. Lavine) That was my recollection.
>Q. So what's that understanding based on?
>A. It was -- it was based on the conversation that I had -- that we had being very cautious about -- he was very concerned about intellectual property.
>Q. Okay. And your takeaway from that conversation was he had written the applications before he left Qualcomm [sic]?
>A. Oh, I don't -- I don't know about the timing of when he left Qualcomm and when he started. I couldn't -- I couldn't say.
>Q. Okay. You're right, I asked this question wrong. Your takeaway from the conversations you had is he wrote the applications before he started at ItsOn?
>A. My understanding was he had written the very first provisional application and filed it before he started talking to people outside of -- like me in -- in the investor community and and and hiring people. That was my understanding.

(*Id.* at 208:11 – 109:16). Defendants contend that this shows that Dr. Raleigh conceived of the inventions at issue in this case while at Qualcomm because ItsOn was a company he formed before leaving Qualcomm.

Plaintiff responds, arguing that Mr. Lavine's testimony is being mischaracterized. Dkt. No. 199 at 14. It contends that what Mr. Lavine actually said is that "he believed Dr. Raleigh wrote ***and filed***—not just wrote—the '354 application before ItsOn started," by which Mr. Lavine meant before ItsOn began "working with investors and hiring people," rather than before "it was formed as a corporate entity." *Id.* at 14-15. For example, Plaintiff argues that Mr. Lavine's use of the term "founding" refers to the period of time in which ItsOn was "converted into a business with payroll" (Dkt. No. 189-4 at 209:20-24) which occurred a few months after Lavine had joined in Fall 2009 (after Dr. Raleigh had already left Qualcomm). *Id.* at 16, n 5 (quoting Dkt. No. 199-5 at 171:1-6, 209:25-210:3 ("Q. So you were a contractor before you were a full-time employee for some

amount of time? A. Everybody was because the company was still being -- it was *still being founded*.") (emphasis added)). Further, Plaintiff contends that it is undisputed that the '354 Application[1] was filed on January 28, 2009 (which is more than four months after Dr. Raleigh left Qualcomm), and that this aligns with the period of time contemplated by Mr. Lavine as being before ItsOn's "founding." Dkt. No. 199 at 16-17.

As the Court found in *R&R I* and *R&R II*, Dr. Raleigh's testimony was credible: "he has shown by a preponderance of the evidence that he did not conceive of the solution while employed at Qualcomm." *R&R II* at 6. Defendants' argument here that their new evidence discredits his testimony is unconvincing. After careful review of Mr. Lavine's testimony and the other relevant facts and filings, the Court is persuaded that Mr. Lavine was indeed referring to Dr. Raleigh having written and filed the applications *after* ItsOn's foundation as a corporate entity and, more importantly, after Dr. Raleigh had left Qualcomm. Defendants' other arguments are similarly unpersuasive. Further, as discussed in the previous R&Rs, Qualcomm's actions support finding that Dr. Raleigh conceived of the inventions after he left. Qualcomm has never litigated the question of ownership of these patents, which is strong evidence that it did not believe it had rights to them.

## IV. CONCLUSION

After review of the briefing, the testimony and evidence, and the Court's prior rulings, the Court finds that Headwater has standing. Therefore, the Court recommends that Defendants' Motion be **DENIED.**

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by

---

[1] All asserted patents cite the '354 Patent application.

6

the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

      **SIGNED this 1st day of June, 2025.**

ROY S. PAYNE  
UNITED STATES MAGISTRATE JUDGE