IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC.,<br>CELLCO PARTNERSHIP d/b/a VERIZON<br>WIRELESS, and VERIZON CORPORATE<br>SERVICES GROUP, INC.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§  Case No. 2:23-cv-00352-JRG-RSP<br>§<br>§<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION

Before the Court is the Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 9,215,613, filed by filed by Defendants Verizon Communications Inc., Cellco Partnership d/b/a Verizon Wireless, and Verizon Corporate Services Group, Inc.. **Dkt. No. 180**. For the reasons discussed below, the Motion should be **DENIED**.

## I. BACKGROUND

Before filing this lawsuit, Plaintiff brought another patent-infringement case against various Samsung entities (the "*Samsung* litigation"). In the *Samsung* litigation, Plaintiff asserted a different patent, U.S. Patent No. 9,143,976, alleging infringement thereof by various functionalities of Android smartphones. *Id.* at 3. Claim 1 of the '976 Patent recites as follows:

"1. A wireless end-user device, comprising:

a wireless wide area network (WWAN) modem to communicate data for Internet service activities between the device and at least one WWAN, when configured for and connected to the WWAN;
a wireless local area network (WLAN) modem to communicate data for Internet service activities between the device and at least one WLAN, when configured for and connected to the WLAN;
a device display;
one or more processors configured to

> classify, for a first end-user application capable of interacting in the device display foreground with a user and capable of at least some Internet service activity when not interacting in the device display foreground with the user, whether or not the first end-user application, when running, is interacting in the device display foreground with the user,
>
> for a time period when data for Internet service activities is communicated through a WWAN modem connection to the at least one WWAN, apply a first differential traffic control policy to Internet service activity on behalf of the first end-user application, such that Internet service activity on behalf of the first end-user application is disallowed when the one or more processors classify the first end-user application as not interacting in the device display foreground with the user, and
>
> indicate to the first end-user application, via an application program interface (API), one or more network access conditions based on the applied first differential traffic control policy, including
>
>> a first network access condition that indicates the unavailability to the first end-user application, when the first end-user application is classified as not interacting in the device display foreground with the user, of Internet data service that is available via the WWAN modem, and
>>
>> a second network access condition that indicates the availability to the first end-user application, when the first end-user application is classified as interacting in the device display foreground with the user, of Internet data service that is available via the WWAN modem."

The jury found that the Android products accused in that case did not infringe '976 Patent. *Id.* at 3–4.

On July 28, 2023, Plaintiff filed suit against Defendants, asserting that they infringe, as is relevant here, the '613 Patent. Dkt. No. 1 at 1.

Claim 1 of the of the '613 Patent recites as follows:

1. A wireless end-user device, comprising:

> a wireless wide area network (WWAN) modem to communicate data for Internet service activities between the device and at least one WWAN, when configured for and connected to the WWAN;

> a wireless local area network (WLAN) modem to communicate data for Internet service activities between the device and at least one WLAN, when configured for and connected to the WLAN;
>
> a non-transient memory to store
>
>> a differential traffic control policy list distinguishing between a first one or more applications resident on the device and a second one or more applications and/or services resident on the device, and
>>
>> a differential traffic control policy applicable to at least some Internet service activities by or on behalf of the first one or more applications;
>
> an interface to allow a user to augment the differential traffic control policy for the first one or more applications but not for the second one or more applications and/or services; and
>
> one or more processors configured to
>
>> classify a wireless network to which the device currently connects in order to communicate data for Internet service activities as at least one of a plurality of network types that the device can connect with,
>>
>> classify whether a particular application capable of both
>>
>>> interacting with the user in a user interface foreground of the device, and
>>>
>>> at least some Internet service activities when not interacting with the user in the device user interface foreground,
>>
>> is interacting with the user in the device user interface foreground, and
>
> selectively allow or deny one or more Internet service activities by or on behalf of the particular application based on whether or not the particular application is one of the first one or more applications, the differential traffic control policy, including any applicable user augmentation of the differential traffic control policy, and the classifications performed by the one or more processors.

'613 Patent at 105:51–106:25.

