# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC, § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> VERIZON COMMUNICATIONS INC., § <br> CELLCO PARTNERSHIP d/b/a VERIZON § <br> WIRELESS, and VERIZON CORPORATE § <br> SERVICES GROUP, INC., § <br> *Defendants*. § | Case No. 2:23-cv-00352-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is the Motion to Exclude Expert Opinions of Defendants' Survey Expert Sarah Butler, filed by Plaintiff Headwater Research LLC. **Dkt. No. 172**. For the reasons discussed below, the Motion is **DENIED**.

## I. BACKGROUND

On July 28, 2023 Plaintiff Headwater Research LLC filed suit against Defendants, asserting that they infringe four of its patents: U.S. Patent Nos. 8,589,541; 8,924,543; 9,198,042; and 9,215,613. Dkt. No.1 at 1. On January 29, 2025, the Parties agreed to dismiss the '543 Patent. Dkt. No. 144.

## II. APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme

Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III.   ANALYSIS

Plaintiff argues (1) that Ms. Butler is not qualified to criticize Dr. Wesel's technical analysis; (2) that her opinions on Dr. Wesel's Strategy Analytics should be excluded due to a lack of expertise; and (3) that her survey is not a proper rebuttal. *See generally* Dkt. No. 172.

The Court will take each issue up in turn.

**A.  Ms. Butler's Qualifications**

In the Motion, Plaintiff argues that Ms. Butler does not have the requisite technical skill to be able to opine on Dr. Wesel's technical analysis. *Id.* at 3-4. Plaintiff contends that "Ms. Butler is offering opinions about how technical testing of the amount of data savings attributable to infringing features should be measured" but that she does not have the "knowledge, skill, experience, training, or education in that subject." *Id.* at 4 (citing Dkt. No. 172-5 at 29:20-21 ("I am not a technical expert in terms of what benefits a carrier may be accruing."); *id.* at 66:24-67:1 ("But I do not have a technical—I am not offering an opinion as a technical expert.")).

Specifically, Plaintiff asserts that Ms. Butler is not qualified to offer her opinions critiquing Dr. Wesel's technical methodology and analysis of technical data (*Id.* at 5 (citing Dkt. No. 172-2 at ¶¶ 32-48)), giving as example her critique of Dr. Wesel's "configuration" during testing and his "methodology" (*Id.* (citing Dkt. No. 172-2 at ¶ 45 ("Dr. Wesel's configuration deviates from the actual configuration in the cited 2015 Average User Profile"); *id*. at ¶ 47 ("Again, Dr. Wesel provides no explanation for this methodological decision."); *id*. at ¶ 48 ("By simply using the same

3

apps in both the Android and iOS tests, Dr. Wesel has no way of determining the average data savings for an iPhone configured with apps representative of a typical iPhone user.")). Plaintiff alleges that when questioned further about the nature of her opinions, "she reiterated that her criticism concerned Dr. Wesel's use of the Strategy Analytics Average User Profile data, which was 'unreliable methodologically,' and that '*the manner in which he uses it is unreliable.*'" *Id.* (emphasis added by Plaintiff) (citing Dkt. No. 172-5 at 49: 17-20; *id.* at 16: 22-25 ("I'm certainly offering an opinion as to a methodology that makes assumptions about the manner in which devices are used and how those assumptions then play into his calculations."); *id.* at 79: 21-22 ("Well, again, I think part of the criticism here is methodological"); *id.* at 80: 4-5 ("I don't think methodologically that's appropriate")).

Plaintiff further argues that Ms. Butler also offers opinions and criticisms about Dr. Wesel's testing procedure and technical benefit analysis, as well as on other factors that may have altered Dr. Wesel's technical analysis regarding the cost savings attributable to the accused features, that are also inappropriate for substantively the same reasons. *See id.* at 5-7.

In response, Defendants argue that "Ms. Butler is an undisputed expert on surveys, statistical sampling, consumer behavior, and consumer research" (Dkt. No. 204 at 2) and that she did nothing more than offer such opinions here, which "appropriately rely on her expertise to rebut Dr. Wesel's series of unsupported assumptions about consumer behavior" (*Id.* at 8). Specifically, she "criticizes Dr. Wesel for lacking reliable evidence regarding how many consumers use the accused features and the number of hours they are on cellular rather than Wi-Fi networks, and she fields her own survey to reliably answer those same questions." *Id.* Defendants contend that "[i]n contrast to Dr. Wesel's unsupported speculation, Ms. Butler designed a survey using accepted principles, including a representative population, proper sampling procedures, quality control

4

measures, pretesting, a screening questionnaire, and reliable analysis of the results" and that, therefore, "[t]he survey . . . provides reliable consumer behavior statistics in place of Dr. Wesel's unfounded assumptions." *Id.*

Having reviewed the relevant portions of Ms. Butler's report, the Court finds that she is offering opinions properly within her expertise (consumer preferences, habits, and the like) and that she does not improperly offer any technical opinions. She merely criticizes Dr. Wesel's actions and methodology related to, for example, what an 'average user profile' looks like with respect to the number and type of applications said average user would have installed on their phone.[1] *See e.g.* Dkt. No. 172-2 at ¶ 47. Because what goes into an average user profile—the number and type of applications, for example—are items related to consumer preferences, Ms. Butler is competent to opine on these things and, where necessary, she relies on technical opinions supplied to her by technical experts, such as Dr. Jeffay. *See e.g. id.* at ¶ 33 & n. 89, ¶ 94 & n. 180 , ¶ 107 & n. 196, ¶ 112 & n. 202. While Plaintiff clearly disagrees with Ms. Butler's opinions, this is not a ground for striking.

Accordingly, the Motion to Strike on this basis is **DENIED**.

**B. Strategy Analytics**

In the Motion, Plaintiff argues that "Ms. Butler should not be permitted to offer the prejudicial opinion that the Strategy Analytics data is unclear to a technical expert or that Dr. Wesel's interpretation of that data is technically wrong, as such criticisms go beyond her expertise . . . ." Dkt. No. 172 at 7.

---

[1] Ms. Butler also criticizes other aspects of Dr. Wesel's report. The Court merely uses her criticisms with respect to average user profile as an illustrative example. Ms. Butler's other criticisms of Dr. Wesel's report in the paragraphs at issue are also within her realm of expertise.

5

Specifically, Plaintiff contends that the Strategy Analytics data is not survey data; Strategy Analytics used telemetry data collected via telemetry software (AppOptix) installed on thousands of user devices to create its Average User Profile. *Id.* (citing Dkt. No. 172-4 ("Wesel Infringement Report") at ¶ 2506 ("The [Strategy Analytics] project utilizes Android telemetry data from over 3,400 panelists that have provided data from their smartphones during 2019 via Strategy Analytics' AppOptix Mobile Intelligence Platform. AppOptix … uses a resident software telemetry application"). Plaintiff asserts that this is improper for Ms. Butler to opine on the Strategy Analytics because "Ms. Butler has no experience with smartphone telemetry data, the review of such data, or how it is collected." *Id.* at 8 (citing Dkt. No. 172-2 at Section I (Qualifications Section)).

All the sections of Ms. Butler's report that Plaintiff alleges implicate this asserted issue (Paragraphs 35 and 45-47 (*See id.* at 7-10)) have already been reviewed by the Court in Section III.A above. Plaintiff's new arguments do not change the previously discussed outcome. The Strategy Analytics go toward the creation of an average user profile, which is within Ms. Butler's area of expertise. That the Strategy Analytics do so, technically speaking, by way of collecting users' telemetry data is unimportant because it is not the technical means by which the data is collected that Ms. Butler opines upon. It is what the data is capturing and what the data is being used for that her report is concerned with. It is within Ms. Butler's realm of expertise to opine on such matters.

Accordingly, the Motion to Strike on this basis is **DENIED**.

### C. Whether Ms. Butler's Survey is a Proper Rebuttal

In the Motion, Plaintiff argues that Ms. Butler's rebuttal consumer survey impermissibly lies outside the scope of rebuttal testimony because Dr. Wesel does not offer opinions on consumer

6

behavior or rely on any consumer behavior surveys. Dkt. No. 172 at 11-13. Therefore, Plaintiff asserts, Ms. Butler is 'rebutting' nothing, and is merely using her survey as a vehicle to introduce new and untimely evidence into the case. *See id.* at 12-14 ("Ms. Butler's survey itself is not proper rebuttal. Ms. Butler's report constitutes an impermissible expansion into consumer behavior analysis, unrelated to the technical evaluation and testing presented by Dr. Wesel . . . ."). Plaintiff further complains that "because the new evidence Ms. Butler has created through her survey is not rebutting Mr. Wesel's opinions, and is based on an entirely different methodology, and was not disclosed prior to Ms. Butler's rebuttal report, Headwater has had no opportunity to address this new evidence and methodology through its own rebuttal report." *Id.* at 14.

In response, Defendants argue that Ms. Butler's survey is a permissible rebuttal item for three reasons. First, Defendants assert that it rebuts Dr. Wesel's erroneous assumptions about consumer behavior. In support of this, Defendants point out that Ms. Butler "criticizes Dr. Wesel's reliance on 'Android user profiles to "estimate" that the average user spends nine hours a day, from 8 A.M. to 5 P.M., connected to a cellular network and disconnected from Wi-Fi.'" *Id.* at 12. (citing Dkt. No. 172-2 at ¶¶ 33-37). She also points out that Dr. Wesel provides "no evidence that iPhone users typically make modifications to the default settings for Background App Refresh." *Id.* (citing Dkt. No. 172-2 at ¶ 44). She also argues that Dr. Wesel cherry-picked data and made unsupported inferences from the Strategy Analytics "average user" data. *Id.* (citing Dkt. No. 172-2 at ¶¶ 45-48).

Second, Ms. Butler's survey covers the same subject matter as Dr. Wesel's report for the same reasons laid out in the preceding paragraph. *See id.* at 13. Further, Defendants point out that even Plaintiff acknowledged that "a rebuttal expert can use new methods." *Id.* (citing Dkt. No. 172 at 11). Thus, "[t]he fact that Headwater did not provide its own survey is . . . immaterial." *Id.*

7

Third, "Ms. Butler's report and survey are intended solely to rebut Dr. Wesel's erroneous assumptions regarding consumer behavior that feed into Headwater's damages model." *Id.* In support of this, Defendants point to their damages expert, Ms. Stamm, who they assert uses the survey "for exactly that purpose." *Id.* (citing Dkt. No. 204-14 at ¶¶ 91, 108, 119, 128, Table 8, Table 9).

As to Plaintiff's argument that Ms. Butler's survey constitutes an impermissible expansion into a new area, Defendants assert that

> Ms. Butler may provide rebuttal evidence regarding low awareness or demand for the accused features, to bolster Verizon's rebuttal damages presentation that the features are not important to consumers. Moreover, consumer awareness of the accused features relates not just to demand, but also to whether customers have used the accused features which is an issue Dr. Wesel addresses. Accordingly, Ms. Butler's discussion of consumer awareness and demand is not an impermissible expansion into a new area.

*Id.* at 14.

Finally, as to Plaintiff's complaint about not having an opportunity to respond, Defendants argue that "[n]othing prevented Headwater from presenting its own survey expert during opening reports" and that "the fact that the Docket Control Order does not provide for reply expert reports is not an issue unique to Ms. Butler's report or a reason to exclude it—the same is true of all rebuttal reports." *Id.* at 14-15 (citing Dkt. No. 145).

As a preliminary matter, and as Plaintiff correctly points out in its Motion, "[t]he scope of rebuttal testimony is ordinarily a matter to be left to the sound discretion of the trial judge." *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (5th Cir. 1991). Here, the Court is satisfied that Ms. Butler's survey is directed toward opinions in Dr. Wesel's report and, therefore, that it constitutes a rebuttal opinion. Defendants are correct that it is irrelevant that Plaintiff did not do

8

its own survey; a rebuttal expert is permitted to use different methods and is not bound to using the same approach utilized by the expert they are rebutting.

Further, the Court is satisfied that, once again, the survey does not constitute a technical opinion outside of Ms. Butler's expertise.[2] For example, there is no dispute that, in his assessment of the network capacity savings afforded by the accused instrumentalities, Dr. Wesel utilizes (amongst other things) an 'average' user profile to determine data consumption. Ms. Butler is using her survey to rebut the validity and soundness of both the average user profile Dr. Wesel uses, and the method by which Dr. Wesel constructed it. Again, because what goes into an average user profile—the number and type of applications, for example—are matters related to consumer preferences, Ms. Butler is competent to opine these things, and her use of a rebuttal survey is permissible as a means to criticize Dr. Wesel's report in this regard since he uses these consumer preference issues as an input to his analysis.

Accordingly, the Motion to Strike is **DENIED**.

**SIGNED this 15th day of June, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[2] The other issues that Ms. Butler's survey goes toward vis-à-vis Dr. Wesel's report (e.g., the presence of data saving features such as Background App Refresh on users' phones) are also issues that she is competent to opine upon as they all relate to consumer preferences or other items within her realm of expertise. Further, it is permissible for Ms. Butler to collect this information via a survey.