IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC.,<br>CELLCO PARTNERSHIP d/b/a VERIZON<br>WIRELESS, and VERIZON CORPORATE<br>SERVICES GROUP, INC.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§ Case No. 2:23-cv-00352-JRG-RSP<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM ORDER

Before the Court is Plaintiff Headwater Research LLC's Motion to Strike Certain Opinions of Verizon's Damages Expert Laura B. Stamm. **Dkt. No. 175**. For the reasons discussed below, the Motion is **GRANTED IN PART** as to (1) the portions of paragraphs 16, 202-204, 225, and 275 in Ms. Stamm's report relating to or discussing the 2018 investment offer to Verizon, and (2) to the iOS 7 non-infringing alternative in paragraph 104 of Ms. Stamm's report, and otherwise **DENIED**.

### I. APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow*

*Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II.    ANALYSIS

Headwater asks the Court to exclude certain rebuttal expert opinions of Defendants' damages expert, Laura B. Stamm. Dkt. No. 175 at 1. Specifically, Headwater seeks to strike Ms. Stamm's opinions on (1) Headwater's 2018 investment offer to Verizon, (2) the Interdigital offer to buy Headwater, (3) the opinions relying on Ms. Butler, and (4) the non-infringing alternative opinions for which Ms. Stamm relies on Dr. Jeffay. *Id.* at 6. The Court will take up each issue in turn.

### 1. The 2018 Investment Offer to Verizon

Plaintiff first seeks to exclude Ms. Stamm's opinions on Headwater's 2018 investment offer to Verizon. Dkt. No. 175 at 6 (citing Stamm Report at ¶¶ 16, 202-204, 225, 275). In those paragraphs of her report, Ms. Stamm relies on Headwater's offer to Verizon of an opportunity to invest in Headwater to opine that "Headwater would have been contemplating per patent values of $2 million or less around the time of the hypothetical negotiation." *Id.* at ¶¶ 16, 275. Ms. Stamm further relies on this offer to opine that "Headwater likely would be willing to accept less at the earlier date of the hypothetical negotiation." *Id.* at ¶ 225.

According to Ms. Stamm, the basis for Headwater's offer originated on June 4, 2018, when a private venture capital partnership along with a group of private investors who owned preferred equity in Headwater submitted a non-binding term sheet to Headwater offering to purchase Headwater stock. *Id.* at 202. Less than two weeks later, Headwater informed Verizon of the preliminary terms of the non-binding term sheet and inquired whether Verizon was interested in participating in the financing. *Id.* at 203. Ms. Stamm then concludes that Headwater's offer to

3

Verizon of an opportunity to purchase stock based on the implied valuation is an indication of the value Headwater placed upon the company and its patents. *Id.* at 204.

Plaintiff seeks to strike these opinions on the grounds that "offers to buy the patent-holder's company are not relevant to valuing the specific patents in suit." Dkt. No. 175 at 1. Headwater also seeks to strike this opinion on the grounds that this Court has on three separate occasions found this valuation to be irrelevant to establishing a reasonable royalty. *Id.* at 2 (citing *Headwater Research LLC v. Samsung Electronics Co., Ltd.*, et al., No. 2:22-cv-00422-JRG-RSP, Dkt. No. 482 at 1-2 (E.D. Tex. January 5, 2025) (denying Samsung's motion for leave to serve a supplemental rebuttal report addressing the 2018 investment offer because the investment value of the company that owns the patents does not have a sufficient relationship to the royalty for the defendants' alleged infringement); Dkt. No. 155 at 1 (denying Verizon's motion to compel corporate documents, including funding documents relating to the 2018 offer to Verizon); *Headwater Research LLC v. Samsung Electronics Co., Ltd.*, et al., No. 2:23-cv-00103-JRG-RSP, Dkt. No. 362 at 1-2 (E.D. Tex. March 31, 2025) (denying Samsung's motion for leave to serve a supplemental report, stating that the "Court has already twice found this valuation to be irrelevant for damages purposes.").

Defendants respond that after the Court's issued its Order on March 31, 2025, Ms. Stamm "narrowed" her opinion for the "very narrow purpose" of showing that "the $60 to $70 million figure relating to the 2020 [InterDigital] Letter of Intent would not have been higher if it was closer to the hypothetical negotiation." Dkt. No. 207 at 7 (citing Dkt. No. 207-5 at 73:25-74:19 (Stamm Deposition Transcript)). Defendants further represent that Ms. Stamm will not use the 2018 Investment Letter "as a benchmark for a license." *Id.*

4

Plaintiff responds that the Verizon offer can only show that this value applied earlier if the Verizon offer, in itself, is evidence of the value of the patents-in-suit. Dkt. No. 233 at 5. In its Sur-Reply, Defendants reiterate their plan to use the 2018 Investment Letter to "confirm that the $60 to $70 million figure from the InterDigital Letter of Intent would not have been higher had it been closer to the hypothetical negotiation." Dkt. No. 271 at 4.

As noted above, the Court has already found the 2018 investment offer to Verizon to be irrelevant for damages purposes. For the same reasons as discussed in those decisions, the Court finds the 2018 investment offer to Verizon is irrelevant to the calculation of a reasonable royalty. Though Verizon claims it will only use the 2018 investment offer for a "narrow" purpose to show that the $60 to $70 million figure would not have been higher had it been closer to the hypothetical negotiation, the Court further finds that it would be difficult, if not impossible, to use this offer solely for this narrow purpose without misleading the jury with an irrelevant "benchmark" for a license. Accordingly, the Court finds that this portion of Headwater's Motion should be **GRANTED**. Therefore, the Court **STRIKES** the portions of paragraphs 16, 202-204, 225, and 275 relating to or discussing the 2018 investment offer to Verizon.

2. **Interdigital Offer to Buy Headwater**

In the Motion, Plaintiff also seeks to exclude Ms. Stamm's opinions on Interdigital's offer to buy Headwater. Dkt. No. 175 at 6 (citing Stamm Report at ¶¶ 192-201, 215, 258). In those paragraphs of her report, Ms. Stamm explains that Headwater and InterDigital executed a Non-Binding Letter of Intent ("LOI") under which it was contemplated that Headwater would sell all of its equity or assets, including its patent portfolio, for approximately a "total value of $70 million." Stamm Report at ¶¶ 192-199. Ms. Stamm explains that the LOI was "subject to further due diligence and negotiations" but ultimately "a deal between the two parties was not

consummated." *Id.* at ¶ 196. After noting that Headwater had 460 issues patents, 35 of which had been asserted in litigation, Ms. Stamm opines that this "implies that Headwater viewed its portfolio as worth $2 million per patent on average;" in other words, the 35 patents asserted were the 'valuable' ones which collectively made up the $70 million figure. *See id.* at ¶ 201.

Plaintiff seeks to strike these opinions on the grounds that it is "improper for Ms. Stamm to have derived a ceiling on reasonable royalties based on evidence of an unconsummated offer to purchase the entirety of Headwater" because it is "not relevant to the determination of a reasonable royalty." Dkt. No. 175 at 3. Headwater further contends that the "offer says nothing about what value InterDigital or Headwater put on any particular patent in the portfolio, including patents asserted in other litigation or in the present suit." *Id.*

Defendants respond that this Court has already ruled that the LOI "has relevance as an indication of Headwater's willingness to accept that purchase price at that point in time." Dkt. No. 207 at 1 (citing *Headwater Research LLC v. Samsung Electronics Co., Ltd., et al.*, No. 2:22-cv-00422-JRG-RSP, Dkt. No. 435 at 5 (E.D. Tex. Nov. 8, 2024). Defendants contend this is exactly what Ms. Stamm opines in her report. *Id.* at 3 (citing Stamm Report at ¶ 200 ("[T]he LOI provides evidence as to what Headwater was willing to accept for a sale of its entire patent portfolio.")).[1] Defendants further argue that courts regularly allow discussion of similar transactions as

---

[1] Defendants represent that Ms. Stamm does not speculate as to why the InterDigital transaction was not consummated. Dkt. No. 207 at 3. Defendants note that doing so would be impermissible in light of the Court's previous order. *Id.* (citing *Headwater Research LLC*, No. 2:22-cv-00422-JRG-RSP, Dkt. No. 435 at 5 ("[T]he Court hereby STRIKES from Dr. Ugone's report (1) the speculation as to why the InterDigital Letter of Intent was not consummated.")).

The Court further notes that this would violate the Order on the Motions *in limine* issued in the present case. Dkt. No. 302 at 2 ("Exclude from Evidence the Non-Binding InterDigital Letter of Intent (LOI) and Exclude All Evidence or Argument Regarding It, Including Offering or Implying Any Speculation About Why the LOI Was Not Consummated. This motion *in limine* is **GRANTED** only to the extent that Defendants are prohibited from offering speculation as to why the LOI was never consummated.").

informative of the reasonable royalty. *Id.* (citing e.g., *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003) (reversing denial of JMOL as to damages where the award seemed "unbalanced in view of the overall acquisition price"), *vacated on other grounds*, 545 U.S. 193, 125 S.Ct. 2372, 162 L.Ed.2d 160 (2005); *Smartflash LLC v. Apple, Inc.*, No. 6:13-CV-447-JRG-KNM, 2015 WL 11072175, at *2 (E.D. Tex. Jan. 6, 2015) (denying motion to exclude expert's opinions where the expert connected calculations to offers to sell stake in company and offers to sell interest in the patents-in-suit).

The InterDigital LOI is relevant in this case to show what Headwater was willing to accept for a sale of its entire patent portfolio. Accordingly, the Court rejects Headwater's request to exclude these opinions as irrelevant. To the extent that Plaintiff claims that this "offer says nothing about what value InterDigital or Headwater put on any particular patent in the portfolio," the Court finds that Plaintiff's argument goes to the weight of the evidence, not the admissibility, and can be sufficiently addressed on cross-examination.

Headwater also contends that this opinion should be excluded as prejudicial because reference to 35 patents asserted in other cases would suggest to the jury that Headwater has been highly litigious and would force Headwater to either stay silent on this issue or counter with the circumstances of those cases and result in confusion and delay. Dkt. No. 175 at 4.

Defendants respond that Ms. Stamm divides the purchase price by the number of litigated patents to be "conservative in favor of Headwater . . . based on the theory that the litigated patents might be more valuable, on average, than the unlitigated patents." Dkt. No. 207 at 6. Defendants note that dividing the price by the number of litigated patents (35) results in a higher average price than if Ms. Stamm calculated the average across all the patents in the portfolio (460). *Id.*

7

Regardless, Defendants contend that the parties can discuss the LOI without mentioning other litigations.

The Court agrees that the parties can discuss the LOI without mentioning other litigations. Accordingly, to the extent that either party seeks to introduce evidence of other litigations in connection with the LOI, the Court orders the parties to seek leave of Court before doing so in accordance with the Court MIL No. 13.

In sum, the Court finds that the LOI is relevant in this case to show what Headwater was willing to accept for a sale of its entire patent portfolio. Accordingly, Headwater's request to exclude Ms. Stamm's opinions relating to the InterDigital LOI are **DENIED**. The Court further orders the parties not to mention other litigations when discussing the InterDigital LOI without first seeking leave of Court.

### 3. Opinions Relying on Ms. Butler and Dr. Jeffay

Plaintiff also seeks to exclude opinions based on other experts' allegedly improper opinions. Dkt. No. 175 at 5. Specifically, Plaintiff claims that Ms. Stamm's opinion on what a reasonable royalty should be is based on the opinions of Defendants' survey expert, Ms. Butler, and Defendants' technical expert, Dr. Jeffay. *Id.* If the opinions of Ms. Butler and Dr. Jeffay are excluded, Plaintiff argues that Ms. Stamm's opinions relying on these experts should also be excluded. *Id.*

#### a. Opinions Relying on Ms. Buttler

In its Motion, Plaintiff seeks to exclude opinions for which Ms. Stamm relies on Ms. Butler. Dkt. No. 175 at 6 (citing Stamm Report at ¶¶ 108, 111-113, 117-128, 243, 271, 276, and Exhibits 3, 7.3, and 8). Plaintiff argues that the Court should exclude the rebuttal opinions offered by Ms. Butler because she "is not qualified to rebut the technical benefit analysis of Headwater's technical

expert." *Id.* at 5. Plaintiff contends that if the Court excludes Ms. Butler's report, the identified paragraphs of Ms. Stamm's report must also be excluded. *Id.*

In the Court's separate Order addressing Plaintiff's Motion to Exclude Certain Opinions of Ms. Butler, the Court determined that Ms. Butler is offering opinions properly within her expertise and that she does not improperly offer any technical opinions. Having found that Ms. Butler is qualified to offer to the relevant opinions, the Court finds that Plaintiff's motion to exclude Ms. Stamm's opinions for which she relies on Ms. Butler should also be **DENIED**.

### b. Opinions Relying on Dr. Jeffay

In its Motion, Headwater also seeks to exclude "the late-disclosed non-infringing alternative in paragraph 104" of Ms. Stamm's report where she relies on Dr. Jeffay's opinion that Verizon had several non-infringing alternatives. Dkt. No. 175 at 5-6 (citing Stamm Report at ¶ 104). Plaintiff argues that if Dr. Jeffay's opinions on "this alternative" are excluded as untimely disclosed, then Ms. Stamm's opinions relying on Dr. Jeffay should also be excluded. *Id.* at 6.

Defendants respond that even if the Court excludes Dr. Jeffay's opinions on those "two non-infringing alternatives," the Court should still not exclude Ms. Stamm's opinions because Dr. Jeffay's analysis "was not limited to those [non-infringing alternatives] Headwater raises in its motion." Dkt. No. 207 at 8-9.

The Court notes that Ms. Stamm explains in her report that "Dr. Jeffay provides multiple examples of non-infringing alternatives," including "iOS 7.0" and "earlier iOS versions." Stamm Report at ¶¶ 104-105. Based on these non-infringing alternatives, Ms. Stamm ultimately opines that "without proof of any benefits properly apportioned to the asserted claims of the Asserted Patents, a reasonable royalty would be near zero." *Id.* ¶ 107.

As stated in the Court's separate Order addressing Headwater's Motion to Exclude Dr. Jeffay's Opinions, the Court struck Dr. Jeffay's opinions regarding the iOS 7 through 10 non-infringing alternative. Accordingly, the Court **STRIKES** the portion of paragraph 104 relating to the iOS 7 non-infringing alternative from Ms. Stamm's report.[2] The Court finds, however, that Ms. Stamm also relies on Dr. Jeffay's opinion that other non-infringing alternatives exists, including at least the "earlier iOS versions." Stamm Report at ¶ 105; *see also* Jeffay Rebuttal Non-Infringement Report at ¶¶ 801-802 (identifying versions prior to iOS 7 and Claim 1 of the '541 Patent as non-infringing alternatives). Accordingly, the Court finds that Ms. Stamm's other opinions in paragraphs 104-107, including her ultimate opinion that "[w]ithout proof of any benefits properly apportioned to the asserted claims of the Asserted Patents, a reasonable royalty would be near zero," should not be excluded.

### III.   CONCLUSION

Accordingly, the Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**. It is **ORDERED** that the portions of paragraphs 16, 202-204, 225, and 275 in Ms. Stamm's report relating to or discussing the 2018 investment offer to Verizon and the portion of paragraph 104 discussing the iOS 7 non-infringing alternative are **STRICKEN**. The Motion is otherwise **DENIED**.

**SIGNED this 15th day of June, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[2] For clarity, the other versions of iOS that Ms. Stamm relies upon—namely, iOS 11 and iOS 13—are not stricken.