# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> VERIZON COMMUNICATIONS INC., § <br> CELLCO PARTNERSHIP d/b/a VERIZON § <br> WIRELESS, and VERIZON CORPORATE § <br> SERVICES GROUP, INC., § <br> § <br> *Defendants*. § | Case No. 2:23-cv-00352-JRG-RSP |

## REPORT AND RECOMMENDATION

Before the Court is the Motion for Summary Judgment of Verizon's First, Fifth, and Sixth Affirmative Defenses, filed by Plaintiff Headwater Research LLC. **Dkt. No. 173**. For the reasons discussed below, the Motion should be **GRANTED** as to laches, and otherwise **DENIED**.

### I.    BACKGROUND

On July 28, 2023, Plaintiff Headwater Research LLC filed suit against Defendants, asserting that they infringe four of its patents: U.S. Patent Nos. 8,589,541; 8,924,543; 9,198,042; and 9,215,613. Dkt. No.1 at 1. On January 29, 2025, the Parties agreed to dismiss the '543 Patent. Dkt. No. 144.

On April 2, 2025, Plaintiff filed the instant Motion for Summary Judgment, alleging that Defendants have failed to adduce evidence sufficient to create a genuine issue of material fact for their affirmative defenses of Failure to State a Claim, and License, Exhaustion, Waiver, Estoppel, Laches, and Acquiescence. Dkt. No. 173 at 1.

### II.    APPLICABLE LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

### III.    ANALYSIS

#### A.  Failure to State a Claim

In the Motion, Plaintiff asserts that failure to state a claim is not an affirmative defense and, therefore, it is entitled to summary judgment. Dkt. No. 173 at 5-6.

Defendants respond, arguing that failure to state a claim is commonly pleaded as an

2

affirmative defense in an answer because FRCP 12(h)(2) allows it to be raised in any pleading. Dkt. No. 205 at 25-26 (citing *Gessele v. Jack in the Box, Inc.*, 2011 WL 3881039, at *3 (D. Or. Sept. 2, 2011) (internal quotations and citations omitted)). Moreover, they assert that they are not pursuing their first affirmative defense of failure to state a claim beyond the two motions already filed on this issue: Defendants' Motion to Dismiss for Lack of Standing (Dkt. No. 189), and Defendants' Motion for Judgment on the Pleadings Under Rule 12(c) that the Asserted Claims Are Invalid Under 35 U.S.C. § 101 (Dkt. No. 190). *Id.* at 1 n.1, 26.

The Court has already addressed both of the above motions. Dkt. No. 292; Dkt. No. 300. Accordingly, this issue should be **DENIED AS MOOT**.

### B. Acquiescence, Equitable Estoppel, and License

In the Motion, Plaintiff asserts that there is no evidence of any kind to support a defense of license. Dkt No. 173 at 6. In response, Defendants do not dispute that they lack a formal license, but instead assert that they have an implied license by way of equitable estoppel. *See* Dkt. No. 205 at 13.

Equitable estoppel requires three elements: "(1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016) (citations omitted). "Misleading conduct occurs when the alleged infringer is aware of the patentee or its patents, and knows or can reasonably infer that the patentee has known of the allegedly infringing activities for some time. If the record indicates silence alone, mere silence must be accompanied by some *other* factor which indicates that the silence was sufficiently misleading as to amount to

bad faith." *Id.* The effect of equitable estoppel is "a license to use the invention that extends throughout the life of the patent." *Id.* at 1331.

In their response, Defendants allege that, with respect to the first element for equitable estoppel, (1) Plaintiff's principals specifically promised that they were not going to litigate against Verizon, (2) Plaintiff was focusing on action expanding Headwater's relationship with Verizon, (3) that there was inaction on Plaintiff's patents even after they had issued and Verizon's accused features had been released, and (4) that Plaintiff was silent about its ongoing investigation and plans to sue. *Id.* at 13-14 (relying generally on Sections III and IV of Dkt. No. 205). In view of the above, Defendants contend that this comports with the "most common" scenario in which equitable estoppel appears:

> In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years. In *Dwight & Lloyd Sintering*, Judge Learned Hand noted that estoppel was regularly based on "no further assurance that a known competitor would not be sued than the patentee's long inaction." There is ample subsequent precedent that equitable estoppel may arise where, coupled with other factors, a patentee's "misleading conduct" is essentially misleading inaction.

*Id.* at 14 (quoting *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (internal citations omitted), *abrogated on other grounds*). Specifically, Defendants assert that after Defendants were already engaged in the activities that ultimately gave rise to this suit Plaintiff specifically objected to Defendants' activities (telling Verizon that Headwater was evaluating potential violations of Headwater's "substantial portfolio ... covering device-based, cloud-based, and conventional network equipment-based smart services for mobile devices"), and then did not follow up for nearly ten years. *Id.* (quoting Dkt. No. 205-23 (the "2013 letter")). Further, Defendants argue that Plaintiff was "not just silent, it affirmatively and explicitly told Verizon that it did not intend to assert any claim." *Id.* at 15. "In June 2015, in order to secure

4

funding for Headwater's sister company, ItsOn, Dr. Raleigh signed a written representation stating that there was 'no action, suit, proceeding or investigation by the Company currently pending or which the Company currently intends to initiate.'" *Id.* (quoting Dkt. No. 205-29). Defendants argue that "although 'the Company' in that instance was ItsOn, any reasonable person in Verizon's position would have understood that statement, coming from Headwater's CEO and lead board member, to have encompassed Headwater as well. At a minimum, Dr. Raleigh had an obligation to say something if it did not—where even Headwater's own co-founder, Mr. Straight, understood Headwater and ItsOn to be 'essentially two parts of the same overall company' and 'looked at them as the same,' Verizon could not be expected to view it any differently." *Id.* (quoting Dkt. No. 205-6). Defendants contend that this was true of further investments in 2016 and 2017, totaling over $30 million. *Id.* at 15-16 (citing Dkt. No. 205-30; Dkt. No. 205-31; Dkt. No. 205-38).

Plaintiff argues that Defendants' Motion fails because Defendants must show that Plaintiff's statements were false at the time they were made, and that plaintiff was aware of Defendants' infringement when the statements were made. Dkt. No. 173 at 9. Plaintiff points to the deposition testimony of its CEO, Dr. Greg Raleigh, in support of its contention that it only "acquired 'proof of infringement … much later in time.'" *Id.* at 11 (quoting Dkt. No. 173-7). Plaintiff further argues that the communications Defendants bring up were not misleading. Dkt. No. 224 at 3. Specifically, the 2013 letter made no representation other than that "Headwater 'became aware of the complaint filed by Thomas Russell' alleging 'serious violations of Headwater's intellectual property rights' and that Headwater was 'evaluat[ing] the allegations made in the Complaint.'" *Id.* (quoting Dkt. No. 205-23). As to the subsequent communications as part of Verizon's continued investment in ItsOn, Plaintiff argues that none of these communications were to Defendants, but were instead to Verizon Ventures LLC or Verizon

5

Investments, Inc., and that they were not made by Plaintiff but by ItsOn. *Id.*

The parties spend much time arguing individual points along a timeline that is replete with factual disputes. While the some of the arguments are not persuasive, a reasonable jury looking at the evidence as a whole could infer that Plaintiff misled Defendants.

As to the second element of equitable estoppel, Defendants assert that they relied on Plaintiff's conduct. Specifically, they contend that they would never have made the more than $30 million in investments in ItsOn had Plaintiff not led them to believe that there was no pending investigation or anticipated litigation. Dkt. No. 205 at 18-19 (citing Dkt. No. 205-30; Dkt. No. 205-31; Dkt. No. 205-25).

Plaintiff replies, arguing that with respect to the 2013 letter, Defendants have represented to the Court that "Mr. Russell … was not alleging that 'someone at Verizon actually took an ItsOn product and … tried to replicate it'" (Dkt. No. 224 at 3 (quoting Dkt. No. 182 at 13-14)) and that this shows that Defendants did not rely on the letter. With respect to the 2015-2017 communications, Plaintiff again argues that because they were made by ItsOn (rather than Plaintiff) to non-Defendant Verizon entities, Defendants could not have relied on them. Dkt. No. 224 at 3-4.

The Court finds that there is at least a genuine dispute as to second element here. Plaintiff's arguments to the contrary are unpersuasive. Although the 2015-2017 communications were technically made by ItsOn, this is of not dispositive. First, the communications were coming from Dr. Raleigh, and although he made them on behalf of ItsOn, he was a principal of both companies at that time. Further, it was *Headwater* who was the patentee; ItsOn was merely a licensee. Consequently, that the patentee's CEO told Verizon that there was "no action, suit, proceeding or investigation . . . currently pending or which [they] intended to initiate" may be sufficient for

6

Verizon to rely upon. Second, that Plaintiff communicated these statements to other non-defendant Verizon entities (Verizon Ventures LLC and Verizon Investments, Inc.) is also not dispositive.

As to the third element, Defendants assert that they will be materially prejudiced if Plaintiff is allowed to pursue its case. Dkt. No. 205 at 19. Specifically, they contend that they would be economically prejudiced as to "the over $30 million in investments [which they have] already lost, [and] which [they] would not have undertaken if Headwater had told Verizon about its claims when they allegedly arose." *Id.* Plaintiff offers no counter argument to this point. *See generally* Dkt. No. 224.

"Prejudice may be shown by a change of economic position flowing from actions taken or not taken by the patentee." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1312 (Fed. Cir. 2010). Such change in economic position can include further capital investment by the alleged infringer in the plaintiff and further development of products which plaintiff now accuses of infringement during the period of reliance. *See id.* at 1312-13. Here, Defendants' further investments in ItsOn are sufficient to demonstrate economic prejudice.

Accordingly, in view of the genuine disputes of material facts, the Motion for Summary Judgment on this basis should be **DENIED**.

### C. Exhaustion

Defendants represent that they are no longer pursuing an exhaustion defense. Dkt. No. 205 at 1 n.1.

Accordingly, the Motion as to exhaustion should be **DENIED AS MOOT**.

### D. Laches

In the Motion, Plaintiff argues that laches is no longer available as an equitable defense after the Supreme Court's *SCA Hygiene* decision. Dkt. No. 173 at 7-8 (citing *SCA Hygiene*

*Products v. First Quality Baby Products*, 137 S. Ct. 954, 967 (2017)).

In response, Defendants argue that even after *SCA Hygiene*, laches remains available as an equitable defense to claims for equitable relief. *See* Dkt. No. 205 at 25. In support of this assertion they cite two cases: *SCA Hygiene*, 137 S. Ct. at 967 and *Sycamore IP Holdings LLC v. AT & T Corp.*, 294 F. Supp. 3d 620, 654 (E.D. Tex. 2018) (laches "is a defense only as to claims for equitable relief").

The Court finds that laches is no longer available as an equitable defense to patent infringement, regardless of whether the plaintiff seeks legal remedies, equitable remedies, or both. A careful review of the *SCA Hygiene* opinion in its entirety makes clear that laches is no longer available as an equitable defense to patent infringement at all. The opinion states that:

> [t]he enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. Therefore, applying laches within a limitations period specified by Congress would give judges a "legislation-overriding" role that is beyond the Judiciary's power. As we stressed in *Petrella,* "courts are not at liberty to jettison Congress' judgment on the timeliness of suit."

*SCA Hygiene*, 137 S. Ct. at 960 (internal citations omitted). Plainly then, the Supreme Court was concerned with laches in the context of *timing*. Consequently, Defendants' proposition makes little sense. It would be illogical to allow a defendant to argue that a plaintiff unreasonably delayed and is, therefore, barred from obtaining equitable relief (typically an injunction), but that a defendant is precluded from arguing this same issue as to legal relief. The one falls with the other.

The Supreme Court indicated as much when it explained that:

> [a]pplying laches within the limitations period would also clash with the purpose for which the defense developed in the equity courts. As *Petrella* recounted, the "principal application" of laches "was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation." Laches is a gap-filling doctrine, and where there is a statute of limitations, there is no gap to fill.

8

*Id.* at 961 (internal citations omitted). Thus, where Congress has prescribed a statute of limitations, laches is not available regardless of the nature of the relief a plaintiff seeks.

Accordingly, Plaintiff's Motion as to laches should be **GRANTED**.

**E. Waiver**

Waiver occurs in the patent infringement context "when a party with full knowledge of material facts, either intentionally relinquishes its rights to enforce the patents, or engages in conduct so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *JumpSport, Inc. v. Academy, Ltd.*, 2018 WL 10124888, at *4 (E.D. Tex. Sept. 6, 2018) (internal citations omitted).

Plaintiff's arguments mirror those advanced for acquiescence, equitable estoppel, and license. *See also* Dkt. No. 224 at 6. Likewise, Defendants' arguments largely mirror their response on those issues. *See* Dkt. No. 205 at 21-25. Importantly, however, Defendants now attempt to present the previously made points as showing that Plaintiff waived its rights, arguing that "waiver can be found based on 'silence or inaction, [if it occurs] for *so long a period* as to show an intention to yield the known right.'" *Id.* (quoting *Mars, Inc. v. TruRx LLC*, 2016 WL 4034789, at *6 (E.D. Tex. Mar. 1, 2016) (emphasis added by Court) (internal citations omitted)).

As explained above in the discussion on laches, where Congress has enacted a statute of limitations and the plaintiff has acted within this period, arguments that a plaintiff is none-the-less barred for being untimely is no longer a valid defense. Thus, while waiver remains an equitable defense, attempts to construe a plaintiff as having relinquished its rights because of delay is no longer a valid basis for waiver. An alleged infringer must instead show relinquishment through some other means.

Here, because there are factual disputes regarding the parties' pre-suit actions (*see supra*

9

Section III.B), there remains a genuine dispute of material fact as to whether Plaintiff relinquished.

Accordingly, the Motion as to waiver should be **DENIED**.

### F.  Prosecution History Estoppel

Defendants represent that they are no longer pursuing prosecution history estoppel. Dkt. No. 205 at 1 n.1.

Accordingly, the Motion as to prosecution history estoppel should be **DENIED AS MOOT**.

### IV.   CONCLUSION

For the reasons discussed above, the Court recommends the motion be **GRANTED** as to the defense of laches, and otherwise **DENIED**.

A party's failure to file written objections to the findings, conclusions and recommendations within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 19th day of June, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE