IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC, <br><br>*Plaintiff*, <br><br>v. <br><br>VERIZON COMMUNICATIONS INC., CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, and VERIZON CORPORATE SERVICES GROUP, INC., <br><br>*Defendants*. | Case No. 2:23-cv-00352-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is the Daubert Motion and Motion to Strike Secondary Considerations Opinions of Erik de la Iglesia, filed by filed by Defendants Verizon Communications Inc., Cellco Partnership d/b/a Verizon Wireless, and Verizon Corporate Services Group, Inc.. **Dkt. No. 184**. For the reasons discussed below, the Motion is **GRANTED** as to the sections of Mr. de la Iglesia's report that rely on Dr. Wesel's carrier-specific appendices regarding each carrier's alleged knowledge of ItsOn, Headwater, and the asserted patents, and otherwise **DENIED**.

### I.  APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow*

*Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

2

means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II.    ANALYSIS

Defendants raise a number of issues with the report of Plaintiff's technical expert, Mr. de la Iglesia, with respect to his opinions on secondary considerations which render the asserted patents non-obvious, and his opinions that rely on Dr. Wesel's report. *See generally* Dkt. No. 184.

The Court will take up each issue in turn.

### A.   Whether Mr. de la Iglesia Establishes a Nexus

In the Motion, Defendants argue that "Mr. de la Iglesia fails to establish any reliable nexus between the alleged evidence of secondary considerations and the asserted claims" and that "[w]hile Mr. de la Iglesia offers three reasons he believes a nexus exists, all three opinions are infected with the same issues." *Id.* at 3.

#### 1.   Whether Mr. de la Iglesia Tied his Opinions to the Asserted Claims

Defendants first assert that "Mr. de la Iglesia does nothing to link evidence to the specific features of the asserted claims, and indeed does not even identify which asserted patent is responsible for which alleged secondary considerations." *Id.* (emphasis omitted). "Instead," they argue, "after citing various categories of evidence, Mr. de la Iglesia broadly concludes that the asserted patents, grouped together, are tied to the technical benefits of battery and data savings." *Id.* (citing Dkt. No. 184-2 at ¶¶ 424, 437 (de la Iglesia Report)). Defendants contend that "Mr. de la Iglesia does not distinguish between the two asserted device patents in his analysis" but that "[t]he law requires connecting the evidence to the specific claimed inventions, and his analysis shows he utterly failed to comply with that requirement." *Id.* at 3-4 (citing *Carrier Corp. v. Goodman Global, Inc.*, 64 F. Supp. 3d 602, 620 (D. Del. 2014) ("Carrier cannot claim a nexus

3

between commercial success and ease of installation due to wiring when the latter is an inventive aspect of the '452 patent, not the '004 patent.")).

For the '541 Patent, Defendants claim the "[asserted] claims specifically require 'intercepting' a stack API level request (['541 Patent at] claim 79) and 'intercepting, modifying, blocking, removing, injecting, swapping, or replacing an application interface message' (['541 Patent at] claim 83). But Mr. de la Iglesia makes no attempt to allege that−let alone explain how− the purported secondary considerations relate to manipulating such API messages. Indeed, Mr. de la Iglesia's secondary considerations analysis never mentions API messages or application-layer messages at all." *Id.* at 4. For the '613 Patent, Defendants likewise claim that, while "[t]he '613 Patent claims require a 'differential traffic control policy list,' for example, . . . Mr. de la Iglesia does not address that element (or any other specific claim elements) in his secondary considerations opinions." *Id.* at 5.

In response, Plaintiff argues that "Mr. de la Iglesia opined that the ItsOn products practiced the asserted claims of the '541 Patent and that the Accused Products practice the asserted claims of the '613 and '541 patents. Mr. de la Iglesia also opined that secondary considerations relate to these practicing products. His secondary considerations opinions are thus admissible because they are 'tied to some product, feature, or technology that [Headwater] alleges embodies one or more asserted patents.'" Dkt. No. 215 at 3 (quoting *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 98745 at *2 (E.D. Tex. Jan. 8, 2016)).

Secondary considerations of non-obviousness, like copying, serve as an important check on hindsight bias and "must always when present be considered." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1075-79 (Fed. Cir. 2012). However "a nexus between the copying and the novel aspects of the claimed invention must exist

4

for evidence of copying to be given significant weight in an obviousness analysis." *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012).

The nexus requirement goes primarily to the weight secondary considerations should be given, and the *Daubert* inquiry is one of admissibility rather than weight. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). It is for the fact-finder to determine the magnitude of the nexus that connects a given piece of evidence to the patents in suit and to give appropriate weight to that evidence. However, absent any nexus at all, the evidence cannot be entitled to any meaningful weight. Accordingly, secondary consideration evidence that bears no possible nexus to the inventions of the asserted patents does not constitute sufficiently reliable "facts or data" upon which an expert can base an opinion under Fed. R. Evid. 702. FED. R. EVID. 702.

Here, Mr. de la Iglesia may rely on and offer opinions about secondary indicia so long as this evidence is tied to some product, feature, or technology that Plaintiff alleges embodies one or more asserted patents. *Genband*, 2016 WL 98745, at *2. This is true even if the product embodies technology other than just the asserted patents; the connection is still sufficient to permit the circumstantial inference of a nexus. *Id.* That Mr. de la Iglesia did not, in Defendants' view, adequately apportion the nexus between the various claims and elements of the patents goes, at best, toward the weight of his testimony, not its admissibility.

Further, Defendants' citation to the *Carrier Corp* case is unpersuasive. There, the District Court for the District of Delaware noted that:

> With respect to [Defendant's] motion to strike [Plaintiff's] proffered expert opinions on secondary considerations of obviousness, it is granted only to the extent that Drs. Blackburn and Henze attribute commercial success to the ease of installation due to the single data bus, an invention disclosed in the '452 patent, not the '004 patent; i.e., Carrier cannot claim a nexus between commercial success and

5

ease of installation due to wiring when the latter is an inventive aspect of the '452 patent, not the '004 patent.

*Carrier*, 64 F. Supp. 3d at 620. Critically, however, the '452 Patent was *no longer at issue* in that case (*See id.* at footnote 3), a starkly different situation than the one presently before us.

Indeed, the Federal Circuit has said that "[a] prima facie case of nexus is made when the patentee shows both that there is commercial success, and that the product that is commercially successful is the invention disclosed and claimed in the patent." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1310–11 (Fed. Cir. 2010). In other words, once the plaintiff has shown that there is an allegedly practicing product which exhibits the secondary consideration at issue, it has made out a "prima facie nexus [which shifts] the burden of coming forward with evidence in rebuttal . . . to the challenger." *Id.* at 1311.

Here, (as discussed below) Mr. de la Iglesia has established this prima facie nexus and, therefore, Defendants must now rebut through cross examination and the like.

Accordingly, the Motion to Strike on this basis is **DENIED**.

### 2. Whether Mr. de la Iglesia Connects ItsOn to the Asserted Claims

Defendants next assert that "Mr. de la Iglesia's opinions related to the ItsOn solution are totally disconnected from the asserted claims, because there is no reliable evidence at all in this case that the ItsOn solution even practiced the asserted claims." Dkt. No. 184 at 6 (citing de la Iglesia Report at ¶¶ 429-432). For the '613 Patent, Defendants contend that Plaintiff's own position is that ItsOn did not practice the patent. *Id.* (citing e.g. Dkt. No. 184-6 at 276:4 – 277:7). For the '541 Patent, Defendants contend "Mr. de la Iglesia made no attempt to show that the ItsOn solution practiced the asserted claims (79 and 83) specifically." *Id.*

In response, Plaintiff argues that, with respect to claims 79 and 83 of the '541 Patent, "Mr. de la Iglesia made the requisite showing for nexus, because he clearly alleged the asserted claims

6

were practiced by ItsOn, and provided evidence for that assertion," for example citing HW352-00007344 as an example of how "ItsOn software would provide such benefits." Dkt. No. 215 at 4 (citing de la Iglesia Report at ¶¶ 430, 454, 463). Plaintiff continues, asserting that the 9th slide of HW352-00007344 "shows applications requesting network connections from a Service Processor (and the Service Processor responding with either 'Allowed' or 'Blocked') that are equivalent to the API or application message layer request and response," thereby tying it to asserted claims 79 and 83 specifically. *Id.* at 5 (citing Dkt. No. 215-2).

As to the '613 Patent, Plaintiff represents that it will "not provide testimony regarding nexus as applicable to ItsOn products, because ItsOn did not practice the '613 Patent."

The Court is satisfied that there is sufficient evidence in Mr. de la Iglesia's report to support an assertion that the ItsOn solution practiced the asserted claims of the '541 Patent. As Plaintiff correctly points out, Mr. de la Iglesia relies on, *inter alia*, HW352-00007344, whose 9th slide shows applications requesting network connections from a Service Processor (and the Service Processor responding with either 'Allowed' or 'Blocked') which is (arguably) the equivalent to the API or application message layer request and response, as required by claims 79 and 83 of the '541 patent.

To the extent that Defendants claim that this is insufficient to show the aforementioned, the Court finds that this goes to the weight of the evidence, not its admissibility. Defendants' concerns can be properly addressed on cross-examination.

Accordingly, the Motion to Strike on this basis is **DENIED** with respect to the '541 Patent. Further, with respect to the '613 Patent, the Motion to Strike on this basis is **DENIED AS MOOT** in view of Plaintiff's representation not to provide such testimony.

3. **Whether Mr. de la Iglesia Supports his Opinions that Battery and Data Savings Benefits are Tied to the Asserted Claims**

Finally, Defendants attack Mr. de la Iglesia's opinion that a nexus exists on the ground that his analysis of "the technical benefits allegedly shown by Dr. Wesel, and 'surveys and customer feedback' cited by other Headwater experts, including Dr. Wesel, Mr. Bergman, and Dr. Bazelon, all boil down to the same conclusory assertion." Dkt. No. 184 at 7 (citing de la Iglesia Report at ¶¶ 423-426, 433-437). "According to Mr. de la Iglesia, because the accused features contribute in some way to battery and data savings, and because 'battery life and data savings are very important to smartphone customers,' a nexus therefore exists." *Id.* (citing de la Iglesia Report at ¶ 433). Defendants contend that "[t]his is purely speculation" and "unsupported by facts and data." *Id.* In short, Defendants assert that "[n]one of the evidence Mr. de la Iglesia relies on is tied to the claimed inventions here; it merely relates generally to battery life benefits and network capacity savings." *Id.* (citing de la Iglesia Report at ¶¶ 423-26, 433-37).

In response, Plaintiff argues that Mr. de la Iglesia relies upon the value analysis provided by Dr. Wesel, Mr. Bergman, and Dr. Bazelon which *does* relate to the asserted claims. Dkt. No. 215 at 6 (citing Dkt. No. 215-5 at 250:7-17 ("*[T]he value analysis* that I understand comes from [the] two gentlemen, *revolves around the value of the asserted claims*, and I understand that the asserted claims [as] far as this patent are 79 and 83."); *id.* at 251:10-20 (("[M]y understanding of the Wesel and damages report is that *the benefits provided are the results of practicing the asserted claims… 79 and 83.*") (emphasis added by Plaintiff); *id.* at 252:1-4 ("*[T]he entirety of the benefit that has been described and reported by the damages experts in this case, my understanding comes from the asserted claims.*") (emphasis added by Plaintiff); de la Iglesia Report at ¶ 423 ("According to Dr. Wesel, the asserted patents provide 'several technical benefits, including reducing cellular network traffic, limited data usage by end-user devices, increasing effective battery capacity [etc.] The Asserted claims are directly tied to these benefits, providing a nexus…."); *id.* at ¶ 425 ("I

8

understand that Dr. Wesel conducted testing demonstrating the data savings and battery savings benefits of the accused features *that are associated with the claimed inventions*.") (emphasis added by Plaintiff)).

Plaintiff contends that Defendants do not address this explicit testimony and instead "merely allege that '[b]attery and data savings benefits relate to far more than the claimed inventions'" (*Id.* (quoting Dkt. No. 184 at 7)), which completely ignores "Mr. de la Iglesia's testimony that *the specific battery and data savings benefits* set forth by Dr. Wesel, Mr. Bergman, and Dr. Bazelon *do relate* specifically to the claimed inventions." *Id.* (emphasis in original).

The Court is satisfied that Plaintiff has identified sufficient evidence to support Mr. de la Iglesia's opinions tying battery and data savings to the asserted claims. To the extent that Defendants claim that this is insufficient to support the opinion, the Court finds that this goes to the weight of the evidence, not its admissibility.

Accordingly, the Motion to Strike on this basis is **DENIED**.

### B. Independent Bases for Excluding Mr. de la Iglesia's Opinions on Secondary Considerations

In the Motion, Defendants argue that, apart from the above, there are independent bases to exclude Mr. de la Iglesia's opinions on (1) copying; (2) commercial success; (3) long-felt need and failures of others; and (4) praise, awards, and industry recognition. Dkt. No. 184 at 8-14.

#### 1. Copying

As to copying, Defendants first argue that the opinions should be excluded because "all of Mr. de la Iglesia's copying opinions are related to the ItsOn solution, for which there is no evidence connecting it to the asserted claims" and without a nexus between copying and the novel aspects of the claimed invention, copying evidence is irrelevant. *Id.* at 8 (citing *Wm. Wrigley*, 683 F.3d at 1364).

9

Defendants next argue that "Mr. de la Iglesia [also] fails to identify 'efforts to replicate a specific product,' as the law requires." *Id.* (citing *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010)).

Third, Defendants argue that "Mr. de la Iglesia's copying opinions 'do not contain specialized knowledge outside a juror's common understanding[,]' and 'are not technical or scientific in nature,'" therefore, making them unhelpful to the jury. *Id.* at 9 (quoting *Victaulic Co. v. ASC Engineered Solutions, LLC*, 2022 WL 17250376, at *7 (D. Del. Nov. 28, 2022)). In response, Plaintiff points out that Defendants' first argument again ignores the evidence Plaintiff cites to in Section II.A.2 above. Dkt. No. 215 at 7.

With respect to Defendants' second argument, Plaintiff responds that Defendants' own case—*Wyers*—also allows for the requisite evidence to be shown through "direct evidence such as disassembling a patented prototype…, *or access to the patented product combined with substantial similarity to the patented product.*" *Wyers*, 616 F.3d at 1246 (emphasis added by Plaintiff). Plaintiff asserts that "[h]ere, Mr. de la Iglesia has shown that Samsung had access to the patented product because the patented products were "Samsung devices" which were "operating on the Sprint network" (*Id.* at 8 (quoting de la Iglesia Report at ¶ 463)) and that "Mr. de la Iglesia points to evidence that a Samsung witness, Mr. Durig, 'was asked to provide [the ItsOn APK to Samsung] to find a way to replace it'" (*Id.* (citing de la Iglesia Report at ¶ 463 (quoting in turn Durig Dep. Tr. at 131:17-132:2))). Plaintiff contends that "[t]his is more than sufficient evidence to determine that Samsung took steps to copy the ItsOn patented technology embodied in the Samsung products" *Id.*

With respect to Defendants' third argument, Plaintiff points out that "Defendants' only authority finding a copying opinion to involve lay knowledge was a case where the only even

10

potentially contested issue was whether a pipe coupling was 'installation-ready, which was 'not the type of technical information that a lay juror would require an expert to understand.'" *Id.* at 9 (quoting *Victaulic*, 2022 WL 17250376, at *7). By contrast, Plaintiff asserts, "Mr. de la Iglesia's opinion here is based on a more technically complex comparison of 'the ItsOn software embodying Headwater's technology' to 'Samsung's eventual replacement of the ItsOn software with its own Roaming Reduction software,' using terminology such as the 'ItsOn APK' that a lay juror would not reasonably be expected to understand without expert explanation." *Id.* (quoting de la Iglesia Report at ¶ 465).

As regards Defendants' first two arguments, the Court is satisfied that there is sufficient evidence in Mr. de la Iglesia's report to support his opinions that there is evidence of, at minimum, copying by Samsung of the ItsOn solution, for which (as discussed above) there is sufficient support that it practiced the asserted claims of the '541 Patent. *See supra* Section II.A.2. Defendants' concerns with, for example, the adequacy of Mr. de la Iglesia's evidence with respect to an analysis of the APK itself, are matters best resolved through cross-examination.

As to Defendants' last argument, Plaintiff is correct. While there may be situations involving sufficiently simple and straightforward technologies in which an assessment of copying is something the jury can easily do on its own, this is not one of them. The technology here relates to software in telecommunications networks; this is beyond the ken of the average juror and, consequently, Mr. de la Iglesia's testimony stands to be sufficiently helpful to them.

Accordingly, the Motion to Strike on this basis is **DENIED**.

### 2. Commercial Success

Defendants next argue that Mr. de la Iglesia's opinion that the commercial success of the accused products demonstrates non-obviousness of the asserted claims is unreliable because he

11

allegedly only concludes that the accused products are commercially successful without analyzing whether it is the accused functionality allegedly found therein which drives that commercial success, as is required by law. *Id.* at 9-11 (citing *Data Treasury Corp. v. Wells Fargo & Co.*, 2010 WL 11475580 (E.D. Tex. Feb. 26, 2010)).

Defendants further argue that Mr. de la Iglesia is not competent to testify on commercial success since he is an electrical engineer, and does not have a background in economics, marketing, or some other specialty that would give him the necessary expertise to opine on this.

In response to Defendants' first argument, Plaintiff asserts that this is a "gross mischaracterization of Mr. de la Iglesia's testimony" and that "Defendants do not even attempt to engage with Mr. de la Iglesia's actual opinions regarding commercial success." Dkt. No. 215 at 9. Plaintiff contends that Mr. de la Iglesia specifically tied the undisputed commercial success of the products to the fact that "the claimed inventions provide substantial battery savings and data savings benefits" conferred by the asserted claims. *See id.* at 10 (citing e.g. de la Iglesia Report at ¶ 444 ("As described above, including with respect to Nexus, *the claimed inventions provide substantial battery savings and data savings benefits*. *These factors are very important to customers and drive purchasing decisions*. *Thus, it is my opinion that Defendants' practice of the asserted claims contributes significantly to the high degree of commercial success* that the accused products have had. This is objective indicia of the nonobviousness of the asserted claims.") (emphasis added by Plaintiff)).

In response to Defendants' first argument, Plaintiff contends that "Defendants concede that 'economics [or] marketing' expertise is not necessary to opine on commercial success, because Defendants made no effort to establish that their own expert opining on commercial success has such experience." *Id.* (citing Dkt. No. 215-4 (Jeffay Invalidity report)). Plaintiff further argues that

12

"Mr. de la Iglesia *does* have relevant commercial experience, as he states that he has 'served in a number of chief architect and *founder roles of companies have been acquired or gone public*,' showing that he has relevant industry experience including founding commercially successful businesses." *Id.* (quoting de la Iglesia Report at ¶ 8). "Accordingly," asserts Plaintiff, "Mr. de la Iglesia's testimony is sufficiently reliable because he is independently qualified to testify regarding commercial success, and additionally reliable because he relies on analysis by other qualified experts to provide support for his commercial success opinions." *Id.* at 11.

Regarding Defendants' first argument, the Court is satisfied that Mr. de la Iglesia sufficiently ties his commercial success opinions to the patented features, not merely the accused products generally.

Regarding Defendants' second argument, Mr. de la Iglesia's report shows that he was a part of commercially successful companies which developed commercially successful products in related fields of technology. Thus, the Court finds that he is competent to testify on commercial success here.

Accordingly, the Motion to Strike on this basis is **DENIED**.

### 3. Long-Felt Need and Failures of Others

Next, Defendants argue that "Mr. de la Iglesia's opinions concerning long-felt need and failure of others are conclusory and unreliable" because "[f]or both topics, Mr. de la Iglesia paints in broad strokes about 'the problems associated with mobile device applications consuming excessive amounts of battery power and cellular data to conduct background activities,'" and that "Samsung, Google, and Apple, failed to achieve the sought-after battery and data savings, and that it was not until Headwater's technology was developed—and deployed by ItsOn—that those battery and data savings needs were met." Dkt. No. 184 at 12 (quoting de la Iglesia Report at ¶¶ 446-456).

13

Defendants assert that all Mr. de la Iglesia does is "simply rehash[] other evidences without any expert 'analysis or interpretation of this evidence.'" *Id.* at 12-13 (quoting *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, 2019 WL 6896674, at *3 (E.D. Tex. Dec. 18, 2019)). Defendants conclude that Mr. de la Iglesia's opinions should be excluded for reasons previously articulated, namely that there is no nexus. *Id.* at 13.

In response, Plaintiff argues that Mr. de la Iglesia's opinions regarding long-felt need and failure of others specifically account for the state of the art as described in the Asserted Patents (Dkt. No. 215 at 11 (citing Report at ¶ 447)), as well as evidence of the state of the prior art as described by Google engineer Jeff Sharkey (*Id.* (citing Report at ¶¶ 449-550)), a discussion of "a network capacity crunch" that existed around the time of the claimed inventions (*Id.* (citing Report at ¶¶ 451-453)), an analysis of the relationship between ItsOn, Sprint, and Samsung (*Id.* (citing Report at ¶¶ 454-456)), and as part of his analysis reviewed the prior art alleged by Defendants (*Id.* (citing Report at e.g. ¶ 457)).

Defendants' failure to address the specific testimony to which Plaintiff cites demonstrates that they have not carried their burden. Having reviewed these sections of Mr. de la Iglesia's report, the Court is satisfied that there is sufficient evidence that Mr. de la Iglesia does not, as Defendants assert, simply rehash what other experts have done.

Accordingly, the Motion to Strike on this basis is **DENIED**.

### 4. Praise, Awards, and Industry Recognition

Finally, Defendants argue that "Mr. de la Iglesia's opinions regarding praise, awards, and industry recognition are untethered from the asserted claims and therefore unreliable and unhelpful" (Dkt. No. 184 at 13) because "Mr. de la Iglesia includes bulleted lists of produced documents allegedly reflecting 'awards/recognition,' 'praise/news articles,' and 'outside

investments'" (*Id.* (quoting Report at ¶ 458)), but "this evidence relates broadly to Headwater and ItsOn, and the patent portfolio, rather than to the specific asserted claims" (*Id.*). Defendants contend that this is grounds for exclusion "where evidence of secondary considerations does not relate specifically to the claimed inventions and instead relates to the patentee or its products more broadly, for example, an expert's testimony regarding that evidence is inadmissible." *Id.* at 14 (citing *Genband*, 2016 WL 98745, at *2-3 (excluding portions of plaintiff's expert's opinions regarding secondary considerations, and stating the expert "may not rely on evidence of generalized industry praise for Genband as a company" not linked to asserted patents)).

In response, Plaintiff argues that, contrary to Defendants' assertions, "Mr. de la Iglesia explains that ItsOn practiced the asserted claims of the '541 Patent, and the evidence 'specifically call[s] out benefits of the claimed inventions (e.g., cellular data savings) in praising the ItsOn solution'" (Dkt. No. 215 at 12 (quoting Report at ¶¶ 458-459)) and that he "also provides evidence that 'the industry has recognized the value of the Asserted Patents' because patents and patent applications of 'large technology companies such as Samsung, Apple, AT&T, T-Mobile, Verizon, Ericsson, Nokia, Sony, IBM, Qualcomm, Google, Microsoft, Cisco, and Amazon, among others)' have cited to the Asserted Patents and their family members" (Dkt. No. 215 at 12 (quoting Report at ¶ 460)). Plaintiff also shows that Mr. de la Iglesia refers to Dr. Wesel's defendant-specific appendices, which describe Defendants' prior dealings with ItsOn that Plaintiff argues constitute praise/recognition. *Id.* This includes, for example, Verizon's financial investments in ItsOn and Headwater based on their analysis of Headwater's technology, T-Mobile's multi-year project that brought the ItsOn software to millions of smartphones, and AT&T's interest in working with ItsOn. *Id.* (citing Report at ¶ 420).

15

Mr. de la Iglesia's reliance on Dr. Wesel's defendant-specific appendices is problematic. *See infra* Section II.C. However, the Court is satisfied that Mr. de la Iglesia's report presents sufficient evidence tying the industry praise to the asserted claims. While not all of the evidence *explicitly* says that the praise is directed towards the asserted claims, there is ample circumstantial evidence to support that inference. Defendants' concerns in this regard are properly addressed through cross examination.

Accordingly, the Motion to Strike on this basis is **DENIED**.

### C. Opinions Based on Dr. Wesel's Report

In the Motion, Defendants argue that "Mr. de la Iglesia relies on certain of Dr. Wesel's opinions that Defendants are seeking to strike or exclude in a motion against Dr. Wesel" and that to the extent such opinions are excluded from Dr. Wesel's report, those paragraphs of Mr. de la Iglesia's report relying on them should also be stricken. Dkt. No. 184 at 14-15.

Specifically, Defendants point to the sections of Mr. de la Iglesia's report that rely on Dr. Wesel's defendant-specific appendices regarding each defendant's alleged knowledge of ItsOn, Headwater, and the asserted patents to support his opinions regarding secondary considerations. *Id.* (citing Report at ¶¶ 420, 462-465). They also point to the sections of Mr. de la Iglesia's report that rely on Dr. Wesel's opinions regarding the technical benefits of the asserted patents, which rely on the testing Dr. Wesel conducted. *Id.* at 15 (citing Report at ¶¶ 423-426).

The Court has already resolved the above issues in its Order on Defendants' Daubert Motion and Motion to Strike Opinions and Testimony of Dr. Richard Wesel. In it, the Court granted the motion as to Dr. Wesel's opinions regarding Defendants' knowledge, intent, state of mind, and willful blindness, but otherwise denied it.

16

Accordingly, the Motion to Strike the sections of Mr. de la Iglesia's report that rely on Dr. Wesel's carrier-specific appendices regarding each carrier's alleged knowledge of ItsOn, Headwater, and the asserted patents is **GRANTED**, and these sections are hereby **STRICKEN**.

The Motion to Strike is **DENIED** as to the sections of Mr. de la Iglesia's report that rely on Dr. Wesel's opinions regarding the technical benefits of the asserted patents.

**SIGNED this 22nd day of June, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE