IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC.,<br>CELLCO PARTNERSHIP d/b/a VERIZON<br>WIRELESS, and VERIZON CORPORATE<br>SERVICES GROUP, INC.,<br><br>    *Defendants*. | § § § § § § § § § § § § | Case No. 2:23-cv-00352-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is the Motion to Disqualify Wilmer Cutler Pickering Hale & Dorr, filed by Plaintiff Headwater Research LLC. **Dkt. No. 385**. For the reasons discussed below, the Motion is **GRANTED**.

The Fifth Circuit is "sensitive to preventing conflicts of interest" and applies ethical standards rigorously in motions to disqualify. *In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992). Motions to disqualify are determined under federal law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). In the Eastern District of Texas, "[t]he standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in [its] court." Local Rule AT-2. The Court "is not limited to the state's ethical rules but may also consider national norms of professional conduct, including the ABA Model Rules and the Model Code." *Rembrandt Techs., LP v. Comcast Corp.*, No. CIV.A. 2:05CV443, 2007 WL 470631, at *2 (E.D. Tex. Feb. 8, 2007) (citing *In re Am. Airlines*, 972 F.2d at 610).

Rule 1.9(a) of the Texas Rules of Professional Conduct, which concerns duties owed to former clients, states that "A lawyer who has formerly represented a client in a matter shall not

thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Rule 1.10(b) provides: "When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless: (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client … ."

This litigation between Headwater Research LLC and Verizon Wireless has been going on for 2 years. Among the more contentious issues has been a claim by Verizon (also asserted by defendants in related litigation), that Headwater lacks standing because of the claim that the inventor, Dr. Greg Raleigh, was employed by Qualcomm at the time of conception of the invention in the asserted patents. Dr. Raleigh left Qualcomm in September 2008 to run two businesses that he had just formed, ItsOn and Headwater Partners. Headwater was to be the research entity, obtaining the patents, and ItsOn was to be the practicing entity to monetize the patents.

This lawsuit was filed in July 2023 and is set for trial next week, July 17, 2025. Two national law firms have been representing Verizon in this case since August 2023. On June 16, 2025, two members of Wilmer Cutler Pickering Hale and Dorr LLP enrolled as additional counsel for Verizon. Counsel for Headwater immediately contacted the Wilmer counsel concerning a conflict of interest, resulting in the filing of the instant motion on July 9, 2025.

Wilmer relies primarily on 4 arguments against disqualification. First, it emphasizes that it represented ItsOn in 2008-09, rather than Headwater Research, and it represented Headwater Partners in 2012-13, rather than Headwater Research. Second, it shows that the lawyers who handled those matters (save one minor participant) have left the law firm. Third, it argues that the

former matters were not substantially related to the instant case. And fourth, that Headwater delayed unnecessarily in seeking disqualification.

Wilmer's strongest argument is that it represented different entities than the current plaintiff. However, both entities were new fledgling outfits and Dr. Raleigh was the principal of both. Plaintiff has produced for *in camera* inspection a 14-page report dated December 21, 2009 and authored by Wilmer Hale. That report was directed to Gregory Raleigh and emblazoned "attorney-client privileged work product communication." It reflects lengthy conferences with Raleigh and many others, and extensive review of internal confidential records, all leading to findings on inventorship of patents and applications leading to the very patents asserted here and in related litigation. While the client was ItsOn, the principal was clearly Dr. Raleigh.

The records also show that in 2012, Wilmer was engaged again, this time by Headwater Partners, and performed a variety of legal services. Of primary interest here is the drafting of an October 2013 amendment to the license between Headwater and ItsOn, which has become a focus of Verizon's damages expert. Wilmer represented Headwater Partners one last time in 2017 again relating to the license with ItsOn.

The second argument, that the primary lawyers who represented ItsOn and Headwater have left Wilmer, does not matter if the former matter was substantially related to the current matter. *See* Rule 1.10(b)(1), above.

Far and away the most important factor is whether the former matters were "substantially related" to the current matter. This is also the easiest issue for the Court in this case. After devoting untold hours overseeing all of the current Headwater cases, the Court instantly recognized the importance to this case of the issue that Wilmer was commissioned to investigate in 2009. While it has been largely decided at the district court level in this case, it will remain an issue for potential

appeal and in future cases, which are already being filed against Verizon and others. Likewise, the license between Headwater and ItsOn will remain an issue for appeal and in the future cases.

With respect to the fourth argument by Wilmer—that Headwater did not immediately move to disqualify it when Wilmer appeared in this litigation on behalf of a third-party responding to subpoenas in January 2025—the Court agrees with Headwater that representing third-parties on discovery issues is entirely different from enrolling in the case on behalf of the defendant. The Court finds no waiver there. Wilmer also points out that Verizon will undoubtedly encounter some prejudice from the loss of one of its law firms this close to trial. But fortunately, Verizon has two other national law firms and able local counsel. Moreover, Wilmer has only been enrolled for the last three weeks.

This is not a mere mechanical application of the rules. The Court understands how seriously a well-respected law firm like Wilmer Cutler takes such a motion. But there are few things more corrosive to the public confidence in the Bar than having one's former lawyer line up against you across the table. Accordingly, Wilmer Cutler Pickering Hale and Dorr LLP is hereby disqualified from further representation of the Verizon defendants in this matter.

**SIGNED this 11th day of July, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE