# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS AND VERIZON CORPORATE SERVICES GROUP INC.,<br><br>　　　　　　Defendants. | Case No. 2:23-cv-00352-JRG-RSP |

## [DRAFT, PROPOSED]
## FINAL JURY INSTRUCTIONS[1]

---

[1] Submissions which are agreed to by both Plaintiff Headwater Research, LLC ("Headwater") and Defendants Cellco Partnership d/b/a Verizon Wireless and Verizon Corporate Services Group Inc. ("Verizon") are not highlighted. Submissions proposed by Headwater that are not agreed to by Verizon are bracketed and in **blue, bold** font. Submissions proposed by Verizon that are not agreed to by Headwater are in **red, bold** font. In certain places, the parties have inserted footnotes to state their respective positions. But the absence of footnotes to bracketed/colored language does not waive any objections or elaborating on those objections as explained below.

The parties reserve the right to amend these instructions and their respective proposals and objections in advance of the Court's charge conference. The parties also agree to further confer on these instructions and articulate/elaborate on their objections before trial. Accordingly, nothing within these proposed instructions should be construed as a waiver of the parties' positions, arguments, or objections to the proposed instructions.

i

## I.    <u>INTRODUCTION</u>

Ladies and Gentlemen of the Jury: You've now heard the evidence in this case. I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so.

It is your duty to follow the law as I give it to you. On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case. You are about to hear closing arguments from the attorneys for both of the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this form to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson, which you will select, fill in the blanks in that form, date it, and sign it. Answer the questions as directed in the verdict form based on the facts as you find them to be. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

## II.    <u>EVIDENCE</u>

### A.    **Credibility of Witnesses and Evidence**

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them,

you may consider any agreements of the parties, and you may consider all the exhibits received and admitted into evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider a witness's manner and demeanor on the witness stand, any interest they may have in the case, any prejudice or bias about the case that the witness may have. You may also consider the consistency or inconsistency of their testimony, considered in light of the circumstances, including whether the witness has been contradicted by other evidence or made statements at other times and places contrary to what he or she said on the witness stand. You may also consider whether there was evidence tending to prove that the witness testified falsely about some important fact or that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial.

You must give the testimony of each witness the amount of credibility that you think it deserves in light of the circumstances.

You must also keep in mind, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

## B.    Objections of Counsel

As I have told you previously, the attorneys in this case are advocates for their clients, which are opposing parties in this case, and the attorneys have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court. When the Court

[**Headwater: blue**; **Verizon: red**]

sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you must treat the answer to that question just as you would if the objection had not been made. Allowing testimony or other evidence to be introduced over the objection of an attorney is not an indication that the Court has any opinion as to the weight or effect of such evidence.

Now, at times during the trial it was necessary for the Court to talk with the lawyers outside of your hearing at the bench, or by calling a recess and talking to them while you were out of the courtroom. This happened because often during a trial, something comes up that does not involve the jury. You should not speculate about what was said during such discussions that took place outside of your hearing or presence.

### C.    Direct and Circumstantial Evidence

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as testimony of an eyewitness. The other is indirect evidence, which is also called circumstantial evidence. Circumstantial evidence is the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented.

### D.    [Stipulated Facts

The parties have stipulated or agreed to some facts in this case. When the lawyers on both sides stipulate as to the existence of a fact, then you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proven.

Headwater is a Texas limited liability company organized under the laws of Texas, with its headquarters at 110 North College Avenue, Suite 1116, Tyler, Texas 75702.

[**Headwater: blue**; **Verizon: red**]

**Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") is a partnership organized under the laws of the State of Delaware, with its principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920.**

**Defendant Verizon Corporate Services Group Inc. ("Verizon Corporate Services") is a New York corporation with its principal place of business at One Verizon Way, Basking Ridge, New Jersey.]**

### E.    Testimony by Deposition

Certain testimony in this case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented under oath in the form of a deposition.

Before this trial began, attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded the witness's sworn testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness in-person from the witness stand in open court. Accordingly, you should determine the credibility and importance of deposition testimony, to the best of your ability, just as if the witness had testified before you in open court.

### F.    Reasonable Inferences from Evidence

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. However, you should not base your decision on any evidence not

presented by the parties during this case, such as your own personal experience with any of the parties, products, or services that are at issue in the case.

### G.    Sufficiency of Testimony

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if, after considering all of the evidence, you believe that single witness.

### H.    Expert Witnesses

When knowledge of technical or otherwise specialized subject matter may be helpful to the jury, a person who has special training or experience in that field—called an "expert witness"—is permitted to state his or her opinion on those matters. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide whether to rely upon it or not.

### I.    Demonstratives

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, illustration, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aides." Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence. Demonstrative exhibits will not be available for you to view during your deliberations.

## III.    <u>BURDEN OF PROOF</u>

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof."  The burden of proof is on the Plaintiff in this case. The burden of proof that you will apply in this case is the "preponderance of the evidence."

[**Headwater: blue**; **Verizon: red**]

The Plaintiff in this case, Headwater Research LLC, which has been referred to as "Headwater" or "Plaintiff," has the burden of proving patent infringement by a preponderance of the evidence. Headwater also has the burden of proving damages for any patent infringement by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

## IV.    [NO INFERENCE FROM FILING SUIT

Let me remind you, as I did at the beginning of this case, that any patent holder has the right to file suit in a United States District Court and has the right to have that decided by a jury if it believes that its patent rights are being infringed.  Similarly, a defendant has the right to defend itself with any or all available defenses in the United States District Court and has the right to have those defenses decided by a jury if it believes that it does not infringe. You should make no inference from the fact that a suit was filed or brought to trial. You are to consider this suit as a dispute between two sides of this case, the plaintiff on one side and the named defendant on the other, as parties of equal worth and of equal standing in the community, and you are to render your verdict based solely  on the evidence presented during the trial.]

## V.    SUMMARY OF CONTENTIONS

As I did at the beginning of the case, I will give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions. As I previously told you, this is an action for patent infringement.

Headwater contends that Verizon infringes:

- claim 1 of U.S. Patent No. 9,215,613; and

- claim 83 of U.S. Patent No. 8,589,541.

[**Headwater: blue**; **Verizon: red**]

You've heard those referred to as the "Asserted Claims." You've also heard the patents referred to as the "'613 patent" and the "'541 patent" or collectively as the "Asserted Patents."

Headwater contends that it is entitled to money damages in the form of a lump sum reasonable royalty for Verizon's infringement by using, selling, and/or offering for sale in the United States certain products, which I will refer to and you've heard referred to as the "Accused Products." The Accused Products include "Apple Accused Products" and "Android Accused Products," which, respectively, refer to devices running Apple's iOS system and devices running the Android operating system.

Verizon denies that it infringes any of the Asserted Claims. Specifically, Verizon denies that it uses, offers for sale, or sells  in the United States any Accused Product that infringes any of the Asserted Claims. Verizon also denies that it owes Headwater any money damages.

Your job is to decide whether Verizon has infringed the Asserted Claims.  **[You must determine infringement separately for the Apple Accused Products and the Android Accused Products.]**  [**If you decide that any Asserted Claim has been infringed, you will then need to decide the amount of money damages to be awarded to Headwater to compensate it for Verizon's infringement.**]

## VI.    CLAIMS AND CLAIM CONSTRUCTION

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I'll now give you more detailed instructions about the patent laws that relate to this case.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of the patent.

The claims are important because the words of the claims define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and

[**Headwater: blue**; **Verizon: red**]

provide a context for the claims, but it is the claims themselves that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim. **[The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I have provided to you my definitions of certain claim terms. These definitions can be found in your juror notebooks. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issue of infringement.**

**For claim terms that I have not construed or defined, you are to use the plain and ordinary meaning of that term as it would have been understood by a person of ordinary skill in the art at the time of the invention.**

**Several times in these instructions and throughout the trial you have heard reference made to a person of ordinary skill in the art or a person of ordinary skill in the field of the invention.  In patent law, a previous device, system, method, publication, or patent that predates the claimed invention is generally called prior art.  Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.  Prior art may be authored or created by anyone.**

[**Headwater: blue**; **Verizon: red**]

Someone with ordinary skill in the art is a hypothetical person who is presumed to know all of the pertinent prior art, not just what the inventor or another particular individual may have actually known, in the field of the invention at the time the application for the patent was filed.

You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions and definitions that I have given you. For claim limitations that I have not construed—that is, limitations that I have not interpreted or defined—you are to use the plain and ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the alleged invention. You have been provided with copies of the asserted patents, which are inside your juror notebooks, and you may use them in your deliberations.

The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually.][2]

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a product satisfies each of these requirements, then it is covered by the claim. There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall within the scope of" that claim. In other

---

[2] The parties agree to further confer about this instruction, which is different from but has overlap with Headwater's initial proposal. Headwater reserves the right to object to the instruction and any part of it and make additional proposals/compromises.

[**Headwater: blue**; **Verizon: red**]

words, a claim covers a product so long as each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by the claim. If the product is covered by the claim, that product infringes that claim. If the product is not covered by the claim, that product does not infringe that claim.

The beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an Accused Product includes all of the requirements of that claim, the claim is infringed. This is true even if the Accused Product or contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also contains other structures, such as leaves to expand the size of the tabletop or wheels to go on the ends of the legs.

This case involves two types of patent claims—independent claims and dependent claims. In this case, claim 1 of the '613 patent is an independent claim. Claim 83 of the '541 patent is a dependent claim. An "independent claim" sets forth all of the requirements that must be met in order for a product to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

In contrast, a dependent claim does not itself recite all of the requirements of the claim. Instead, a dependent claim refers back to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim from which it depends, as well as the additional requirements set forth in the dependent claim. Thus, to determine what a dependent claim covers, it is necessary to look at the requirements of both the dependent claim and any other claim or claims to which it refers. A product that meets

[**Headwater: blue**; **Verizon: red**]

all of the requirements of both the dependent claim and any claim to which it refers or from which it depends is covered by that dependent claim. In this case, claim 83 of the '541 Patent depends on claim 1 of the '541 Patent. **[Even though claim 1 of the '541 Patent is not asserted in this case, the elements recited in claim 1 are still required elements of the asserted dependent claim, claim 83, and Headwater must prove that all of the claim limitations, including those in the independent claims, are met to prove infringement.]**

## VII.    LEVEL OF ORDINARY SKILL IN THE ART

Several times in my instructions, I have referred or will refer to a person of ordinary skill in the field of the invention, or a person of ordinary skill in the art ("POSITA"). In deciding the level of ordinary skill in the field, you should consider all of the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of persons actively working in the field of the patents-in-suit; (2) the types of problems encountered in the field; (3) previous solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology in the field of the patents-in-suit.

The priority date for the '541 and '613 Patents is May 25, 2010. **[Headwater contends that as of the priority date, a person of ordinary skill in the art would have had a bachelor's degree in electrical engineering, computer engineering, computer science, or the equivalent, and two to three years of work experience in the field of mobile wireless communications devices or wireless digital communication systems. More formal education in the field could substitute for less work experience, and vice versa.]**

**[Verizon contends that a person of ordinary skill in the art would have had a Bachelor's degree in computer science, computer engineering or similar field, and two years of work experience in computer software development or computer networking. Additional education could compensate for less practical experience and vice versa.]**

[**Headwater: blue**; **Verizon: red**]

## VIII.  __INFRINGEMENT__

I will now instruct you on how to determine whether or not Headwater has proven that Verizon has infringed any of the Asserted Claims of the Asserted Patents.

If a person or corporation makes, uses, sells, or offers to sell within the United States, or imports into the United States what is covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent claim.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. To determine whether there is infringement, you must compare the Asserted Claims to the Accused Products. This is the only correct comparison.

You should not compare the Accused Products to any specific examples set out in the patent or the prior art in reaching your decision on infringement. In deciding infringement, again, the only correct comparison is between the accused products and the elements or limitations of the Asserted Claims as the Court has construed those claims.

You must determine whether or not there is infringement separately for each Asserted Claim. **[Further, you must determine whether or not there is infringement separately for the Apple Accused Products and the Android Accused Products.  If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers, either directly or indirectly, to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the accused product meets the additional requirements of any claims that depend from the independent claim. That is, you must separately decide whether any dependent claims that refer to that independent claim have been infringed.]**

[**Headwater: blue**; **Verizon: red**]

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

### A.    Direct Infringement

I will now instruct you on the specific rules you must follow to determine whether Headwater has proven that Verizon has directly infringed one or more of the Asserted Claims involved in this case.

**[An Asserted Claim can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it did was infringing the claim. An Asserted Claim may also be directly infringed even though the accused direct infringer believed in good faith that what it did was not infringing the patent.**

**You have heard argument that Headwater may not have communicated with Verizon about their position on infringement and damages prior to filing this lawsuit. Infringement, ladies and gentlemen, is based solely on a comparison between the language of the Asserted Claims and the functionality of the Accused Products.**

**While Verizon might have preferred some pre-suit notice, the presence or absence of pre-suit notice is not a factor to consider in determining whether or not Verizon has infringed the Asserted Patents. Likewise, damages in a patent case are based solely on the reasonable royalty that would have resulted from a hypothetical negotiation between the parties at the time infringement first began. As such, the presence or absence of any pre-suit notice is not a factor to consider if you award damages in the form of a reasonable royalty in this case.**

**You must determine, separately for each Asserted Claim, whether or not there is infringement. In order to provide direct infringement of a patent claim, Headwater must show by a preponderance of the evidence that an Accused Product includes each and every**

[**Headwater: blue**; **Verizon: red**]

**limitation of an Asserted Claim.** An **Accused Product infringes a claim if it is configured to satisfy each and every claim element, even though it may also be capable of non-infringing modes of operation. If a single limitation of an Asserted Claim is not met by a preponderance of the evidence by the Accused Product, then you must find no infringement.**

**A claim requirement is present if it exists in an Accused Product as it is described in the claim language, as it would be understood by its plain and ordinary meaning to one of ordinary skill in the art. A single feature of an Accused Product may satisfy more than one element of a patent claim. A product may infringe even if the product contains additional features or elements not required by the claims. However, if an Accused Product omits any element recited in a claim, then you must find that the product in question does not infringe that claim.]**

**[In order to prove direct infringement of a patent claim, Headwater must show by a preponderance of the evidence that the accused products include each and every limitation or element of the claim.  In determining whether an accused product directly infringes a patent claim in this case, you must compare the accused product with each and every one of the requirements or limitations of that claim to determine whether the accused product contains each and every requirement or limitation recited in the claim.  If it does not, then the accused product does not infringe that claim.**

**A claim requirement is met if it exists in an accused product just as it is described in the claim language, either as I have explained or construed that language for you, or if I did not explain or construe it, as it would have been understood by its plain and ordinary meaning to one of ordinary skill in the art. If an accused product omits any element recited in a claim, then you must find that particular product does not infringe that claim.**

[**Headwater: blue**; **Verizon: red**]

Plaintiff in this case has accused multiple products of infringing its patents.  You must determine separately for each asserted claim and each asserted patent whether or not there is infringement by each individual accused product.  You must consider infringement of the Apple Accused Products separately from infringement of the Android Accused products.

Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another claim. There may also be infringement as to one patent, but not infringement as to another patent.  However, if you find that an independent claim on which other claims depend is not infringed, then there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide separately whether the product meets the additional requirements of any dependent claims that depend from or refer to that independent claim. A dependent claim includes all the requirements of any claim to which it refers or from which it depends plus its own additional requirements within the dependent claim.

As I have told you earlier, there can be apparatus claims and method claims. Direct infringement of a method claim occurs only where all the steps of a claimed method are performed or are attributable to a single party. An accused product infringes an apparatus claim if it is reasonably capable of satisfying all of the claim elements, even though it may also be capable of non-infringing modes of operation.]

B.      [Indirect Infringement

      1.      Induced Infringement

In this case, Headwater has also accused Verizon of indirect infringement by actively inducing the users of the Accused Products to directly infringe various claims of the Asserted

[**Headwater: blue**; **Verizon: red**]

Patents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Verizon is liable for induced infringement of a claim only if Headwater proves by a preponderance of the evidence that:

1. Acts have been carried out by users of the accused products that directly infringe that claim.

2. Verizon has taken action during the time the asserted patent was in force, intending to cause the infringing act by users of the accused products; and

3. Verizon has been aware of the asserted patent and has known that the acts of users of the accused products constitute infringement of the Asserted Patents or was willfully blind to that infringement.

Willful blindness is established if Verizon believed there was a high probability that the acts, if taken, would constitute infringement of the Asserted Claims, but deliberately avoided confirming that belief.

To establish induced infringement, it is not sufficient that someone else directly infringes a claim. Nor is it sufficient that the company accused of inducing another's direct infringement merely had knowledge or notice of an asserted patent or had been aware of the acts by another that allegedly constitute direct infringement. The mere fact that the company accused of inducing another's direct infringement had known or should have known that there was a substantial risk that someone else's acts would infringe is not sufficient. Rather, in order to find inducement, you must find that Verizon specifically intended or was willfully blind to that infringement by the users of the Accused Products.]

[**Headwater: blue**; **Verizon: red**]

## IX.    <u>WILLFUL INFRINGEMENT</u>

In this case, Headwater contends that Verizon willfully infringed the Asserted Patents. If you have decided that Verizon has infringed, you must go on and address the additional issue of whether or not this infringement was willful.  **[If you find that Verizon has not infringed, then you do not need to consider the issue of willfulness.]**  **[Headwater has the burden of proving willful infringement by a preponderance of the evidence.]**

You may not determine that the infringement was willful just because Verizon was aware of the Asserted Patents and infringed them. **[You may find that Verizon willfully infringed if you find that Verizon deliberately or intentionally infringed the Asserted Patents. You may also find that Verizon's actions were willful if Verizon acted in reckless or callous disregard of, or with indifference to, the rights of Headwater. A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or was apparent to a reasonable person in its position.**

**To determine whether Verizon acted willfully, consider all facts and assess Verizon's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:**

1. **Whether or not Verizon acted consistently with the standards of behavior for its industry;**

2. **Whether or not Verizon intentionally copied a product of Headwater that is covered by the Asserted Patents;**

3. **Whether or not Verizon reasonably believed it did not infringe or that the Asserted Patents were invalid;**

[**Headwater: blue**; **Verizon: red**]

4.  **Whether or not Verizon made a good-faith effort to avoid infringing the Asserted Patents, for example, whether Verizon attempted to design around the Asserted Patents; and**

5.  **Whether or not Verizon tried to cover up its infringement.]**

**[You may find willful infringement only if you find that Verizon knew that its acts would constitute infringement of the Asserted Patents and specifically intended to infringe the Asserted Patents.]**  **[Your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during this trial. Willfulness can be established by circumstantial evidence. If you decide that any infringement was willful, that decision should not affect any damages award that you give. I will take willfulness into account later.]**

## X.    <u>DAMAGES</u>

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Verizon has infringed any claim of the Asserted Patents, you must then consider what amount of damages **[, if any,]** to award to Headwater. **[If you find that Verizon has not infringed any claim of the patents-in-suit, then Headwater is not entitled to any damages.  You must determine the amount of damages for the Apple Accused Products, if any, separately from the Android Accused Products, if any.]**

Headwater has the burden to establish the amount of its damages by a preponderance of the evidence. While Headwater is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. Headwater is not entitled to damages that are remote or that are only speculative.

[**Headwater: blue**; **Verizon: red**]

Any damages award that you might make must be adequate to compensate Headwater for any infringement that you may find, but in no event an amount less than a reasonable royalty for the use made of the invention by Verizon. You must not award Headwater more damages than are adequate to compensate it for any infringement. And you should also not include any additional amount for the purposes of punishing Verizon or for setting an example. **[The purpose of a damages award is to put the Plaintiff in the same position that it would have been in if the Defendant would have taken a license at the time of first infringement, which is November 2015.]**

### A.    Reasonable Royalty

I will now instruct you on how to calculate reasonable royalty damages, if you find damages are appropriate to award in this case.

Headwater seeks damages in the form of a lump sum reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of money that Headwater and Verizon would have agreed to in a hypothetical license negotiation taking place at a time just prior to when the alleged infringement first began.  The hypothetical negotiation date in this case is November 2015.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the Asserted Patents were infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred.

[**Headwater: blue**; **Verizon: red**]

Evidence of things that happened after the alleged infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. **[Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.]**

The law requires that any royalty awarded to Headwater correspond to the value of the patented invention within the Accused Product, as distinct from other unpatented features.

Any amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused products or other factors such as marketing or advertising or size or market position. **<u>[This is particularly true where the accused product has multiple features and multiple components not covered by the patent or where the Accused Product works in conjunction with other non-patented items.]</u>** A royalty compensating Headwater for damages must reflect the value attributable to the allegedly infringing features of the accused products and nothing more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features. **[You may not award damages based on Verizon's revenue from products that you do not find have infringed. Headwater's evidence must be reliable and tangible; it can't be speculative.**

**A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the first infringement began, which is November 2015.**

[**Headwater: blue**; **Verizon: red**]

If you find Headwater is entitled to damages, both Headwater and Verizon contend that the parties would have agreed to a fully paid-up lump sum royalty at the time of the hypothetical negotiation. A lump sum royalty is when the infringer pays a single price for a license to use a patent throughout the life of the patent. As such, a lump sum royalty compensates the patent holder for damages for both past infringement and for future infringement throughout the life of the patent. In this case the '541 and '613 patents expire on March 2, 2029]

[If unpatented features contribute to the value of the Accused Product, you must apportion that value to exclude any value attributable to unpatented features. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

When a patent covers the infringing product or service as a whole, and the claims recite both conventional and nonconventional elements, you must account of the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone. You must determine how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone. In this case, asserted claim 83 of the '541 Patent is a dependent claim, and it depends on independent claim 1. However, independent claim 1 is in the public domain. Thus, an award of damages for infringement of claim 83 of the '541 Patent must be based solely on the value contributed by the features of those claims, as opposed to the features of independent claim 1.

B.      Notice

In determining the amount of damages, you must determine when the damages began. The date that Headwater first notified Verizon of its claim for patent infringement is the date

[Headwater: blue; Verizon: red]

for the start of damages.  The parties do not agree on that date for the '541 and '613 Patents, and it is up to you to determine what that date is.  Headwater must prove for each of the asserted patents that it is more likely than not that Verizon was put on notice of the claim of patent infringement as of the date alleged by Headwater.

Headwater can give notice in either one of two ways.  The first way is to give notice to the public in general. When a product has been sold or licensed by the patentholder that includes the claimed invention, then the date that damages begin depends on whether that product was been "marked" with the patent number.  "Marking" requires placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention.  The patentholder also may give notice by marking substantially all products with "Patent" or "Pat" and a freely accessible Internet address where there is a posting that connects the product with the patent number(s). Licensees of the asserted patents who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number.  If substantially all products sold or licensed by the patent holder have been "marked" then damages for infringement begins on the date the patent issued, the date infringement began, or six years before the lawsuit was filed, whichever is later in time.  But if products sold or licensed by the patentholder have not been "marked," then Headwater did not provide notice in this way and damages for infringement start on the date that the infringing party was first given actual notice of the patent.

A second way Headwater can give notice of its patents is to directly notify Verizon with a specific claim that the accused products infringed each of the '541 and '613 Patents. This type of notice means that damages for infringement start from the date Verizon received

[Headwater: blue; Verizon: red]

the notice. If you find that Headwater and its licensees, before filing this lawsuit, did not provide an effective public notice by properly marking its products, and did not properly provide direct notice to Verizon with a specific charge that the accused products infringed, then Headwater can only recover damages for infringement that occurred after it sued Verizon on July 28, 2023.

In this case, it is undisputed that Headwater itself did not sell any products that needed to be marked.  The parties dispute, however, whether Headwater met its burden with respect to its licensee ItsOn.

The parties also dispute whether ItsOn's products were properly marked with the '541 Patent.  In order to meet its burden to show that the ItsOn products were properly marked, Headwater must prove that substantially all of the products made, offered for sale, or sold under the '541 Patent were marked and that reasonable effects were made to ensure that licensees who made, offered for sale, or sold products under those patents marked the products.  If you find that Headwater met its burden to prove that the ItsOn products were properly marked with the '541 Patent, then you must find that any damages that Headwater may be entitled to with respect to the Android devices started accruing on July 28, 2017, the date that is 6 years prior to when Headwater filed its lawsuit against Verizon, and that any damages that Headwater may be entitled to with respect to the Apple devices started accruing on September 13, 2019, the date that the accused Apple feature was released, to the extent you determine Headwater is entitled to damages at all.

While the parties agree that Headwater and its licensee ItsOn did not "mark" any of its products with the '613 Patent, the parties dispute whether ItsOn's products include the inventions claimed in the asserted claims of the '613 Patent and therefore whether they

[**Headwater: blue**; **Verizon: red**]

should have been marked.  In order to meet its burden to show that the unmarked ItsOn products do not include the inventions in the '613 Patent, Headwater must establish that the ItsOn products do not embody the asserted claims.  If you find that the unmarked products sold by ItsOn embody the inventions claimed in the asserted claims, then you must find that any damages to which Headwater may be entitled began accruing on the date Headwater first provided Verizon with actual notice of the '613 Patent, to the extent you determine Headwater is entitled to damages at all.  If you find that the unmarked products sold by ItsOn do not embody the inventions claimed in the '613 Patent, then you must find that any damages that Headwater may be entitled to with respect to the Android devices started accruing on July 28, 2017, the date that is 6 years prior to when Headwater filed its lawsuit against Verizon, and that any damages that Headwater may be entitled to with respect to the Apple devices started accruing on September 15, 2017, the date that the accused Apple feature was released, to the extent you determine Headwater is entitled to damages at all.

Where you find that an asserted claim has been infringed, you may not award any damages for activities occurring before the damages start or after the patent expires. The '541 Patent will expire on March 2, 2029 and the damages period for the '541 Patent will end in June 2025.  The '613 Patent will expire on March 2, 2029 and the damages period for the '613 Patent will end in June 2025.][3]

---

[3] The parties agree to further confer about these instructions on damages and alleged marking defense / limitation on pre-suit damages. Headwater reserves the right to object to the instruction and any part of it and make additional proposals/compromises.

[**Headwater: blue**; **Verizon: red**]

## C.    Relevant Factors

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time of the hypothetical negotiation. Some of the kinds of factors that you may consider in determining the reasonable royalty are:

1.  The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

2.  The rates paid by the licensee for the use of other patents comparable to the patents-in-suit**;**

3.  **[Comparable license agreements include those covering the use of the claimed invention or similar technology;]**

4.  The nature and scope of the license, **[as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or]** with respect to whom the manufactured product may be sold;

5.  The licensor's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

6.  The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business;

7.  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

8.  The duration of the Asserted Patents and the term of the license;

9.  The established profitability of the product made under the patents, its commercial success, and its current popularity;

10. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

11. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

12. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

13. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

14. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

15. The opinion and testimony of qualified experts; and

16. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been trying reasonably and voluntarily to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.

You may have heard these factors referred to as the "*Georgia-Pacific* factors." No one factor is dispositive, and you can and should consider the evidence that has been presented to you

[Headwater: blue; Verizon: red]

in this case on each of these factors. You may also consider any other factors which, in your mind, would have increased or decreased the royalty the alleged infringer would have been willing to pay, and the patent holder would have been willing to accept, acting as normally prudent business people.

### D.    Comparable Agreements

[As I explained with respect to the *Georgia-Pacific* factors, when determining a reasonable royalty, comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license between Headwater and Verizon, you must take those into account when you make your reasonable royalty determination.]

[When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent in question or for rights to similar technologies. Thus comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. Such licenses may indicate the patented inventions' economic value in the marketplace.

[**Headwater: blue**; **Verizon: red**]

A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the patent owner and alleged infringer in order for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license in terms of the technologies and economic circumstances of the contracting parties when you make your reasonable royalty determination.

### E.    Cost Savings

[You may consider the cost savings, if any, attributable to the patented invention when determining a reasonable royalty the parties would have agreed to during the hypothetical negotiation.  Headwater bears the burden of proving the amount of any such cost savings, as well as the burden of proving that those cost savings are attributable to the use of the patented inventions as opposed to other factors.  You should disregard any cost savings not attributable to the patented inventions.]

### F.    Non-Infringing Alternatives

[In determining a reasonable royalty, you may consider evidence concerning the availability of acceptable non-infringing alternatives to the patented invention. To be an acceptable noninfringing alternative, a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. You may also consider the utility and advantages of the patented technology over any non-infringing alternatives that could be used for achieving similar results. The party asserting that there is a non-infringing alternative has the burden to show by a preponderance of the evidence that a proposed non-infringing alternative was acceptable and available at the time of the hypothetical negotiation and during the damages period. You should not consider for

[**Headwater: blue**; **Verizon: red**]

damages purposes any alternatives that have not been shown to be available at the time of the hypothetical negotiation.

A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same result that does not require using the patent. An available non-infringing alternative need not have been actually used to be relevant to the hypothetical negotiation.

Verizon bears the burden of proof to show that any proposed alternative is non-infringing and was commercially acceptable and available at the time of the hypothetical negotiation. You should not consider for damages purposes any alternatives that Verizon has not shown were both available and commercially acceptable at the time of the hypothetical negotiation.]

[In determining a reasonable royalty, you can also take into account whether Verizon could have implemented any noninfringing technologies as an alternative to the patented inventions. These are called noninfringing alternatives. Plaintiff has the burden to persuade you that no viable, commercially acceptable noninfringing alternatives existed. Noninfringing technologies include not only existing technologies that do not infringe, but also technologies that could reasonably have been developed and that would not infringe. A defendant does not have to actually use a noninfringing technology during the infringement period for that technology to be a noninfringing alternative.]

## XI.    <u>CLOSING ARGUMENTS</u>

\* \* \*

Now, with those instructions, we're ready to hear closing arguments from the attorneys.

[**Headwater: blue**; **Verizon: red**]

[ATTORNEYS PRESENT CLOSING ARGUMENTS]

PLAINTIFF'S CLOSING: [40 MIN.]

Start time: _____

1st warning: _____

2nd warning: _____

End: _____


DEFENDANTS' CLOSING: [40 MIN.]

Start time: _____

1st warning: _____

2nd warning: _____

End: _____

[**Headwater: blue**; **Verizon: red**]

## <u>INSTRUCTIONS FOR DELIBERATIONS[4]</u>

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict regardless of the consequences.

Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly. Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect his rights under the laws of the United States. This includes bringing suit in a United States District Court for money damages for infringement. A defendant is equally entitled to defend itself under the laws of the United States, and this includes bringing any or all of its available defenses under the law in a United States District Court in which it is being sued. As a result, you should make no inference from the fact that this suit was filed or brought to trial. The law recognizes no distinction among types of parties. All corporations, partnerships, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

---

[4] Headwater understands that the following instructions for deliberations are provided by the Court and need not be proposed by the parties. The parties agree to further confer about these instructions, and Headwater reserves the right to object to any part of it (including to language already disputed in earlier instructions) and to make additional proposals / compromises.

[**Headwater: blue**; **Verizon: red**]

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you. Once you retire, you should select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your Foreperson is to fill in the verdict form in a manner which reflects your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, you should give a message or question written by the Jury Foreperson to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom, so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

[**Headwater: blue**; **Verizon: red**]

I will now hand the verdict form and eight copies of these instructions to the Court Security Officer to deliver to the jury room.

Ladies and Gentlemen, you may now retire to the jury room to deliberate. We await your verdict.