**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| HEADWATER RESEARCH LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00352-JRG-RSP |
| | § | |
| CELLCO PARTNERSHIP d/b/a/ VERIZON | § | |
| WIRELESS and VERIZON CORPORATE | § | |
| SERVICES GROUP, INC., | § | |
| *Defendants*. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The Court held a bench trial in the above-captioned case on February 4, 2026, regarding Defendant Verizon's[1] equitable defenses of estoppel and waiver. (Dkt. No. 436 at 1). The Court has considered the trial briefs from both Verizon (Dkt. Nos. 436, 444) and Plaintiff Headwater Research LLC ("Headwater") (Dkt. Nos. 435, 445), as well as the evidence and argument presented at the bench trial.

**I. BACKGROUND[2]**

The patents at issue in this suit are U.S. Patent Nos. 8,589,541 (the "'541 Patent") and 9,215,613 (the "'613 Patent"). The '541 Patent issued on November 19, 2013, and the '613 Patent issued on December 15, 2015. Both patents relate to background data technologies. (Dkt. No. 435 at 3). Headwater sued Verizon for infringing these patents on July 28, 2023. (Dkt. No. 1). On July 23, 2025, a jury found that the patents were willfully infringed and awarded $175 million in damages. (Dkt. No. 420).

---

[1] "Verizon" refers to Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Corporate Services Group, Inc., and other Verizon subsidiaries controlled by the named defendants.

[2] The parties have presented competing evidence about the factual allegations in this case. In this section, the Court recites the facts that it finds to be true, having considered the evidence, testimony, argument, and credibility of witnesses as presented to the Court.

Since at least 2010, Verizon has been an investor in either Headwater or its sister-entity, ItsOn Inc. ("ItsOn").[3] (*See* DTX 124). Verizon first invested $1.75 million in Headwater in exchange for a 10% equity interest in the company in 2010. (Dkt. No. 445 at 5-6). Verizon continues to hold an equity interest in Headwater today. (*Id.*). Between 2015 and 2017, Verizon invested an additional $30 million in ItsOn. (Dkt. No. 436 at 2). While ItsOn represented that there was "no action, suit, proceeding or investigation by [ItsOn] currently pending or which [ItsOn] intends to initiate" in 2015, (*Id.* at 3), the parties dispute whether such a representation was made by ItsOn in subsequent investment agreements between ItsOn and Verizon.

Despite these investments, Verizon and Headwater have had disputes about intellectual property rights. On November 25, 2013, Headwater contacted Verizon regarding a whistleblower's allegations of "serious violations of Headwater's intellectual property rights." (DTX 123.001). The whistleblower's allegations were about events occurring between 2009 and 2010. (Dkt. No. 435 at 3). The technology at issue in the allegations involved billing and "gas-tank view" technology. (*Id.*).

In 2017, Dr. Gregory Raleigh—Headwater's and ItsOn's principal—first began "look[ing] into whether Verizon might be infringing." (Dkt. No. 435 at 8 (citing Dkt. No. 408-2 at 568:20-569:4)). Verizon did not have knowledge of the asserted patents until Headwater filed its complaint in 2023. (Dkt. No. 435 at 2). This is agreed to by Headwater.

---

[3] Dr. Gregory Raleigh is the principal of both Headwater and ItsOn. Though Headwater and ItsOn are distinct corporate entities, the Court finds that their actions have been sufficiently coordinated with respect to the disputes in this case such that the Court considers them functionally to be a single entity under the control of Dr. Raleigh for the purposes of this bench trial. Accordingly, the Court uses "Headwater" to refer to either Headwater, ItsOn, or both, where the Court finds that the distinction between the two entities is immaterial.

## II. LEGAL STANDARDS[4]

Equitable estoppel requires: (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. *High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016).

"Waiver occurs in the patent infringement context, when a party with full knowledge of material facts, either intentionally relinquishes its rights to enforce the patents, or engages in conduct so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished."[5] *JumpSport, Inc. v. Acad., Ltd.*, No. 6:17-CV-414-RWS-JDL, 2018 WL 10124888 at *4 (E.D. Tex. Sept. 6, 2018); *see also Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019-22 (Fed. Cir. 2008).

## III. ANALYSIS

Verizon asserts that the same evidence establishes equitable estoppel and waiver. (Dkt. No. 436 at 1, 10). The Court first addresses possible equitable relief arising from Verizon's prior investments in Headwater. The Court then addresses possible equitable relief arising from Headwater's conduct after Verizon's investments.

---

[4] Verizon does not explicitly raise an implied license defense or an acquiescence defense against Headwater. (*See* Dkt. No. 436 at 1 ("Verizon respectfully submits that Headwater's claims are barred by equitable estoppel and waiver."). However, Verizon cites to the implied license and acquiescence standards, and Verizon includes the terms in the heading for Verizon's equitable estoppel briefing. (*Id.* at 1). Consequently, Verizon fails to properly raise the implied license and acquiescence defenses. As a result, Verizon is not entitled to relief under either doctrine.

[5] The Court will refer to "the intentional relinquishment of rights" as "express waiver" and "the engagement in conduct so inconsistent with an intent to enforce rights" as "implied waiver."

3

## A. Equitable Relief Arising From Prior Investments

### 1. Equitable Estoppel

The parties dispute whether the accused infringer must know about the asserted patents in order for equitable estoppel to arise.[6] (Dkt. No. 435 at 1-2; Dkt. No. 436 at 5-6). The Court finds that knowledge of the patentee alone can be sufficient for equitable estoppel to exist in certain circumstances. Specifically, equitable estoppel may arise if an accused infringer reasonably infers that the patentee acquiesced to some or all of the infringing activity by the accused infringer for some time. In other words, if Verizon reasonably inferred that Headwater acquiesced to Verizon's infringement of some or all of Headwater's patents for some time, then equitable estoppel may arise even if Verizon did not know about the asserted patents.[7]

Here, Verizon argues that Headwater's misleading conduct or silence gave rise to a reasonable inference that Headwater did not intend to enforce any of its patents against Verizon. Verizon points to two actions by Headwater that gave rise to its purportedly reasonable inference: first, ItsOn solicited more than $30 million in investments from Verizon; and second, ItsOn represented—in one or more of its investment agreements[8]—that that there was "no action, suit,

---

[6] The parties cite to multiple cases that reach opposing conclusions. *See, e.g.*, *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir.), *opinion corrected*, 275 F.3d 1344 (Fed. Cir. 2001) (emphasis added); *Genband US LLC v. Metaswitch Networks Ltd*, 211 F. Supp. 3d 858 (E.D. Tex. 2016), *vacated and remanded on other grounds sub nom. Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378 (Fed. Cir. 2017); *Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-CV-01314-JRG, 2019 WL 8110046 at *16 (E.D. Tex. Jan. 18, 2019); *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992), *abrogated by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017). Given the diverging case law, the Court clarifies this requirement for equitable estoppel.

[7] The rationale for this knowledge requirement is straightforward. Consider the scenario where a patentee has engaged in conduct that would lead the alleged infringer to reasonably infer that the patentee does not intend to enforce any of its patents against the alleged infringer. In that scenario, the alleged infringer does not need to have knowledge about the asserted patents because the alleged infringer reasonably inferred that it could infringe any patent held by the patentee. Similarly, the alleged infringer could reasonably infer that it could infringe a certain subset of patents held by the patentee (e.g., the subset of patents owned by the patentee related to a certain area of technology) without having knowledge of the particular patents within that subset.

[8] The parties agree that the 2015 investment agreement included such a representation. The parties have both lost the 2016 agreement, and Verizon does not identify any similar provision in the 2017 agreement.

proceeding or investigation by [ItsOn] currently pending or which [ItsOn] intends to initiate." (Dkt. No. 436 at 2-3).

The Court finds that Verizon's inferred belief that Headwater did not intend to enforce any of its patents against Verizon because of Verizon's investments was unreasonable. Investments in the patentee alone do not give rise to a reasonable belief that an investor can infringe any patent held by the patentee.[9] Additionally, Headwater did not represent that it would never sue Verizon in any of the investment agreements. Instead, Headwater represented that it did not have pending suits and that it did not then have intentions to bring suit against Verizon in 2015. Verizon has not shown that the 2016 or 2017 investment agreements had similar representations.[10] Even if the 2017 investment agreement included a similar representation, Verizon has not shown that Headwater's exploration of a possible suit against Verizon pre-dated the 2017 investment agreement.[11]

Furthermore, the 2010 investment agreement between Headwater and Verizon expressly stated that Headwater could remain silent about possible infringement claims it had against Verizon. The 2010 investment agreement stated that Verizon was entitled to "contractual observer rights" including "copies of all notices, minutes, consents, and other materials" provided to "all of

---

[9] Verizon, as an equity holder in Headwater, could be considered a part-owner of the asserted patents. Additionally, Verizon might recoup some of the damages it pays to Headwater in the form of an investment return or gain. Both facts would suggest that Verizon should have some form of an implied license to the asserted patents. However, the Court is reluctant to create a new form of an implied license akin to an investor shop right. The exact parameters of such an investor shop right—including the amount of investment or percentage of equity required to obtain this shop right—were not presented to the Court in this case. Furthermore, and as previously mentioned, the Court finds that Verizon has not properly raised an equitable defense of implied license. Accordingly, the Court is not prepared to find an implied license arising from an investment and equity share here. Additionally, the Court finds that the doctrine of equitable estoppel cannot be used as a backdoor form of an implied license resembling an investor shop right.

[10] Testimony by Verizon employees stating that Verizon would not have invested in a company if that company or an affiliate was "investigating claims against Verizon or planning to file suit" is largely unavailing. (Dkt. No. 436 at 5). The contents of the produced investment agreements speak for themselves, and the Court assumes that sophisticated entities like Verizon and Headwater intend to be bound by the terms included in the four corners of the agreements. The representations made by both parties that they each have lost their copies of the 2016 agreement is a surprise to the Court.

[11] At the bench trial, Verizon identified entries in Headwater's privilege log between Headwater and prominent plaintiffs law firms. *See* Bench Trial Draft Transcript 181:1-6. However, Headwater is a patent assertion entity. It is likely that Headwater explored patent suits against other possible infringers, and Verizon has not identified any reasonable basis for attributing the identified entries in the privilege log to Headwater's investigation of Verizon.

the members of the Oversight Board" of Headwater. (DTX 124.130). However, Headwater could withhold such materials if "access to such information or attendance at such meeting could result in a conflict of interest" between Verizon and Headwater. (*Id.*). Exploring claims of potential patent infringement clearly gave rise to a conflict of interest between Headwater and Verizon.[12] Therefore, Headwater's silence about Verizon's alleged infringement was expected by both parties.[13]

Finally, Verizon contends that Headwater's fiduciary duty of loyalty required Dr. Raleigh to disclose possible litigation. (Dkt. No. 444 at 6).[14,15] Headwater's board, including Dr. Raleigh, owed fiduciary duties to all shareholders of Headwater, not just Verizon. Verizon's alleged infringement of Headwater's patents was "harm reasonably perceived" by Headwater, and Headwater could act against the interest of a shareholder to protect its own interest. *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 953-54 (Del. 1985), *holding modified by Coster v. UIP*

---

[12] At the bench trial, Dr. Raleigh testified that Headwater "exercise[d] that ability to withhold information from Verizon" around 2017 or 2018 when Headwater was investigating "whether or not [Headwater] had good cause for infringement." Bench Trial Draft Transcript 107:13-24.

[13] "[S]ilence alone will not create an estoppel unless there was a clear duty to speak or somehow the patentee's continued silence reenforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1043-44 (Fed. Cir. 1992), *abrogated on other grounds by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017). Verizon's case for equitable estoppel in this case is weaker than the defendant's case in *SCA Hygiene*, in which the patent holder had identified the asserted patents before an extended period of silence. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 767 F.3d 1339 (Fed. Cir. 2014), *reh'g en banc granted, opinion vacated*, No. 2013-1564, 2014 WL 7460970 (Fed. Cir. Dec. 30, 2014), *and on reh'g en banc*, 807 F.3d 1311 (Fed. Cir. 2015), *vacated in part*, 580 U.S. 328 (2017). As discussed above, Headwater did not have a clear duty to speak.

[14] Headwater's investigation of Verizon for infringement raised multiple conflicts of interest, including for Dr. Raleigh (the principal for both Headwater and ItsOn), Headwater (with Verizon as a shareholder and litigation target), and Verizon (as a shareholder and potential infringer). Therefore, the business judgment rule does not apply and the Court does not defer to the business judgment of the board.

[15] While the fiduciary duty of care may be contractually abrogated, *see* Delaware General Corporation Act Section 102(b)(7), the fiduciary duty of loyalty cannot. Therefore, had the Court found that Headwater's fiduciary duty of loyalty required disclosure of its investigation of Verizon's infringement to Verizon, then the contractual observer rights from the 2010 investment agreement (DTX 124.130) could not excuse Headwater's failure to disclose. As discussed in the remainder of this section, however, the Court finds that Headwater's fiduciary duty of loyalty did not require disclosure of its investigation of Verizon's infringement to Verizon.

*Companies, Inc.*, 300 A.3d 656 (Del. 2023).[16] Such actions could include Headwater investigating possible infringement by Verizon in 2017 and afterwards without notifying Verizon.

In sum, the Court finds that Headwater's conduct could not lead to the reasonable inference that Headwater did not intend to enforce the asserted patents against Verizon because of Verizon's investments. Accordingly, Verizon is not entitled to the relief it seeks under the doctrine of equitable estoppel as a result of Verizon's investments in Headwater and ItsOn.

### 2. Waiver

Similarly, Verizon is not entitled to equitable relief through waiver because of Verizon's previous investments in Headwater and ItsOn. For the doctrine of waiver to apply, Verizon would need to show that Headwater knew that Verizon was infringing at the time the investments were made. Verizon has not done so. Additionally, Verizon's investment agreements with Headwater permitted Headwater to maintain silence about potential infringement suits against Verizon because of a conflict of interest. Accordingly, Verizon has not shown that Headwater waived its claims against Verizon because of Verizon's investments in Headwater.

### B. Equitable Relief Arising From Post-Investment Conduct

The Court next considers whether Verizon may receive equitable relief arising from Headwater's conduct after the investments discussed above under the doctrines of equitable estoppel or waiver. In particular, the Court considers the period beginning with Headwater's investigation of infringement in 2017 and ending with Headwater filing suit in 2023. Having reviewed all of the evidence, testimony, and argument presented, the Court finds that Verizon is

---

[16] "[T]here is no support in Delaware law for the proposition that, when responding to a perceived harm, a corporation must guarantee a benefit to a stockholder who is deliberately provoking the danger being addressed. There is no obligation of self-sacrifice by a corporation and its shareholders in the face of such a challenge." *Id.* at 958.

entitled to equitable relief based on Headwater's conduct during and after its 2017 investigation of infringement under the doctrine of implied waiver.

### 1. Equitable Estoppel

Verizon is not entitled to equitable relief under the doctrine of equitable estoppel for Headwater's post-investment conduct. The Court's rationale for this finding does not materially differ from its rationale for denying relief under equitable estoppel because of Verizon's prior investments in Headwater. Verizon has not shown that Headwater made new representations about its intent to enforce its patents after the investment agreements were signed. Additionally, Headwater did not expressly assume any duties to disclose possible suits; instead, Headwater could continue to withhold information regarding potential conflicts of interests because of the terms of the 2010 investment agreement.

### 2. Waiver

The Court finds that Verizon is entitled to equitable relief under the doctrine of implied waiver. The Court's analysis of waiver for post-investment conduct differs from its analysis in the preceding section, because the Court finds that Headwater had knowledge of Verizon's infringement as of 2017.

According to Headwater, Verizon first began infringing in February 2016. (Dkt. No. 435 at 6). Headwater investigated Verizon's infringement in 2017, but it did not file suit until July 2023. Dr. Raleigh testified that Headwater did not have sufficient knowledge of infringement until 2023. However, based on the complete factual record in this case, the Court is unpersuaded by this testimony. At the time of Headwater's investigation in 2017, Headwater could only collect damages arising since February 2016—a damages period of less than two years. By waiting until July 2023 to file suit, Headwater could and did seek damages for the entire six-year damages period

8

permitted under 35 U.S.C. § 286. As a sophisticated patent-assertion entity, Headwater and Dr. Raleigh knew, or should have known, the obvious advantages of delaying suit. The Court finds that Headwater's delay in filing suit is directly attributable to maximizing the damages it could recover. In other words, the Court finds that Headwater had full knowledge of Verizon's infringement in 2017.[17]

The remaining question before the Court is whether Headwater's failure to bring suit in 2017 was "conduct so inconsistent with an intent to enforce its rights as to induce a reasonable belief [by Verizon] that such right ha[d] been relinquished." *JumpSport,* 2018 WL 10124888 at *4. The Court first determines what belief Verizon must have had, whether that belief was reasonable, and whether that belief was induced by Headwater. Then, the Court considers the scope of the relief under implied waiver, as distinct from relief under laches.

### i. Reasonable Belief Induced by Headwater

The parties agree that Verizon did not know about the asserted patents until 2023, when the present suit was filed. Therefore, Verizon could not have reasonably believed that Headwater waived its ability to enforce only the asserted patents. However, Verizon could have had a reasonable belief in 2023 that Headwater had waived its right to enforce all, or a subset of, its patent portfolio against Verizon.

Here, Verizon believed in 2023 that Headwater had waived its right to enforce patents that Headwater knew, in 2017, Verizon infringed. In 2023, Verizon believed that Headwater did not have knowledge of any infringement that had begun in 2017. However, Verizon simultaneously

---

[17] The Court makes this determination based on its evaluation of factors not included in the record, such as the credibility of witnesses testifying at the jury trial and bench trial. The finding that Dr. Raleigh and Headwater had full knowledge of Verizon's infringement in 2017 is a factual determination within the province of the District Court to make. The trial court is uniquely positioned to make this factual determination given its ability to consider the manner and credibility of witness testimony that is not otherwise reflected in the record. Such observations from the trial bench are important and impactful in this case.

believed that even if Headwater knew of such infringement beginning in 2017, Headwater had waived its right to enforce such patents against Verizon.

The Court next considers whether that belief was reasonable. The Court finds that it was. Verizon could reasonably believe that Headwater would have either brought suit reasonably soon after they had knowledge of infringement in 2017, or that Headwater had decided it would not seek to enforce its patent rights against Verizon in 2023. Alternatively, it would be equally reasonable for Verizon to believe that a Court would not permit Headwater to delay filing suit once it had knowledge of infringement based on its self-serving desire to maximize its potential damages award.[18] Verizon is entitled to reasonably believe its practice of certain technologies is not encumbered by patent holders lying in wait to bring suit when it most benefits the patent holder. During this delay by Headwater, Verizon could have sought technical alternatives had it known about such infringement earlier. Headwater's calculated delay prevented Verizon from pursuing such alternatives while the damages clock, visible only to Headwater, continued to run.

Verizon's belief is all the more reasonable because of its existing investor relationship with Headwater. While Verizon's investments in Headwater do not alone give rise to an affirmative duty for Headwater to disclose potential infringement or promptly file suit, the investments do create a reasonable belief by Verizon that Headwater would not delay filing suit to maximize its damages against Verizon.

Importantly, Verizon's reasonable belief is limited to patents that Headwater knew, in 2017, Verizon infringed. Had Headwater not realized Verizon was infringing until 2023,[19] Verizon

---

[18] The Court emphasizes that Headwater's desire to maximize its potential damages award is not the sole basis for the equitable relief here. However, the Court takes this intentional delay into consideration in finding that equitable relief is warranted.

[19] The Court recognizes that infringement analyses may take some time, and it does not intend to impose a strict, reasonableness timeline for determining infringement. However, the Court finds that a delay in filing suit from 2017 to 2023 is well beyond the reasonable time for determining infringement given the experience and sophistication of Dr. Raleigh and Headwater.

would not be able to assert an implied waiver defense in this manner. However, the Court finds that Headwater's knowledge in 2017, followed by a six-year delay in filing suit, was a sufficient amount of time within which Verizon could develop a reasonable belief that any infringement known by Headwater had been waived.

Finally, Verizon's reasonable belief was induced by Headwater. Headwater waited approximately six years before bringing suit, during which time Verizon, left in the dark, continued to infringe. Verizon was deprived of the opportunity to seek and implement non-infringing alternatives. As discussed above, Headwater's significant delay in asserting these patents against Verizon was the root cause of Verizon's reasonable belief.

In sum, Verizon's belief—that Headwater would not enforce patents it knew Verizon was infringing in 2017—was both reasonable and induced by Headwater's conduct. Every law student, early on, learns the equitable concept of unclean hands. Having realized in 2017 that its patents were being infringed, Dr. Raleigh and his corporate entities consciously delayed litigation against Verizon purely to benefit themselves. Six years later, they sued Verizon and asserted that such infringement had been willfully undertaken. This is conduct done with unclean hands. Equity exists to remedy just such conduct. Accordingly, Verizon is entitled to equitable relief under implied waiver.

### ii. Relief Under Implied Waiver but not Laches

In reaching its finding of equitable relief under implied waiver, the Court carefully considered *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, which precluded a laches defense to damages in patent cases. 580 U.S. 328 (2017). The Court finds that *SCA Hygiene* does not preclude the equitable relief under implied waiver which the Court issues here.

11

First, the Court understands *SCA Hygiene* to preclude the laches defense only against damages and not the issue of underlying liability. Given that the Court finds equitable relief proper under the doctrine of implied waiver as to the issue of Verizon's liability, and not damages alone, *SCA Hygiene* does not teach away from the relief the Court now orders.

Second, the Court finds that the Supreme Court's reasoning in *SCA Hygiene* and its predecessor case, *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014), reinforce the availability of equitable relief under the implied waiver doctrine in this case. While the Court "may take account of [Headwater's] delay in commencing suit," *Petrella*, 572 U.S. 663 at 687, "delay is not an element of the defense." *Id.* at 685. Instead, the "gravamen" of implied waiver is inducement of a reasonable belief. *Id.* at 684. This "is more exacting than the test for laches." *Id.* In both *SCA Hygiene* and *Petrella*, the Supreme Court recognized that other forms of equitable relief, besides laches, would remain available. Accordingly, the Court finds that it is not precluded from affording Verizon equitable relief under the doctrine of implied waiver in this case.

## IV. CONCLUSION

Having considered the entirety of the record, including the evidence adduced before the jury and the briefing and argument related to the bench trial, the Court finds that, under the doctrine of implied waiver, Headwater cannot enforce the asserted patents against Verizon.

So ORDERED and SIGNED this 22nd day of April, 2026.

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

12