The Court construed to "classify whether a particular application capable of both interacting with the user in a user interface foreground of the device, and at least some Internet service activities when not interacting with the user in the device user interface foreground, is interacting with the user in the device user interface foreground" as having its plain and ordinary meaning. Dkt. No. 140 at 21. In the instant suit, Plaintiff accuses, among other things (including certain Apple-developed iOS functionality), the same Android features that were accused in the *Samsung* litigation. Dkt. No. 180, at 4; Dkt. No. 201, at 2.

On April 3, 2025, Defendants filed the instant Motion for Summary Judgment, asserting that they are entitled to judgment as a matter of law as to non-infringement of the '613 Patent. Dkt. No. 180.

## II.   APPLICABLE LAW

### A.  Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence

4

is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

### B. Collateral Estoppel

Collateral estoppel, sometimes referred to as "issue preclusion," "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 & n.5 (2008). That is, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979).

For an issue to be barred under collateral estoppel, four requirements must be met: "(1) the issue in the current litigation is identical to the one in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the determination of the issue in the prior action was necessary to the judgment in that prior action and (4) there are no special circumstances that would render estoppel inappropriate or unfair." *UltimatePointer, L.L.C. v. LG Elecs., Inc.*, No. 2:22-cv-00406-JRG, 2023 WL 5511520, at *3 (E.D. Tex. Aug. 25, 2023).

"Collateral estoppel may bar litigation in cases with different but related patents when there are common issues." *ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1274 (Fed. Cir. 2018). This is because "the identity of the issues that were litigated . . . determines whether collateral estoppel should be apply," not whether the "patent claims . . . are identical." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Put differently, the question is whether "the differences between the unadjudicated patent claims and adjudicated patent claims . . . materially alter the question" at bar. *Id.* This analysis, of course, "requires a comparison of the scope of the claims at issue in the [earlier] action with the scope of the claims asserted here." *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1356 (Fed. Cir. 2024). "The determination of claim scope, in turn, is 'a matter of claim construction.'" *Id.* (quoting *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1139 (Fed. Cir. 2018)).

It is not enough, however, for the patents to be "materially the same." *See Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1539 (Fed. Cir. 1995) ("it cannot be presumed that related patents rise and fall together."). Instead, the party invoking collateral estoppel must also show "'that a close identity exists between the relevant features of the accused device and the device previously determined to be infringing' such that they are 'essentially the same.'" *ArcelorMittal*, 908 F.3d at 1274 (quoting *Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n*, 535 F.3d 1322, 1333 (Fed. Cir. 2008)) (second alteration in original). "Accused devices are essentially the same where the differences between them are merely colorable or unrelated to the limitations in the claim of the patent." *Id.* (internal quotations omitted). "A device not previously before the court, and shown to differ from those structures previously litigated, requires determination on its own facts." *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 517 (Fed. Cir. 1993).

6

### III.     ANALYSIS

**A. Collateral Estoppel**

The parties seem to agree on the second, third, and fourth elements of the collateral-estoppel analysis. Thus, whether the doctrine applies hinges on whether "the issue in the current litigation is identical to the one in the prior action." *UltimatePointer*, 2023 WL 5511520, at *3. Accordingly, the Court must identify (1) whether the current and former patents are "materially the same," *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1356 (Fed. Cir. 2024), and, if so, (2) whether the the "[a]ccused devices are essentially the same," *ArecelorMittal*, 908 F.3d at 1274.

In the Motion, Defendants argue that Plaintiff "cannot demonstrate infringement of the '613 Patent consistent with the verdict in the *Samsung* Litigation." Dkt. No. 180, at 7. On this "material similarity" prong, they argue that the "'613 Patent in particular is strikingly similar to the '976 Patent." *Id.* at 4; *see also id.* at 5 (comparing claims). According to Defendants, "Samsung's entire non-infringement defense rested on whether the accused Android features 'classified' whether an application 'is interacting in the device display foreground with the user,' and, based on that classification, 'appl[ied] a first differential traffic control policy' to disallow "'Internet service activity' for that application." *Id.* at 7. That is critical, says Defendants, because "[w]hile the '613 Patent has additional limitations beyond those present in the '976 Patent . . . both patents require 'classify[ing]' whether an application 'is interacting with the user in the device [display/user interface foreground],' and then 'deny[ing]' or 'disallow[ing]' 'Internet service activity' based on that classification." *Id.* at 5 (alterations in original). On this second point, Defendants assert that the "patents, which share the same specification, make no distinction between user interaction with a device 'display' and a device 'user interface.'" *Id.* at 8. Thus, they

7

say, the patents are similar in the aspects material to their and Samsung's non-infringement defenses.

Plaintiff disagrees on several fronts. First, Plaintiff emphasizes that the '613 Patent is broader with regard to its "differential traffic control policy": "While the '976 requires 'disallow[ing]' when an application is classified as not interacting in the device display foreground, the '613 requires 'selectively allow[ing] or deny[ing]' based on a classification of whether an application is interacting in a user interface foreground." Dkt. No. 201, at 5 (emphasis omitted). Thus, the argument goes, even if the *Samsung* litigation were to have established that the accused products "do not 'disallow' Internet service activities," that does not mean that the accused products cannot "'selectively allow or deny' Internet service activities." Dkt. No. 255, at 2.

Next, Plaintiff urges that "the 'classify' element is not the same across the two patents" because there is a difference between a "device display foreground" (as claimed by the '976 Patent) and a "device user interface foreground" (as claimed by the '613 Patent). *Id.* at 6. It points to testimony from both sides' experts and Google's corporate representative that there are other ways for a user to interface with a smartphone than the display. *Id.* at 6. This, it argues, evidences the "significant differences between a 'display' on the one hand and a 'user interface' on the other." *Id.* To Plaintiff, this is key, because it was the lynchpin of Samsung's non-infringement defense. *Id.* ("Samsung's only non-infringement argument . . . was directly tied to the 'display' claim language . . . —claim language that is not at issue here.").

The Court finds Defendants' arguments unpersuasive. Plaintiff is correct that the '613 Patent is broader than the '976 Patent with regard to the "differential traffic control policy." This means, as it points out, that a product that does not infringe the latter might still infringe the former, thus rendering the patents materially different. Defendants come closer to carrying their burden

8

regarding the display/user interface argument, but this too falls short. They merely gesture towards the patents using the terms interchangeably, and while they are correct that Plaintiff does rely heavily on extrinsic testimony, Plaintiff does not have the burden on this point. Accordingly, because Defendants have not carried their burden of showing that the different terms used by '613 Patent and the '976 Patent have a materially similar meaning, the Court concludes that Plaintiff is not collaterally estopped from asserting infringement of the '613 Patent.[1] Therefore, the Motion in this respect should be **DENIED**.

### B. Non-Infringement

On the merits, Defendants assert that they are entitled to summary judgment because the "undisputed facts show" (1) "that the accused Android products do no[t]" "classify when an application is interacting with a user in the device user interface foreground," and (2) that "the accused Apple products also do not infringe the asserted claims because they do not classify whether an application is presently interacting with a user." Dkt. No. 180, at 9–10, 13. The Court addresses each argument in turn.

#### 1. Android Products

First, with regard to the accused Android products, Defendants maintain that they do not infringe because "they merely identify when an application is at the 'top' or 'foreground' . . . without saying anything 'about whether the application is presently interacting with the user.'"(*Id.* at 10. Defendants highlight the Android accused products' "process states," which "indicate whether an application is the 'topmost' application," but they simultaneously emphasize that this

---

[1] Defendants also argue that the accused products are "essentially the same." *ArcelorMittal*, 908 F.3d at 1274. Because the Court has concluded that collateral estoppel does not apply since the patents are not materially similar, it need not reach the issue of whether the accused products are essentially the same. Nevertheless, the Court notes that the *Samsung* litigation did not involve any Apple products or operating-system functionality. Accordingly, the Court harbors serious doubt as to Defendants' ability to show that the iOS and Android systems are "essentially the same." *Pfaff*, 5 F.3d at 517 ("A device not previously before the court, and shown to differ from those structures previously litigated, requires determination on its own facts.").

is irrelevant to whether it is interacting with the user. *Id.* This is because "an application can be the topmost application for many reasons other than the application is interacting with the user." *Id.* "[A]t most," Defendants say, "the process state of 'TOP' indicates that an application has interacted with a user in the past or is capable of interacting with a user in the future, but it does not indicate that the application is presently interacting or engaging in any other two-way communication with the user." *Id.* at 11. To this end, they make much of a hypothetical wherein an individual performs a Google search and then walks away from their phone for several hours. *Id.* at 12. In this example, the search will give the user's browser application a "TOP" classification, and that classification will remain even while the user is away from the phone. *Id.* This, to Defendants, is dispositive, because the browser state will remain even while the user "is not presently interacting with the phone." *Id.*

Relatedly, Defendants emphasize that the claim language requires a classification based on actual interaction (not based on whether the application is "capable" of interacting with the user). *Id.* Defendants characterize Plaintiff's argument as asserting that "a classification that indicates an application may be capable of interacting with a user is sufficient to show infringement." *Id.* at 10–11.

Plaintiff rejects this characterization. Toward that end, it cites testimony from its technical expert, Dr. Wesel, that "[t]he Android Accused Products classify whether a particular application . . . *is interacting* with the user in the device user interface foreground." Dkt. No. 201 at 9 (quoting Dkt. No. 180-2 at ¶ 2078). Rather than focusing on the "TOP" process state, Plaintiff primarily discusses a "foreground" state and a "resumed" state. *Id.* at 10. Both states, according to testimony from an Android Engineer, Mr. Jeff Sharkey, and various sources of Android Developer documentation, are at least partially contingent upon whether the user is actively interacting with

10

the application. *Id.* at 10–11. These examples, Plaintiff says, demonstrate that "Android classifies an application that 'is interacting' with the user" such that summary judgment is improper. *Id.* at 11.

The Court agrees with Plaintiff that summary judgment is improper as to non-infringement of the '613 Patent. To put it simply, the parties present conflicting evidence as to whether the accused Android products "classify whether a particular application . . . is interacting with the user in the device user interface foreground" such that there is a genuine dispute regarding a material fact. Despite Defendants' contentions to the contrary, a reasonable jury could credit Dr. Wesel's testimony that the accused Android products do function in that way, especially given the documentary evidence Plaintiff presents. Moreover, Defendants' hypothetical regarding an individual who interacts with an application and then walks away from his phone is not the silver bullet they think it is. The claim expressly requires that the device contain "one or more processors configured to" making a classification based on the application "interacting with the user"—it does not require that the device always and continuously be making such a classification. Thus, the Court finds that the question of whether the accused Android products infringe the '613 Patent is a disputed fact question squarely within the province of the jury and, accordingly, that Defendants' Motion should be **DENIED** in this respect.

    2. **Apple Products**

Defendants marshal the same arguments with regard to the accused Apple products. Dkt. No. 180 at 13 ("[S]ummary judgment should be granted for the accused Apple products for the same reason as for the Android products."). The only difference seems to be that, instead of sorting applications into categories like "TOP," "foreground," or "resumed," the accused Apple products classify them as either "foreground" or "background." *Id.* For Defendants, such classification does

not meet the '613 Patent's limitation because "[w]hile being in the foreground may be a *precondition* to an application interacting with a user, . . . the classification of foreground is insufficient to indicate an application '*is interacting*' with the user." *Id.* at 14 (emphasis added by the Court).

Not so, says Plaintiff. Again, Plaintiff brings testimony from Dr. Wesel that the Apple accused products do meet the '613 Patent's limitation by classifying applications based on user interaction. Dkt. No. 201 at 12–13. Plaintiff identifies a more specific "foreground-active" classification that points to user interaction as well as a "SpringBoard" component that marks applications based on whether a user has tapped an icon. *Id.* at 13. Plaintiff also points to Apple documentation that links the "foreground" designation to whether the user "is actively using the app." *Id.* at 13–14 (emphasis omitted) ("[T]he Apple developer documentation explains . . . that when a user taps on an application icon and the application is 'transitioning to the foreground-active state,' application developers should 'prepare to interact with the user . . . .'" (emphasis omitted)).

Here, too, the Court agrees with Plaintiff that summary judgment is unwarranted for essentially the same reasons given above. The parties present conflicting evidence as to whether the accused Apple products infringe the '613 Patent, and summary judgment is improper when that is the case. Just as with the Android products, it is for the jury to decide whether the Apple products "classify whether a particular application . . . is interacting with the user in the device user interface foreground." Accordingly, the Court concludes that Defendants' Motion should be **DENIED** in this respect as well.

### IV.   CONCLUSION

For the reasons discussed above, it is recommended that the Motion be **DENIED**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report **by not later than June 18, 2025** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 6th day of June, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE